IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2006 MAY -1 P 2: 48

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No.
                                    )
The STATE OF ALABAMA, and           )   2:06CV 392 WKW
NANCY L. WORLEY, Secretary of State;)
in her official capacity,           )
                                    )
            Defendants.             )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF
UNITED STATES' MOTION FOR A PRELIMINARY INJUNCTION**



SCANNED
050206

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Help America Vote Act of 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Facts Giving Rise to this Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   ARGUMENT: PLAINTIFF SATISFIES THE STANDARD FOR A GRANT OF A
PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Plaintiff Is Very Likely to Succeed on the Merits . . . . . . . . . . . . . . . . . . . . . 10

    B.    Alabama Voters Are Faced with Irreparable Harm in the Absence of an
Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    The Balance of Harms Strongly Favors the Grant of an Injunction . . . . . . . . . . 17

    D.    A Grant of an Injunction Is in the Public's Interest . . . . . . . . . . . . . . . . . . . . 18

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

### TABLE OF AUTHORITIES

CASES:

Church v. City of Huntsville, 30 F.3d 1332, 1341-42 (11th Cir. 1994) . . . . . . . . . . . . . . 10

Dillard v. Crenshaw Co., 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) . . . . . . . . . . . . . . 15

Frio Ice S.A. v. Sunfruit, Inc., 910 F.2d 154, 159 (11th Cir. 1990) . . . . . . . . . . . . . . . . 10

Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 11

Home Oil Co. Inc. v. Sam's East, Inc., 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896
F.2d 1283, 1285 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reynolds v. Sims, 377 U.S. 533, 562, 565, 84 S. Ct. 1362, 1381, 1383, 12 L. Ed. 2d 506
(1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Shatel Corp. v. Mao Ta Lumber and Yacht Corp., 697 F.2d 1352, 1354-55 (11th Cir.
1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Siegel v. LePore, 234 F.3d 1163, 1176, 77 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 14

State of Tex. v. Seatrain Int'l, 518 F.2d 175, 180 (5th Cir. 1975) . . . . . . . . . . . . . . . . . 11

Tooke v. Sunshine Trust Mortg. Trust No. 86-225, 149 Bankr. 687 (M.D. Fla. 1992) . . 18

Unisource Worldwide, Inc. v. S. Cent. Ala. Supply, LLC, 199 F. Supp. 2d 1194, 1199
(M.D. Ala. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

Yick Wo v. Hopkins, 118 U.S.356, 370 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

STATUTES:

2003 Alabama Acts 313. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Alabama Code § 17-1-8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alabama Code § 17-4-136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alabama Code § 17-4-187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alabama Code § 17-4-211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alabama Code § 17-4-212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alabama Code § 17-4-250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alabama Code § 17-4-255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Help America Vote Act of 2002, 42 U.S.C. § 15301-15545 . . . . . . . . . . . . . . . . . . *passim*

National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-4 . . . . . . . . . . . . . . . . . . 4

**MISCELLANEOUS**:

Legislative History of the Help America Vote Act of 2002

H.R. Rep. No. 107-329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

On or about May 1, 2006, the United States filed its Complaint in this action, alleging that defendants have failed to comply with the Help America Vote Act of 2002 ("HAVA"), 42 U.S.C. § 15301 et seq.  The United States alleges, among other things, that defendants have failed, in elections for federal office, to create a computerized, statewide, interactive registration database, as required by Section 303(a) of HAVA (42 U.S.C. § 15483(a)); to attempt to match driver license or social security number information provided by persons who register to vote for the first time by mail as a means of complying with HAVA's identification requirement, as required by Section 303(b)(3)(B) of HAVA (42 U.S.C. § 15483(b)(4)(B)); and to include specific information on mail voter registration forms, as required by Section 303(b)(4)(A) of HAVA (42 U.S.C. § 15483(b)(4)(A)).

The United States now seeks a preliminary injunction because the evidence, which includes admissions of non-compliance with HAVA by Alabama officials, clearly establishes that the United States will prevail on the merits of its claims, and because, in the absence of immediate injunctive relief, irreparable injury will occur to Alabama voters, and to the federal election process.  In support of its Motion, the United States relies on this memorandum of law and the attached declaration of Christy McCormick, dated May 1, 2006 (hereafter, "McCormick Decl."), with exhibits; and on such testimony as may be presented at any hearing in this matter. The United States seeks an order that (1) enjoins defendants from failing to comply with HAVA, and (2) requires defendants to promptly present a plan to this Court as to how they intend to comply with HAVA in the future.  In the event that the defendants fail promptly to present and follow such a plan, the Court should take such steps as are necessary to ensure compliance with federal law.

1

## I.    INTRODUCTION

### A.    The Help America Vote Act of 2002

After the 2000 presidential election, a bipartisan majority in Congress enacted, and the

President signed into law on October 29, 2002, the Help America Vote Act.  42 U.S.C. §§

15301-15545.  HAVA, which was designed to improve the administration of elections for federal

office in the United States, was enacted pursuant to Congress' plenary power to regulate federal

elections under Article I, Section 4 ("the Elections Clause") of the United States Constitution.

See H.R. Rep. No. 107-329, Pt. 1, at 57 (2001).

Title III of HAVA, containing Section 303 of the statute, includes certain "uniform and

nondiscriminatory election technology and administration requirements" that apply in elections

for federal office.  42 U.S.C. §§ 15481-15483.  Section 303(a) of HAVA, entitled "Computerized

Statewide Voter Registration List Requirements," provides that each state, "acting through the

chief State election official, shall implement in a uniform and nondiscriminatory manner, a

single, uniform, official, centralized interactive computerized statewide voter registration list

defined, maintained, and administered at the State level."  Section 303(a) applies to all states that

require voter registration for elections for federal office.  42 U.S.C. § 15483(a).

According to Section 303(a) of HAVA, a statewide voter registration list must meet the

following criteria:

(a)    The list must serve as the single system for storing and managing the official list

of registered voters throughout the State, 42 U.S.C. § 15483(a)(1)(A)(i);

(b)    The list must contain the name and registration information of, and must assign a

unique identifier to, each legally registered voter in the State, 42 U.S.C. §§

2

15483(a)(1)(A)(ii)-(iii);

(c)    The list must be coordinated with other agency databases within the State, 42

U.S.C. § 15483(a)(1)(A)(iv);

(d)    Any election official in the State, including any local election official must be able

to obtain immediate electronic access to the information contained in the list, and all voter

registration information obtained by any local election official must be electronically entered into

the computerized list on an expedited basis at the time the information is provided to the local

official, 42 U.S.C. §§ 15483(a)(1)(A)(v)-(vi);

(e)    The State must provide the necessary support so that local election officials are

able to enter voter registration information on an expedited basis, 42 U.S.C. §

15483(a)(1)(A)(vii);

(f)    The list must serve as the official voter registration list for the conduct of all

elections for federal office in the State, 42 U.S.C. § 15483(a)(1)(a)(viii);

(g)    Election officials must perform list maintenance with respect to the computerized

list on a regular basis, 42 U.S.C. §§ 15483(a)(2) and 15483(a)(4);

(h)    The State must coordinate the list with State agency records on felony status

(where required by State law) and death, 42 U.S.C. § 15483(a)(2)(A)(ii);

(i)    The State must ensure that the name of each registered voter appears on the list,

only voters who are not registered or not eligible are removed from the list, duplicate names are

eliminated from the list, and eligible voters are not removed from the list in error, 42 U.S.C. §§

15483(a)(2)(B) and 15483(a)(4);

(j)    The list must provide that no application for voter registration shall be accepted or

3

processed unless it includes a driver's license number, or, for those without a driver's license, the last four digits of a social security number, or, for those without either of these numbers, a unique identifier, 42 U.S.C. § 15483(a)(5)(A)(i) and (ii); and

(k)    The State must enter into agreements to match information from the list against the State motor vehicle authority databases and the federal Social Security Administration number database, 42 U.S.C. § 15483(a)(5)(B).

Section 303(b) of HAVA, entitled "Requirements for Voters Who Register By Mail," requires the inclusion of specific content in mail voter registration forms developed under the National Voter Registration Act of 1993 (42 U.S.C. § 1973gg-4). See 42 U.S.C. § 15483(b)(4)(A).

Among other things, the voter forms must include the following:

(a)    A specific question regarding whether an applicant will be 18 years of age before election day and checkboxes to answer yes or no to this question;

(b)    A statement that if the applicant checks "no" in response to this question, the applicant should not complete the form; and

(c)    A statement informing the individual of specific instructions for first time registrants by mail concerning required identification. Id.

On June 13, 2003, Alabama enacted legislation designed to carry out the requirements of HAVA. See 2003 Ala. Acts 313. That legislation authorized the development of a computerized statewide voter registration list, and defined standards for the list. The legislation designated the Secretary of State to be the chief election official in the State, with authority to provide uniform guidance for election activities and to promulgate administrative rules for the purpose of

4

implementing the legislation.  See Ala. Code §§ 17-1-8(a); 17-4-136; 17-4-211; 17-4-212;

17-4-187; 17-4-250; 17-4-255.

Although States must comply with HAVA whether or not they chose to accept federal

funding, Congress has, for the first time in our Nation's history, provided federal funding to state

governments to assist in the conduct of elections for federal office.  Alabama has so far received

more than 41 million dollars in federal funds under HAVA, including $35,866,513.00

specifically earmarked for meeting the requirements of Title III of HAVA.  See McCormick

Decl., ¶ 38.

Alabama is scheduled to conduct elections for federal office in 2006: a primary election

on June 6, 2006, with a run-off election on June 27, 2006, and a general election on November 7,

2006.

**B.     Facts Giving Rise to this Lawsuit**

This action arises out of Alabama's failure to conform its voter registration form and to

implement a statewide voter registration database required by Section 303 of HAVA, and to

comply with related federal mandates.  42 U.S.C. § 15483.

The State of Alabama was required to comply with certain relevant provisions of Section

303 no later than January 1, 2004.  42 U.S.C. §§ 15483(d)(1)(A).  Alabama applied for, and

received, a waiver of compliance with the statutory deadline for implementing a statewide voter

registration database, until January 1, 2006.  42 U.S.C. § 15483(d)(1)(B); see McCormick Decl.,

¶ 5. A waiver of compliance with regard to the voter registration form is not available to the State

under HAVA.

At the time HAVA was enacted, Alabama was using the Alabama Voter Information

5

Network, or ALVIN, as a voter registration database. ALVIN was originally implemented

almost twenty years ago. See McCormick Decl., ¶ 6.

Today, only thirty-eight or nine of Alabama's counties use ALVIN as their "primary"

voter registration database. McCormick Decl., Exh. F, second page; Exh. L, at 1. The other

twenty-eight or -nine counties use "various systems," but periodically send updates to ALVIN.

Id., Exh. F, second page. The rate at which these updates are sent is not entirely clear. One

letter from Secretary Worley to the Department of Justice indicates that about twenty-six

counties send updates "at least weekly," and two others send updates "at least monthly." Id.,

Exh. F, second page. A later communication states that only seven counties send updates "on a

weekly basis," while about twenty-two other counties are said to upload data "regularly." Id.,

Exh. L, at 1.

Not surprisingly given its age, ALVIN has been described by Secretary Worley as a

"dinosaur" (id., ¶ 15, Exh. G); and as "antiquated" (id., ¶ 19, Exh. K). Indeed, Secretary Worley

has repeatedly acknowledged, more or less directly, that ALVIN in its present form is simply not

HAVA-compliant. In the press release announcing the selection of Diebold as a vendor (which

selection was later rescinded), Secretary Worley stated, "Implementing a new statewide voter

registration system is a major step toward increasing public confidence in the accuracy of voter

lists and the honesty of Alabama's elections," which implies, at least, that the old system did not

inspire such confidence. Id., ¶ 9, Exh. D. In response to an inquiry by the Department of Justice,

Secretary Worley alluded to the need to "modernize ALVIN" and to make what she called

6

"necessary enhancements of ALVIN." Id., ¶ 14, Exh. F, second and third pages.[1]

More to the point, Secretary Worley informed the Department of Justice in February 2006 that "to fully comply with HAVA, Alabama has chosen to develop and implement a new, modern statewide voter registration system," and that the State "entered into negotiations with Diebold to develop a HAVA-compliant statewide voter registration system." Id., ¶ 31, Exh. N. The necessary import of these statements is that the current system is *not* HAVA-compliant.

In any event, in order to replace ALVIN with a HAVA-compliant database, the State entered into a protracted – and, ultimately, futile – effort to solicit bids from database vendors, which inlcuded the following:

- On August 12, 2003, Secretary Worley issued a request for proposals ("RFP") for a new voter registration system. Id., Exh. B.

- On September 10, 2004, more than a year later, the Secretary of State scheduled presentations from the four highest scoring vendors. Id., ¶ 8, Exh. C.

- In May 2005, more than eight months after the presentations, Secretary Worley announced that she had selected Diebold to assist the State in building the new voter registration system. Id., ¶ 9, Exh. D.

- In August 2005, for reasons that are still not clear, and that remain the subject of press speculation to this day, the selection of Diebold was rescinded, and vendors were asked to

---

[1]Notwithstanding these admissions, Secretary Worley, in that same communication, asserted that Alabama was "substantially compliant" with HAVA. McCormick Decl., Exh. F, third page. Even if this equivocal statement is taken to refer to ALVIN, rather than to future plans for an enhanced database; and even if we ignore Secretary Worley's other admissions on this subject; and even if it were sufficient to be "substantially," rather than fully, compliant with HAVA (which is in no way conceded), Secretary Worley's assertion of substantial compliance is simply not true, for the reasons set forth in the argument section below.

submit further bids.  Id., ¶¶ 14, 18, 32, and Exhs. F, G, and J.

The result is that, as of today – over three-and-a-half years after HAVA was enacted; and two-and-a-half years after the issuance of the RFP; and more than two years after the initial HAVA compliance deadline; and one-and-a-half years after the final vendor presentations; and ten months after Diebold was "selected" as vendor; and three months after the final, extended, HAVA compliance deadline – Alabama has *not even chosen the vendor* that will deliver a database that will comply with HAVA.  Moreover, Alabama has published no plan or timetable for doing so.  Indeed, Alabama has posted no updates to the "HAVA Implementation" page on the Secretary of State's website for the past year.  McCormick Decl., ¶ 35.  There is, we must assume, no news or movement at all regarding RFPs, or potential vendors, or potential contracts, as there have been no press releases or other public announcements of any such action.  Alabama's efforts to implement a voter registration database required by Section 303 can only be described as a complete and utter failure.

The scope of this failure is apparent in related violations of Section 303.  Throughout the entire course of its discussions with the Department of Justice, Alabama had insisted that it was exempt from Section 303(a)(5)(A)'s mandates requiring new registrants to provide a voter's driver's license number or the last four digits of his or her social security number (which would require changes in voter registration forms and procedures to verify such numbers).  See McCormick Decl., ¶ 23, Exh. I, Exh. L, at 2.  Only recently (and more than a month after the January 1, 2006, deadline for compliance), the Secretary of State's attorney admitted in a telephone call, followed by a terse, indirect email, that Alabama did *not* fall within the relevant exception.  Id., ¶ 33, Exh. O.  Alabama has submitted no plan, either orally or in writing, to

implement the relevant provision that (it now admits) applies to Alabama.

Alabama has also failed to make database coordination arrangements with the state agencies that record deaths or felony status, with the driver license agency, or with the Social Security Administration, as required by HAVA. Id., ¶ 22; see 42 U.S.C. § 15483(a)(2) and (a)(5). This failure comes despite express, written assurances from Alabama that it would make these arrangements. Id., Exh. F, third page (Alabama will make arrangements with relevant state agencies by January 1, 2006); Exh. I (Social Security Administration).[2]

Finally, Alabama's current mail-in voter registration form does not comply with HAVA. Specifically, it does not require the driver's license number or last four digits of the social security number required by Section 303(a)(5) of HAVA. 42 U.S.C. § 15483(a)(5). It also it does not provide a checkbox for the question regarding whether an applicant will be 18 years of age before election day; does not provide the statement, "If you checked 'no' in response to either of these questions, do not complete this form."; and does not include a statement informing the individual of specific identification instructions for first time registrants. See McCormick Decl., Exh. P; 42 U.S.C. § 15483(b)(4)(A). Note that this particular provision was required to be implemented by January 1, 2004, without exception. 42 U.S.C. § 15483(d)(2). The fact that Alabama did not even check to see if its registration form complied with HAVA requirements, nor made the minor adjustments to it required by HAVA, even after it discovered it was out of compliance, demonstrates how inept and indifferent the State's approach to HAVA-compliance

---

[2]As is often true with a closely written statute like HAVA, Alabama's failure in one regard usually assures its failure in another. Thus, the absence of current social security information prevents the State from enforcing a section that allows such information to identify a voter registering by mail. See 42 U.S.C. § 15483(b)(3)(B).

has been.

In short, Alabama has essentially ignored its obligations under the various provisions of Section 303 of HAVA. In particular, Alabama's implementation of a HAVA-compliant voter registration database seems not to have progressed in any material way from August 2003. There is, moreover, no plan or prospect to remedy Alabama's non-compliance with federal law, and no assurance to the voters of Alabama that this situation will change soon, or ever. These intolerable circumstances are the basis for this lawsuit, and for this motion for a preliminary injunction.

## II.    ARGUMENT: PLAINTIFF SATISFIES THE STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

To succeed on a motion for a preliminary injunction, Plaintiff must establish, "(1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to plaintiff outweighs the harm an injunction may cause defendant; and (4) that granting the injunction would not disserve the public interest." Church v. City of Huntsville, 30 F.3d 1332, 1341-42 (11th Cir. 1994); see Frio Ice S.A. v. Sunfruit, Inc., 910 F.2d 154, 159 (11th Cir. 1990); Shatel Corp. v. Mao Ta Lumber and Yacht Corp., 697 F.2d 1352, 1354-55 (11th Cir. 1983).[3]

---

[3]Note that Section 401 of HAVA specifically contemplates injunctive relief:

> [t]he Attorney General may bring a civil action against any State of jurisdiction in an appropriate United State District Court *for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order)* as may be necessary to carry out the uniform and nondiscriminatory election technology and administrative requirements under sections 301, 302 and 303.

10

"[N]one of the four prerequisites has a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." Unisource Worldwide, Inc. v. S. Cent. Ala. Supply, LLC, 199 F. Supp. 2d 1194, 1199 (M.D. Ala. 2001), citing State of Tex. v. Seatrain Int'l, 518 F.2d 175, 180 (5th Cir. 1975).

### A.    Plaintiff Is Very Likely to Succeed on the Merits

"Whether the movant for preliminary injunctive relief has 'a substantial likelihood of success on the merits' requires a showing of only *likely*, rather than *certain*, success." Home Oil Company, Inc. v. Sam's East, Inc., 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002) (emphasis in original); see also Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981). "[W]here the 'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) (citing Ruiz, 650 F.2d at 565).

Here, the likelihood of Plaintiff's success on the merits is so high that it is difficult to imagine what the defendants can argue in opposition. HAVA Section 303(b) unambiguously requires defendants to make its voter registration form comply with NVRA's other simple changes no later than January 1, 2004, and HAVA Section 303(a) unambiguously requires defendants to comply with the voter registration list requirements no later than January 1, 2006. See 42 U.S.C. §§ 15483(d). Those dates have passed, and Alabama has yet to make the minimal changes to its voter registration form, and, as set forth above, its efforts to find a vendor to implement the required statewide database have been such a dismal failure that it is, essentially, back at square one. Accordingly, the issue of liability is settled, because there is no dispute that

---

42 U.S.C. § 15511 (emphasis added).

Alabama has failed to meet the relevant deadlines.

Nor does Secretary Worley's baseless assertion in September 2005 that "Alabama is, as of this date, substantially compliant with Section 303(a) of HAVA" offer any legal cover for the defendants.

First, as set forth above, a welter of unambiguous admissions establish that defendants never believed that ALVIN complied with the requirements of HAVA. Thus, Secretary Worley described ALVIN as a "dinosaur" (McCormick Decl., ¶ 15, Exh. G); and as "antiquated" (id., ¶ 19, Exh. K). In letters to the Department of Justice, Secretary Worley referred to the need to "modernize ALVIN" and to make "necessary enhancements of ALVIN" (id., ¶ 14, Exh. F, second and third pages); and stated that, "to fully comply with HAVA, Alabama has chosen to develop and implement a new, modern statewide voter registration system" (id., ¶ 31, Exh. N).

Second, the steps actually taken by Alabama establish – more convincingly than any statement on the matter – that ALVIN was not considered to be HAVA-compliant. The State entered into a process of soliciting proposals for a new database in the first place, with price tags ranging from $2.30 to $3.92 million. Id., Exh. D, first page. If the current system were truly HAVA-compliant, then the State did not need to do any of this. Furthermore, the stated scope of work in the State's RFP was to provide a "Voter Registration System which must comply with state and Federal laws which provide for a centralized statewide database of all registered voters within the State of Alabama"; and the same document provides for a transition plan and for migration from the old system to the proposed system. Id., Exh. B, at 5, 17.

Third, note that Secretary Worley never pretended that ALVIN was *fully* compliant with HAVA, but used instead the formulation "substantially compliant." This effectively *admits* that

12

ALVIN did not fully comply with HAVA. There is, moreover, no indication – in HAVA, in case law, or in any other statute – that "substantially complying" with a validly enacted federal voting rights law is all that is required of a state.

Fourth, and regardless of any of the foregoing, the admitted facts pertaining to how ALVIN actually works establish beyond any doubt that it is does not comply with HAVA. To begin with, no more than thirty-nine counties out of sixty-seven use it as their "primary" database, with the rest relying on "various" undefined systems. McCormick Decl., Exh. F, second page; Exh. L, at 1. That means both that ALVIN is not a "uniform system," and that it is not "the single system for storing and managing the official list" that is required by 42 U.S.C. § 15483(a)(1)(A)(i).

Further, depending on which of Secretary Worley's letters we credit, uploads from the counties are done on a weekly, a monthly, a "periodic," or a "regular[]" basis. See id., Exh. F, second page; and Exh. L, at 1. That means that data is not "entered into the computerized list on an expedited basis at the time the information is provided to the local official." See 42 U.S.C. § 15483(a)(1)(A)(vi). In fact, defendants themselves recognize that HAVA requires far more expedited data entry. When a vendor responding to Alabama's initial RFP asked, "Will each county be required to electronically update the State master file daily, weekly, or monthly?," the Secretary of State's office responded as follows: "The Voter Registration system shall be an interactive, real-time system." McCormick Decl., Exh. Q, at 2 (at "3. Question #42").

HAVA also provides that the "computerized database shall be coordinated with other agency databases within the State." 42 U.S.C. § 15483(a)(1)(A)(iv); see also § 15483(a)(2)(A)(ii). As set forth above, this agency coordination is conceded to be lacking in

13

Alabama's existing voter registration system.  McCormick Decl., ¶ 22.

Finally, regardless of the question whether ALVIN is "substantially compliant" with the database requirements of Section 303(a), there are clear violations, described above, of other provisions of HAVA that would be sufficient, without more, to establish defendants' liability. For example, now that Alabama has admitted it is covered by Section 303(a)(5)(A)'s requirements regarding the use of a voter's driver's license number or the last four digits of a social security number, it is clear that Alabama has violated these provisions.  See McCormick Decl., ¶¶ 23, 33.  Alabama has also violated for more than two years the provisions of Section 303(b)(4)(A) that concern the age checkbox and notice of voter identification requirements on voter registration forms.  See id., Exh. P; 42 U.S.C. § 15483(b)(4)(A).

For all of these reasons, it is clear beyond any reasonable dispute that Alabama has violated at least one, and probably several, provisions of HAVA.  Accordingly, Plaintiff is extraordinarily likely to prevail on the merits.

**B.     Alabama Voters Are Faced with Irreparable Harm in the Absence of an Injunction**

A showing of irreparable harm "must be neither remote nor speculative, but actual and imminent."  Siegel v. LePore, 234 F.3d 1163, 1176, 77 (11th Cir. 2000) (quoting Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).  An injury is "irreparable" only if it cannot be undone through monetary remedies. Northeastern, supra, 896 F.2d at 1285.

"Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society," because "the right to exercise the franchise in a free and unimpaired manner is

14

preservative of other basic civil and political rights." Reynolds v. Sims, 377 U.S. 533, 561-2 (1964); see Yick Wo v. Hopkins, 118 U.S.356, 370 (1886) (right to vote "is regarded as a fundamental political right"); see Dillard v. Crenshaw Co., 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) ("it is simply not possible to pay someone for having been denied a right of this importance"); cf., Home Oil Co., supra, 199 F. Supp. 2d at 1257 ("When construing statutes designed to address social evils . . . the tendency of federal courts has been to hold that an individual plaintiff is relieved of the burden of demonstrating irreparable harm as a precondition for preliminary injunctive relief") (citation omitted).

    In this case, the United States easily can establish irreparable harm.  Only thirty-eight or so counties even use ALVIN, Alabama's statewide voter registration list, as a primary system; the other twenty-nine or so counties use their own systems and send updates to ALVIN on various and undetermined schedules.  Thus, at any one time, there is no *single*, official list of voters registered to vote in federal elections.  Further, the ALVIN system itself lacks adequate assurances of accuracy, because it is not connected with the State agencies that record felony status, or deaths, or determinations of mental incompetence.  McCormick Decl., ¶ 22.  In the absence of injunctive relief, the integrity of federal elections will be harmed in Alabama by, among other things, having many voters appearing on more than one local registration list, and by the State's inability to cross-reference its voter registration list with information provided by other entities or agencies, and thereby to verify the legitimacy of the voter rolls.

    These facts are certain to affect the right to vote of many voters; the only question remaining is how many.  It is certain that voters will be wrongly denied the right to vote on election day.  It is certain that voters will encounter problems they did not create in the course of

15

attempting to register, and that this will typically happen shortly before the federal elections; and it is certain that some number of voters will abandon the effort to fix these problems. It is certain that some voters will be needlessly compelled to vote by provisional ballot. Finally, it is certain that these wrongs, errors, and omissions can be traced to the present condition of Alabama's voter registration lists, and that these problems would not exist if those lists were HAVA-compliant. Whether these problems involve hundreds, or thousands, or tens of thousands, or more voters will only be known at election time. Further, given the State's dismal track record in addressing its own non-compliance, these harms might continue through several elections.

Alabama's residents will also be injured if the State of Alabama has to return millions of dollars to the federal treasury for failing to comply with HAVA's requirements. See 42 U.S.C. §§ 15542(b)(2); (c). The injuries referred to above are not just imminent, they are present. Some began January 1, 2004, others began on January 1, 2006, and they continue to this day. Unless and until this Court compels the defendants to comply with HAVA, the names of voters attempting to register in the time period leading up to the federal election are not being entered on an expedited basis into a single, statewide, computerized, interactive voter registration list, thus, increasing the chance for last-minute voter registration errors; duplicate entries in registration list are being created and are not being found, thus increasing the potential for election fraud; and agencies are failing to coordinate information relating to registrants to assure the integrity of the federal electoral process.[4]

---

[4]Defendants' continued non-compliance with Section 303(a) and (b) of HAVA would also cause irreparable harm to Congress' authority under the United States Constitution's Elections Clause to determine the manner in which federal elections are conducted. In this instance, the defendants are seeking to ignore a valid statute enacted pursuant to the Elections Clause, in order to regulate upcoming federal elections in a manner of their own choosing; in

16

With each passing day, the State of Alabama drifts further away from being able to conduct federal elections in 2006 on terms that comply with federal law. Because the harm to the United States, to the voters of Alabama, to the integrity of federal elections in Alabama, and to Alabama residents is current and ongoing, the United States cannot wait for the outcome of litigation, and immediate injunctive relief is necessary and proper.

**C.     The Balance of Harms Strongly Favors the Grant of an Injunction**

"Plaintiff must show that the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to Defendants." Unisource Worldwide, Inc., supra, 199 F. Supp. 2d at 1212. In this case, the balance of harms weighs heavily in favor of the Plaintiff.

The irreparable harm to the United States and to the voters of Alabama has been set forth above. On the other side of the ledger, *there is no harm at all to the State of Alabama, because the requested injunction merely seeks to compel Alabama to do what it is already required to do under HAVA.* Unless Alabama simply intends to flout the law forever, it will, sooner or later, have to comply with the mandates of HAVA that it is presently violating. Any expenses it must incur in order to comply with the law do not constitute harm to the State, because Alabama will have to incur those expenses eventually. (Indeed, it should have incurred them already.)

Alabama has no interest cognizable at law in continuing to violate a Federal voting rights statute. Accordingly, the balance of harms weighs strongly in favor of the Plaintiff's motion for an injunction.

---

essence, usurping Congress's Elections Clause power for themselves. Such open defiance of the mandates of Congress in an area specifically reserved for its regulation would undermine and cause great harm to Congressional authority, and to the constitutional order of government.

17

**D.    A Grant of an Injunction Is in the Public's Interest**

"In circumstances where the public interest is implicated, [the question is whether] the issue of a stay will serve, rather than disserve, [the] public interest." Tooke v. Sunshine Trust Mortg. Trust No. 86-225, 149 Bankr. 687 (M.D. Fla. 1992). Here, the outcome of this analysis strongly favors Plaintiff's motion. The requested stay is in aid of a voting rights law intended to ensure proper registration, accurate voter rolls, and audit trails and accountability.

This injunction will positively serve the public's interest. It is, by contrast, Alabama's ongoing violations of HAVA that disserve the public interest. Alabama's actions (and inaction) threaten the right to vote of untold thousands; and thousands more may be forced to vote by provisional ballot. Meanwhile, the potential for voter fraud is increased, and the public's perception of the fairness and integrity of federal elections suffers.

There is another way that the injunction serves the public' interest. Congress has provided an incentive to Alabama to comply with Sections 303(a) and (b) by providing Alabama with over 41 million dollars. McCormick Decl., ¶ 38. If Alabama fails to comply with HAVA, it may have to give that money back. See 42 U.S.C. §§ 15542(b)(2); (c). In other words, the granting of this injunction should guarantee that Alabama can retain tens of millions of dollars of HAVA payments, which is clearly in the interest of the people of the State.

**III.    CONCLUSION**

For the foregoing reasons, the United States respectfully requests this Court to grant preliminary relief that: (1) enjoins defendants from failing to comply with Sections 303(a) and (b) of HAVA, and (2) orders defendants to present promptly a plan to this Court as to how they will bring the State of Alabama into compliance with Sections 303(a) and (b) of HAVA.

Dated: May 1, 2006
Respectfully submitted,


LEURA GARRETT CANARY                WAN J. KIM
United States Attorney                      Assistant Attorney General
                                            Civil Rights Division
                                            JOHN K. TANNER
                                            DC Bar No. 417585
                                            Chief, Voting Section


                                            _____
                                            ROBERT D. POPPER
                                            NY Bar No. 2397295
                                            CHRISTY A. McCORMICK
                                            VA Bar No. 44328
                                            Attorneys, Voting Section
                                            Civil Rights Division
                                            Department of Justice
                                            950 Pennsylvania Avenue, NW
                                            Room 7254, NWB
                                            Washington, D.C. 20035-6128
                                            (202) 514-4755 (telephone)
                                            (202) 307-3961 (facsimile)


19