IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | RECEIVED |
| ) | 2006 MAY -1  P 2: 49 |
| Plaintiff, ) | |
| ) | DEBRA P. HACKETT, CLK |
| v. ) | U.S. DISTRICT COURT |
| ) Civil Action No. MIDDLE DISTRICT ALA | |
| The STATE OF ALABAMA, and ) 2:06CV 392 - WKW | |
| NANCY L. WORLEY, Secretary of State; ) DECLARATION OF | |
| in her official capacity, ) CHRISTY A. McCORMICK | |
| ) | |
| Defendants. ) | |

**CHRISTY A. McCORMICK**, for her declaration, pursuant to 28 U.S.C. § 1746, deposes and says:

1.  I am currently a trial attorney in the Voting Section of the Civil Rights Division (the "Voting Section") of the United States Department of Justice. I have worked at the Voting Section as a trial attorney since January 2006, and have been employed as an attorney since 1999. I am fully and personally familiar with the facts stated herein. I make this declaration in support the United States' motion, brought on by Order to Show Cause, for a preliminary injunction.

2.  The Help America Vote Act of 2002 ("HAVA"), 42 U.S.C. § 15301 et seq., was enacted on October 29, 2002. Under Section 401 of HAVA, the Attorney General is charged with the responsibility for enforcement of the Act. 42 U.S.C. § 15511. That enforcement responsibility has been delegated to the Civil Rights Division.

3.  Since joining the Voting Section, my principal job responsibility has been to monitor and investigate the progress of various states in complying with the requirements of HAVA. To that end I have become extremely familiar with the status of the State of Alabama's actions pertaining to HAVA compliance.

4. Since 2004 and continuing to the present members of the Voting Section have engaged in a series of personal contacts with the Alabama Secretary of State's Office, and with other State officials involved in implementing HAVA and related State laws. My role in this process was to confer with the chief state election official concerning Alabama's HAVA compliance status.

5. Alabama's original statutory deadline to comply with the mandates of Section 303 of HAVA regarding the implementation of a computerized statewide voter registration list was January 1, 2004. See 42 U.S.C. § 15483(d)(1)(A). Alabama applied for, and received, a waiver of compliance with this deadline from the U.S. Election Assistance Commission, until January 1, 2006. 42 U.S.C. § 15483(d)(1)(B).

6. Alabama counties use a variety of existing non-uniform voter registration systems as the official voter registration lists for the conduct of elections for Federal office. These are supplemented by the Alabama Voter Information Network, or ALVIN, which was implemented almost twenty years ago. See Exhibit D, annexed hereto, second page. ALVIN remains in use to this day, although only thirty-eight or nine out of sixty-seven counties use it as their primary system. See, e.g., Exhibit F, second page; Exhibit L, at 1.

7. On August 12, 2003, Secretary Worley issued a request for proposals for a new voter registration system. A true and correct copy of that RFP is annexed hereto as Exhibit B. In that document, vendors are informed that a "Respondent is to begin implementation of the system no later than April 15, 2004 . . ." Id., at 11.

8. Over a year later, on September 10, 2004, the Secretary held a forum at which she received presentations from the four highest scoring vendors. A true and correct copy of an

agenda for that presentation is annexed hereto as Exhibit C.

9. More than eight months after the vendor presentations, in May 2005, Secretary Worley issued a press release announcing that she had selected Diebold to assist the State in building the new voter registration system. In that press release, she opined that "[i]mplementing a new statewide voter registration system is a major step toward increasing public confidence in the accuracy of voter lists and the honesty of Alabama's elections." Annexed hereto as Exhibit D is a true and correct copy of the relevant press release, dated May 27, 2005.

10. On or about August 26, 2005, the Department sent a letter to Secretary Worley asking for information on the status of the State's HAVA compliance efforts. A true and correct copy of that letter is annexed hereto as Exhibit E.

11. On or about September 9, 2005, Secretary Worley responded by letter. A true and correct copy of that letter is annexed hereto as Exhibit F.

12. In that September 2005 letter, Secretary Worley acknowledged that Alabama was scheduled to hold a primary election on June 6, 2006. Id., first page.

13. In that September 2005 letter, Secretary Worley stated, among other things, that the database currently in use in Alabama (known as "ALVIN") was the "primary system" in thirty-nine counties, and that the other twenty-eight counties used other systems, but sent updates to ALVIN either on a weekly or, in some cases, on a monthly basis. Id., second page.

14. In that September 2005 letter, Secretary Worley conceded that the current database system was not HAVA-compliant by, inter alia, describing at length Alabama's efforts to locate a vendor who could "modernize ALVIN," and referring to what she termed "necessary enhancements of ALVIN." Id., second and third pages. Secretary Worley conceded that these

efforts were, however, "stalled." Id., second page. Notwithstanding these concessions, Secretary Worley maintained that Alabama was "substantially compliant" with HAVA's database provisions; that "the necessary enhancements of ALVIN can occur quickly"; and that an interface among state agencies "will be completed" on January 1, 2006. Id., third page.

15.  In an October 6, 2005 article in the Mobile Register, entitled "Voter registration system now 'substantially compliant'" (a true and correct copy of which is annexed hereto as Exhibit G), Secretary Worley is quoted as saying "We do have a statewide system," but "it is a dinosaur."

16.  On or about October 27, 2005, the Department sent a letter to Secretary Worley to inquire whether the State had contacted the Social Security Administration ("SSA") for the purpose of entering into an agreement required by Section 303(a)(5). A true and correct copy of that letter is annexed hereto as Exhibit H.

17.  On or about November 28, 2005, Secretary Worley responded by letter, stating that, although the State had contacted the SSA, there existed no agreement between Alabama and the SSA, and that the State could enter into an agreement with the SSA after the State began development on a new voter registration system. The letter also asserted that Alabama was exempt under federal law from HAVA requirements concerning the use of a voter identification number (which is based on a new applicant's driver's license or Social Security number). A true and correct copy of that letter is annexed hereto as Exhibit I.

18.  A December 10, 2005 article in the Huntsville Times, entitled "State to miss voter registration deadline" (a true and correct copy of which is annexed hereto as Exhibit J), suggests that Secretary Worley chose Diebold over the recommendation of a state advisory

committee, and felt compelled to retract the bid "[a]fter an outcry by some on the committee."

19. In a December 31, 2005, article in the <u>Montgomery Advertiser</u>, entitled "Voting system needs $1 million a year" (a true and correct copy of which is annexed hereto as Exhibit K), Secretary Worley is quoted as saying, "We have an antiquated system because it was not updated technologically on an annual basis."

20. January 1, 2006, was the deadline under federal law for the State of Alabama to have a fully HAVA-compliant database. 42 U.S.C. §§ 15483(d)(1), 15541. January 1, 2004, was the deadline under federal law for the State of Alabama to attempt to match the driver's license number or social security number information provided by applicants to register to vote for the first time by mail after January 1, 2003, to existing records, as a means to satisfy HAVA's identification requirements. 42 U.S.C. §§ 15483(d)(2), 15541.

21. On or about January 12, 2006, I participated in a conference call from our office to Secretary Worley and her attorney. During the course of that telephone call, Secretary Worley admitted that Alabama does not currently have a uniform, statewide, HAVA-compliant database. She described the failed process that she had undertaken to bring the existing voter registration system, ALVIN, into HAVA compliance. She stated that a proposal to hire a vendor to build the statewide system was still in the development stage, and that she was also considering an option that Alabama build its own system, which indicates that the system will not be compliant for some time. Secretary Worley could not provide a date when the ALVIN system would be updated, or a replacement system would be in place, to meet HAVA voter registration list requirements.

22. In the January 12, 2006, conference call, Secretary Worley admitted that the

5

ALVIN system now in place does not uniformly serve as the official registration system for all of Alabama's counties, and that many counties have their own database systems which only sporadically update ALVIN. She disclosed that there are no electronic connections between the ALVIN system and the Alabama Administrative Office of the Courts, which records felony status, nor to the Alabama Department of Public Health, which records deaths, or the state driver license agency, or any agency charged with maintaining records of persons declared mentally incompetent. Currently, the Alabama Administrative Office of the Courts directly notifies the counties of felony status. She said that updates to the ALVIN database by many counties which do not use ALVIN as their primary system are not currently on a daily or expedited basis, but are done either weekly or monthly.

23.     In the January 12, 2006, conference call, Secretary Worley also stated that the Alabama voter registration application does not provide a space for an applicant's driver's license number. She acknowledged that the state has no ability to do electronic verification of driver's license numbers with the Alabama Department of Public Safety, the state agency responsible for issuing driver's license numbers. She stated that the voter registration form requests the full social security number, but does not require it, and that the State does not now have a connection to the Social Security Administration for purposes of verifying social security numbers, as required by HAVA. She reiterated the position she stated in her November 28, 2005, letter that the State was exempt from the Section 303(a)(5) requirement to use the driver's license number/last four digits of the social security number combination. She indicated that she had been told by the prior director of voter registration in Alabama, Anita Tatum, that the State was exempted from Section 303(a)(5) because it was allowed to request full social security

numbers by the Privacy Act, since it had done so since before the Privacy Act went into effect.

24. On or about January 27, 2006, Secretary Worley sent a letter to the Department to address issues raised in the January 12, 2006, teleconference. A true and correct copy of that letter is annexed hereto as Exhibit L.

25. In that January 2006 letter, Secretary Worley indicated that the circumstances surrounding Alabama's database had not fundamentally changed since her September 2005 letter (compare Exhibits F and L). Specifically, she indicated that thirty-eight counties (as opposed to thirty-nine in September 2005) used the ALVIN system; while twenty-nine (as opposed to twenty-eight in September 2005) "use varying types of local voter registration systems that upload to ALVIN on a periodic basis." Id., at 1. The January 2006 letter also identified only seven counties that performed an upload on a weekly basis; twenty-two others were only said to upload data "regularly." Id. This appears to be a deterioration from September 2005, when it was asserted that twenty-six counties performed data uploads on a weekly basis. See Exhibit F, second page.

26. That January 2006 letter indicated that it was Secretary Worley's intention "to work with local election officials to achieve weekly updates to ALVIN from all sixty-seven (67) counties, while we implement a new statewide voter registration system." Exhibit L, at 2.

27. The very fact that the new system had not been implemented by January 1, 2006 – indeed, the fact that Alabama's voter registration system was, in all essentials, in about the same, or worse, condition compared to September 2005 – meant that Alabama had violated the requirements of HAVA. See 42 U.S.C. §§ 15483(d)(1), 15541.

28. The January 2006 letter also asserted, once again, that Alabama was exempt from

HAVA's requirements that first-time applicants provide either their driver's licenses or on their Social Security numbers, on the ground that Alabama fell within an exception for those states that required disclosure of Social Security numbers prior to 1975. See Exhibit L, at 2; see 42 U.S.C. § 303(a)(5)(D), citing 5 U.S.C. § 552a note.

29.   On or about January 19, 2006, the Department sent another letter to Secretary Worley requesting a further update on Alabama's progress toward HAVA compliance. A true and correct copy of that letter is annexed hereto as Exhibit M.

30.   On or about February 1, 2006, Secretary Worley responded by letter, a true and correct copy of which is annexed hereto as Exhibit N.

31.   In that February 2006 letter, Secretary Worley stated that, "to fully comply with HAVA, Alabama has chosen to develop and implement a new, modern statewide voter registration system," and noted that Diebold had been contacted in order "to develop a HAVA-compliant statewide voter registration system." Id., at 2. Both the content and the context of these statements makes it clear that Secretary Worley was frankly acknowledging that Alabama's voter registration system, as it existed, was *not* HAVA-compliant.

32.   In that February 2006 letter, Secretary Worley described an insurmountable impasse that arose during the course of negotiations with Diebold, which led to the issuance of a new RFP. Id., at 2. Secretary Worley mentioned "the possibility of contracting with a state university" to develop a system. Id., at 3. Secretary Worley also indicated that the implementation of a proper database was contingent upon the legislature's response to a request she made for further funding. Thus, she stated that "I am hopeful the Legislature will rise to the occasion," and that "I wish to have a better response to potential legislative funding before I

8

make a final decision." Id., at 3.

33. On or about February 7, 2006, I received a telephone call from Adam Bourne, an attorney in the Secretary of State's Office. In that call, he admitted that, upon further study of the issue, Alabama was *not* exempt from the requirements concerning unique voter identification numbers based on driver's licenses or Social Security numbers. That telephone call was followed by an email conceding that Alabama that did *not* require disclosure of Social Security numbers prior to 1975. That admission meant that Alabama did not fall within the relevant statutory exception (contained in 42 U.S.C. § 303(a)(5)(D), and 5 U.S.C. § 552a note). A true and correct copy of Adam Bourne's February 7, 2006, email is annexed hereto as Exhibit O.

34. As of the last written communication we received from Secretary Worley's office, on February 1, 2006 – which was written, I must note, a full month *after* the statutory deadline contained in HAVA had already passed – the State of Alabama *had not even chosen a software contractor* who would install and implement a HAVA-compliant voter registration database. See Exhibit N, at 3.

35. The website of the Alabama Secretary of State pertaining to "HAVA Implementation," which is located at http://www.sos.state.al.us/election/hava/index.aspx, has not posted any updates after May 2005. It thus appears that no further RFPs or contracts have been issued.

36. Annexed hereto as Exhibit P is a true and correct copy of Alabama's current mail-in registration form.

37. Annexed hereto as Exhibit Q is a true and correct copy of a September 19, 2003, set of responses on behalf of the Secretary of State to follow-up questions by vendors.

38. To date, Alabama has received more than 41 million dollars ($41,350,962) in federal funds under HAVA. This funding includes the following:

(a) $4,989,605 pursuant to Section 101 of HAVA, 42 U.S.C. § 15301, for activities to improve the administration of elections;

(b) $51,076 pursuant to Section 102 of HAVA, 42 U.S.C. § 15302, for the replacement of punchcard or lever voting machines;

(c) $35,866,513 pursuant to Section 251 of HAVA, 42 U.S.C. § 15401, for meeting the requirements of Title III of HAVA; and

(d) $443,768 pursuant to Section 261 of HAVA, 42 U.S.C. § 15421, for assuring access to the voting process for individuals with disabilities.

39. Annexed hereto as Exhibit A is a true and correct copy of a April 3, 2006, letter the Department sent to Troy King, the Attorney General of Alabama, and counsel for Secretary Worley, advising that the Attorney General of the United States had authorized a lawsuit against the State and the Secretary of State for failing to comply with HAVA requirements regarding a statewide voter registration databases.

40. In the course of my dealings with the Secretary of State and her staff concerning the State of Alabama's compliance with HAVA, I have learned that the State has not had in the past, and currently does not have, a computerized statewide voter registration system that meets the requirements of Section 303 of HAVA. More specifically:

(a) the State has not implemented a single, uniform, official, centralized interactive computerized statewide voter registration list that is defined, maintained and administered at the State level, and that contains the name and registration information of every

legally registered voter in the State;

(b) the State does not have a statewide computerized voter registration list that serves as the single system for storing and managing the official list of registered voters throughout the state;

(c) the State does not have a statewide computerized voter registration list that has been coordinated with other agency databases within the State;

(d) the State does not have a statewide computerized voter registration list that serves as the official voter registration list for the conduct of all elections for Federal office in the State;

(e) the State does not coordinate with state agencies keeping records on deaths, felon status and federal Social Security Records for the purpose of removing ineligible voters or verifying eligible voters;

(f) the State does not have data verification procedures for first-time registrants by mail after January 1, 2003, nor does it collect the required information to be able to implement data matching verification for all new registrants after January 1, 2006;

(g) the State does not maintain a statewide interactive computerized voter registration list that ensures that -

   (i) the name of each registered voter appears on the list;

   (ii) only voters who are not registered or who are not eligible to vote are removed from the list; and

   (iii) duplicative names are eliminated from the list on an expedited basis.

11

41. In the course of my dealings with the Secretary of State concerning the State of Alabama's compliance with HAVA, I have learned that the Secretary of State, the chief elections officer responsible for developing, maintaining and implementing the State's voting systems and voter registration list, and the respective agency heads responsible for providing information for the statewide voter registration list have failed to take the actions necessary for the State to meet the requirements of Section 303 of HAVA in a timely manner. These failures include, but are not limited to the following:

    (a) the Secretary of State has not contracted with an entity or entities to develop and implement a statewide voter registration list;

    (b) the Secretary of State and the heads of the agencies responsible for database verification and updates have not established the technical requirements, or built the technical infrastructure necessary for implementation of the statewide voter registration list; and

    (c) the Secretary of State and the State have not entered into an agreement with the federal Social Security Administration and established the necessary infrastructure to match information from the statewide voter registration list against the federal social security number database.

42. In the course of my dealings with the Secretary of State and her staff concerning the State of Alabama's compliance with HAVA, I have learned that the State has a long way to go before it is compliant with HAVA. In light of the above, and of the inability of the Secretary of State, the State and the agency heads to take timely action to date to ensure compliance with HAVA, it is my belief that, unless and until ordered to do so by this Court, Defendants will not take timely actions necessary to ensure that a computerized statewide voter registration list will

be developed and implemented for effective use prior to the time of the first election for Federal office in the State in 2006. Moreover, it is my belief that Alabama is far behind and time is short, and that the accompanying application for an Order to Show Cause is the appropriate method to bring this matter before the Court.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated:      Washington, D.C.
               May 1, 2006

                                            Christy A. McCormick