# EXHIBIT N



**NANCY L. WORLEY**
SECRETARY OF STATE

First Floor, State Capitol
Suite S-105
600 Dexter Avenue
P.O. Box 5616
Montgomery, Alabama 36103-5616

February 1, 2006

## State of Alabama

**VIA U.S. MAIL AND FACSIMILE**

The Honorable John K. Tanner
Chief, Voting Section, Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue N.W., Room 7254-NWB
Washington, DC 20530

**Re: Response to Your Letter of January 19, 2006**

Dear Mr. Tanner:

Thank you for your letter of January 19, 2006, in which you requested a detailed statement of Alabama's compliance with certain requirements of the Help America Vote Act of 2002 ("HAVA"). Please find below Alabama's response to your request.

### 1. Section 301 – Voting Systems Standards

Alabama's Electronic Voting Committee ("EVC") has certified certain HAVA-compliant voting systems for use in the state. For details, please see the list of certified voting systems enclosed with this letter.

Sixty-six (66) of sixty-seven (67) Alabama counties have placed orders for equipment to meet the requirements of HAVA. The only county that has not placed an order is Jefferson. However, Jefferson County has selected voting equipment to comply with HAVA.

All sixty-seven (67) Alabama counties have chosen to procure voting equipment to provide accessibility to voters with disabilities from Election Systems and Software ("ES&S"). Specifically, the counties have chosen the ES&S Automark to comply with HAVA disability requirements. Additionally, all sixty-seven (67) counties have selected ES&S to provide for their precinct-based counter and optical scan machine needs. These ES&S voting systems have been certified by the EVC.

The Secretary of State's office has filed administrative rules for defining what constitutes a vote, pursuant to the authority granted by *Code of Ala.* 1975, § 17-25-4(f). Please find a copy of the relevant rules enclosed with this letter.

Montgomery County has taken delivery of equipment to comply with HAVA. ES&S plans to deliver voting equipment to the remaining sixty-six (66) counties no later than

OFFICE (334) 242-7206, FAX (334) 242-4993, E-MAIL SOS@SOS.AL.GOV • ELECTIONS (334) 242-7210, FAX (334) 242-2444
CORPORATIONS (334) 242-5324, FAX (334) 240-3138 • UCC (334) 343-5231, FAX (334) 353-8269 • LEGAL (334) 242-7476, FAX (334) 242-4993
LANDS & TRADEMARKS (334) 242-5325, FAX (334) 240-3138

1

May 1, 2006, over a month before Alabama's June 6, 2006 Primary Election. I have advised the counties of the need to test the equipment immediately upon delivery. Further, the counties will inspect and test the machines again prior to the Primary Election in compliance with *Code of Ala.* 1975, § 17-9-17.

The delivery date will provide sufficient time for ES&S and county officials to train poll workers on the use of the new equipment pursuant to *Code of Ala.* 1975, § 17-9-19, and for the counties to instruct voters on the use of the new machines in compliance with *Code of Ala.* 1975, § 17-9-24.

I fully expect all Alabama counties to have voting equipment to comply with HAVA on the ground in May and in use for the June 6, 2006 Primary Election.

## 2. Section 303(a) – Computerized Statewide Voter Registration List

Alabama has in place a statewide voter registration system known as the Alabama Voter Information Network ("ALVIN"). However, to fully comply with HAVA, Alabama has chosen to develop and implement a new, modern statewide voter registration system.

I am in the process of negotiating the development Alabama's new system. Unfortunately, the acquisition of a new system has been delayed by stalled negotiations resulting from a provision of Alabama's bid law, and a lack of necessary state funding for continued access beyond 2006.

On August 12, 2003, the Secretary of State's office issued a Request for Proposals ("RFP"), as required by Alabama law, for a statewide voter registration system. On May 27, 2005, after a thorough process, in which technological experts, government officials, and citizens from across Alabama actively participated, our office entered into negotiations with Diebold to develop a HAVA-compliant statewide voter registration system.

A two-month negotiating process between the Secretary of State's office and Diebiold followed. However, our productive, good faith negotiations were halted by a stated refusal of Diebold to afford the State of Alabama full ownership rights in the voter registration system. Diebold insisted on a licensing arrangement in which the state would have the right to use its registration software subject to certain conditions. I was willing to concede the point and agree to a contract with a licensing provision.

However, I was advised by my then-general counsel that the original RFP issued by our office did not contemplate a licensing agreement, and that such an agreement would have to be preceded by an amended RFP. Therefore, negotiations with Diebold could not continue under the original RFP.

On the same day as the above-described impasse, August 18, 2005, the Secretary of State's office issued an amended RFP that included language allowing for a licensing

2

agreement. Please find the amended RFP enclosed with this letter. Responses to the amended RFP were due on September 1, 2005, and three (3) vendors responded by that date, Diebold, Election Systems and Software, and SysCon.

Though these vendors indicated that they were agreeable to a licensing arrangement, all of them described recurring annual licensing and maintenance fees in their proposals. I became very concerned that there would not be continued federal funding beyond 2006 to pay for recurring licensing fees and came to the conclusion that the Alabama Legislature would have to close this gap in funding. Therefore, on September 30, 2005, I held a meeting with all three (3) vendors who had responded to the amended RFP, in which I informed them that I intended to delay a final decision while I sought additional state funding for the annual licensing and line charges beyond 2006.

In our budget request for fiscal year 2007, we are requesting approximately $400,000 in added funding to help cover recurring licensing and maintenance costs. I have since had several meetings with the Governor and his staff to discuss this critical financial need. I have had similar discussions with key legislators. As this legislative session begins, I am hopeful that the Legislature will rise to the occasion and provide these additional funds.

However, in recognition of the possibility that the Legislature will not provide the necessary funding, I am exploring the possibility of contracting with a state university to develop and implement the statewide system. I wish to have a better response to potential legislative funding before I make a final decision.

I understand the need to arrive at a decision soon. I am willing to work with the Voting Section of the Department of Justice to establish a revised timetable for choosing and developing a new statewide voter registration system. I will of course communicate any further developments to your department.

3. **Contacts and Link for Further Information**

For further information on HAVA compliance in Alabama, please feel free to call me or Adam Bourne, and/or navigate to the following web address:

http://www.sos.state.al.us/election/hava/index.cfm

Thank you for all that you do to improve America's elections. I look forward to continuing to work with you to ensure HAVA compliance for the State of Alabama.

Sincerely,

Nancy L. Worley
Secretary of State of Alabama

Enclosures (3)

# Certified Electronic Voting Systems
## Alabama Electronic Voting Committee
## State of Alabama

### Accupoll, Inc.

**Systems:**
Accupoll DRE Voting System v. 2.3.14 (1990 FVSS)

Accupoll DRE Voting System v. 2.5 (2002 FVSS)

### Avante International Technology, Inc.

**Systems:**
DRE Vote Trakker [ firmware version 4.7.6 ] (1990 FVSS)

Optical Vote Trakker [ version 1.5.0 ] (2002 FVSS)

### Election Systems and Software

**Systems:**
AIS 100

AIS 115

AIS 315

ES&S Model 100 Precinct Counter (firmware release 4.5.5; upgrade to AIS 100)

ES&S Model 100 Precinct Counter (firmware v. 5.0.0.0; upgrade) (1990 FVSS)

ES&S Model 150 (upgrade to AIS 115)

ES&S Model 550 (upgrade to AIS 315)

ES&S Model 650 Central Counter

Optech II

Optech IIIP Eagle

Optech IV-C

iVotronic DRE Precinct Voting Machine (firmware release 6.1.2)

---

Prepared by the Elections Division, Office of the Secretary of State, State of Alabama
Revised: December 20, 2005

<u>ES&S Unity v. 2.5 (includes the following certified hardware) (2002 FVSS)</u>
- ES&S Model 100 Precinct Counter [firmware release 5.1.0.0; upgrade]
- ES&S Model 650 Central Counter [firmware release 2.0.1.0; upgrade]
- iVotronic DRE Precinct Counter [firmware release 9.0.0.0; upgrade]

AutoMARK voter assist terminal v. 1.0 - AIMS Software v. 1.1.10 (2002 FVSS)

### Danaher Controls

**Systems:**
Electronic 1242 (formerly Shouptronic 1242)

### Sequoia-Pacific

**Systems:**
Opscan 6

### Diebold / Global Election Systems

**Systems:**
Accuvote ES 2000

<u>GEMS v. 1-18-24(A1) (Includes the following certified hardware) (2002 FVSS)</u>
- Accuvote-OS Optical Scan Precinct Counter [firmware v. 1.96.6]
- Accuvote-TSX (DRE) Precinct Counter [firmware v. 4.6.4]

### Hart Intercivic

**Systems:**
eSlate (firmware version 1.13) (1990 FVSS)

eSlate v. 3.1 [firmware version 2.0.13] - upgrade from 1.13 (1990 FVSS)

### Populex

**Systems:**
Digital Paper Ballot Voting System v. 1.0 (2002 FVSS)

### 820-2-1-.02 Definition of a Vote.

(1)     This rule serves to fulfill the requirement of defining what constitutes a vote under the Help America Vote Act ("HAVA"), Public Law 107-252; and Code of Alabama, § 17-25-4.

(a)     This rule shall not supersede any other law.

(b)     This rule shall not apply to a vote cast in a municipal election.

(c)     This rule shall be construed in favor of counting a cast vote.

(2)     For the purpose of this rule:

(a)     "Electronic voting system" means any Direct Recording Electronic Voting System or optical scan voting system, as defined in this rule.

(b)     "Direct Recording Electronic Voting System/DRE Voting System" means a voting system certified by the Electronic Voting Committee that allows a voter to cast his or her vote using a touch-screen, a keypad, Voter With Disability device, or other input device.

(c)     "Question" means any item on a ballot or paper ballot, as defined in this rule, other than a candidate.

(d)     "Touch-screen" means a video screen that is part of a voting system certified by the Electronic Voting Committee that a voter can manipulate by touching or otherwise applying pressure.

(e)     "Identifiable write-in selection" means a real and reasonably distinctive name of a person entered into a ballot line or touch-screen field designated for a write-in candidate.

(f)     "Voter With Disability Device/VWD" means a device that is part of a voting system certified by the Electronic Voting Committee, which, when plugged into a normal DRE unit, enables a voter with a disability to vote without assistance.

(g)     "Optical scan voting system" means a voting system certified by the Electronic Voting Committee that electronically accepts and reads a specially printed ballot.

(h)     "Approved marking device" means a writing utensil or a marking machine used to mark a ballot designed for an optical scan voting system, that is provided by, manufactured by, recommended by, or approved by the manufacturer or provider of the optical scan voting system. This may include, but is not limited to, a Direct Recording Electronic Voting System designed to mark a ballot for an optical scan voting system.

1

(i) "Tabulating machine" means any central or precinct-based electronic system that is part of a voting system certified by the Electronic Voting Committee that is capable of accepting, reading, and counting a vote.

(j) "Ballot" means an official ballot provided for by Code of Alabama, §§ 17-8-1-45.

(k) "Spoiled ballot" means a ballot that is disregarded in accordance with Code of Alabama, § 17-8-33.

(l) "Stray mark" means an unidentifiable design on a ballot or paper ballot, as defined in this rule, that is not clearly associated with any candidate or question on the ballot or paper ballot.

(m) "Paper ballot" means a ballot which is designed to be marked and read manually.

(n) "Erasure" means any mark on a ballot or paper ballot that appears to a reasonable person to have been erased by a voter in favor of a new vote or a non-vote.

(3) A voter shall cast a countable vote on a Direct Recording Electronic ("DRE") voting system by either:

(a) Pressing the appropriate place on the DRE voting system's touch-screen to cause an "X" or similar designation to display adjacent to the name of the candidate or answer to a question for which the voter desires to vote;

(b) Typing on the DRE voting system's touch-screen the name of an identifiable write-in selection whose name is not otherwise printed on the ballot in accordance with the instructions for voting on the DRE unit;

(c) In the case of a voter using a Voter With Disability ("VWD") device attached to the DRE unit, pressing the appropriate buttons on the DRE voting system's keypad; or

(d) Using a VWD or other device designed for the DRE voting system to perform the aforementioned functions.

(4) A voter shall cast a countable vote on an optical scan voting system by either:

(a) Using an approved marking device to fill in the oval or complete the arrow adjacent to the name of the candidate or answer to a question on the ballot for which the voter desires to vote; or

(b) Using an approved marking device to fill in the oval or complete the arrow adjacent to the write-in space and writing the name of an identifiable write-in selection whose name is not otherwise printed on the ballot in the space on the ballot that is specified in the instructions for voting the ballot; and

2

(c) Placing the completed ballot into the optical scan voting system's receptacle in accordance with the instructions posted at the polling place or relayed by a poll worker.

(5) The following special rules govern the manual review of a vote cast on an optical scan voting system where the ballot upon which the vote is cast is rejected or otherwise not read by the tabulating machine and not spoiled:

(a) If the voter fills in the oval or completes the arrow adjacent to the name of a candidate printed on the ballot and fills in the oval or completes the arrow adjacent to the write-in space for the same office, the properly cast vote for the candidate on the ballot shall be counted and the write-in vote shall be ignored.

(b) If it appears that there is a properly cast vote and that a stray mark has caused the tabulating machine to reject the vote for the office, the properly cast vote shall be counted and the stray mark shall be ignored.

(c) If a voter marks his or her ballot in a manner other than that specified by law and this rule, the vote shall be counted if the voter clearly and without question indicates the candidate or answer to a question for which the voter desires to vote. The following are specific but non-exclusive situations where a vote should not be or should be counted:

1. If a voter marks in the same manner more names than there are persons to be elected to an office, then no vote shall be counted for that office. If a voter marks in the same manner more answers than a particular question calls for, then no vote shall be counted for that question.

2. If a voter marks with a cross, "X," checkmark, or other similar mark within the oval or arrow adjacent to the name of the candidate or answer to a question for which the voter desires to vote, the vote shall be counted. Underlining or circling the candidate or answer to a question for which the voter desires to vote also constitutes a countable vote. An apparent erasure of an aforementioned mark shall not be counted if the voter makes another mark in accordance with this rule or other applicable law.

(6) In any event where a voter casts a vote using a paper ballot under Code of Alabama, § 17-9-28; the vote shall be counted in accordance with Code of Alabama, §§ 17-8-15-21.

**Author:** Adam L. Bourne
**Statutory Authority:** Code of Ala. 1975, §§ 17-1-8 (a) & 17-25-4 (f)
**History:** New Rule Filed

3

Nancy L. Worley
SECRETARY OF STATE



First Floor, State Capitol
Suite S-105
600 Dexter Avenue
P.O. Box 5616
Montgomery, Alabama 36103-5616

## State of Alabama

### Notice of Amendment to Request for Proposals

*Notice is hereby given to all vendors who responded to the Secretary of State's Request for Proposals ("RFP") of August 12, 2003 that the RFP has been amended. This notice is sent via Federal Express with proper postage affixed, on this the 18th day of August, 2005.*

This document is to serve as official notice that the last sentence in Section A of the Introduction of the Request for Proposals ("RFP") of August 12, 2003, is hereby amended. The initial version stated:

> *The system must meet all requirements of federal and state laws concerning voter registration and shall become the property of the Secretary of State's office upon implementation.*

The amended version is as follows:

> *The system must meet all requirements of federal and state laws concerning voter registration and <u>shall be administered by the Secretary of State's office pursuant to a licensing agreement.</u>*

If this amendment impacts the proposal you submitted in September of 2003, please submit any revisions in writing with original language stricken and new language, including pricing adjustments, underlined. Please submit any revised or amended pages (do not resubmit the entire proposal) of your proposal to this office on or before 4:00 P.M. on Thursday, September 1, 2005.

Our office announced on May 27, 2005, that we would begin negotiations with Diebold to implement a centralized voter registration system in Alabama; however, the Voter Registration System Contract <u>has not</u> been awarded due to an impasse on issues that have not been resolved during our sessions with representatives of that vendor. On August 17, 2005, we ended negotiations with Diebold so that the RFP could be amended to clarify the acknowledgment of this office's decision to administer the selected system pursuant to a licensing agreement.

In contemplation of the pending Federal and State implementation deadlines, this notice is being forwarded only to those vendors who submitted a proposal to the Alabama Secretary of State's Office pursuant to the original version of the Request for Proposal in September of 2003.

All vendors should be aware that a modified implementation schedule will be employed by this agency upon the award of a voter registration contract issued, if any, pursuant to this Request for Proposal, as amended.

Thank you for your prompt attention to this matter. Please feel free to contact Al Austin, Voter Registration Project Manager, in my office with any questions you may have regarding this amendment.