IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:06-CV-00392-WKW |
| | ) |
| STATE OF ALABAMA, and | ) |
| NANCY L. WORLEY, Alabama | ) |
| Secretary of State, | ) |
| in her official capacity, | ) |
| | ) |
| Defendants. | ) |

## SUBMISSION OF HAVA PLAN, ANALYSIS, AND ARGUMENT

Comes now Nancy L. Worley, in her official capacity as Alabama Secretary of State, and comes now the State of Alabama, and as directed by this Honorable Court's order, dated June 7, 2006, submit the State's HAVA compliance plan.[1]  Said plan is attached as Exhibit 1.  The salient points of the compliance plan are set out and discussed below.

---

[1]   Under the Alabama Constitution, the Secretary of State is a constitutional officer. Ala. Const. Art. V § 112.  ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county."); *see also* Ala. Const. Art. V §§ 114-18, 132-37.

Under Alabama statutory law, the Secretary is the chief elections officer authorized and empowered to perform all acts with respect to oversight and execution of all laws involving voter matters.  Ala. Code § 17-1-8(a) ("The Secretary of State is the chief elections official in the state and shall provide uniform guidance for election activities.").  *See also* Ala. Code § 17-4-250(a) ("The Secretary of State shall be the

## The Preliminary Injunction, the Plan Preparation Background, and a Request for the Court to Permit Comment by Appropriate Officials

At the May 30, 2006 hearing, this Honorable Court granted the Secretary 30 days to develop the State's plan to come into compliance with HAVA's Section 303(a) and Section 303(b) requirements, codified at 42 U.S.C. § 15483(a) and (b). The Secretary did not anticipate the large number of sources from which this Court expected her to solicit input in the formulation of the plan as set out in the Court's June 7, 2006 Order. While input was solicited from a variety of sources, including those mentioned in the June 7, 2006 Order (*see* Exhibit 2, facsimile communication dated June 23, 2006), due to the time necessary to actually develop the plan, the Secretary was not able to make her draft plan available for comment until approximately 1:30 p.m. on Friday, June 23, 2006, at which time the plan was posted on the Secretary's website.[2] Accordingly, local officials may not

---

primary state official for federal contact for the implementation of the National Voter Registration Act of 1993 and the Help America Vote Act of 2002.").

The Secretary of State's plan, therefore, must necessarily be the State's plan unless, or until, her authority as primary state official for implementation of HAVA is removed, or her proposed HAVA plan is rejected.

[2]    Local officials, as well as other relevant public officials and the HAVA advisory committee, were notified by facsimile of the existence of the proposed HAVA plan and its availability on the Secretary's website. A copy of the plan was also furnished to counsel for The Probate Judges Association shortly after it became available.

Counsel for the United States (Mr. Popper) was notified by voicemail of the existence of the plan and invited to provide prefiling input (which would allow the

have had sufficient time to make their concerns known. For this reason, the State respectfully asks this Court to allow local officials, including The Probate Judges Association which has separately moved this Court though counsel, to file written comments on the plan on the same schedule as the Department of Justice, *i.e.* to file their written comments with the Court by July 13, 2006.

In addition, because this Court's June 7, 2006 Order enjoined certain local state officials, counsel took steps to notify the Boards of Registrars, the HAVA Committee, as well as other interested individuals (such as probate judges[3]) of the injunction. (*see* Exhibit 3, facsimile communication dated June 12, 2006) Consistent with due process requirements, individuals subject to the injunction were advised that they have a right to be heard at the July 20, 2006 hearing before any final injunction is entered against them (*Id.*). Defense counsel anticipate that some persons will avail themselves of this opportunity.

---

Secretary to effect DOJ recommended changes if she deemed them appropriate). However, due to flooding in Washington, D.C., counsel apparently did not receive that information until June 26, 2006, when defense counsel telephoned him to make inquiry. At that time, due to an e-mail disruption, a copy of the plan (without exhibits) was faxed to Mr. Popper. DOJ has declined the opportunity to provide pre-filing feedback.

[3] Counsel initially communicated to probate judges about the existence of this Court's order (a probate judges are the chief elections officials for the counties, Ala. Code § 17-1-8(b)). Once The Probate Judges Association engaged counsel, communications thereafter proceeded through that counsel.

**The 2008 Elections**

The most important part of the Secretary's plan is designed to achieve HAVA compliance for the 2008 federal elections. (*See* Exhibit 1 at pages 19-31, 33-36.) At the May 30, 2006 hearing, the United States indicated that the 2008 election was the primary focus of the relief being sought.

The salient features of the plan for achieving compliance for the 2008 federal elections are: issuance of a new Request for Proposals (an "RFP") as per the Court's Order; selection of a vendor; development of a statewide voter registration system; purchase of hardware (such as server(s) and computers), and enforcement rule-making. Included in the plan are provisions for interfaces with the Department of Public Safety (to access social security numbers and driver's license numbers), Department of Public Health (to access death records), and Administrative Office of Courts (to access records of felonies involving moral turpitude). *See* Ala. Const. Art. VIII § 177(b) ("No person convicted of a felony involving moral turpitude, or who is mentally incompetent, shall be qualified to vote until restoration of civil and political rights or removal of disability."). Implementation of portions of this plan will require review pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

Attached to the Secretary's plan as Exhibit H is an Estimated Plan Timeline that focuses on the primary issue of selecting a vendor and developing the voter registration software in order to achieve full HAVA compliance for the 2008 federal elections. The timeline does not include such things as when hardware will be purchased or when rules will be written. It is intended, instead, to show how tight time really is to have the new computer program in place for the first federal election in 2008, assuming that election is in February, as currently intended by the Alabama Legislature.[4]

While the Secretary will strive to achieve compliance for the February 2008 primary election, the 2008 General Election is the more achievable target. The Secretary's plan, like the original RFP, calls for the selected vendor to implement the new voter registration system in nine months following the execution of the contract, but other States have experienced delays. The Secretary's plan also includes a tight timeframe for selecting a

---

[4] Alabama Act No. 2006-634 was passed for the purpose of moving the Presidential Preference Primary to February. It appears, however, to move all the primary elections from June to February. There also appears to be a potential conflict with Mardi Gras (a holiday in Mobile and Baldwin Counties). Moreover, news accounts suggest that the State requires the approval of the national Democratic and Republican parties to move its Presidential primary. As of the filing of this document, it is understood that approval has not yet been granted. Accordingly, the first federal election in 2008 may be in February, but there is still the possibility of additional legislative action.

vendor and negotiating a contract, when viewed in light of how long the initial selection and negotiations took.

**The 2006 General Election**

As to the 2006 General Election in November, *see* Exhibit 1 at pages 15-19, 31-33, in the Secretary's opinion, the current systems in place represent the maximum HAVA compliance practicable at this time.

Certain steps have already been taken to improve the State's level of HAVA compliance. HAVA-compliant voter registration forms have been submitted to the Justice Department Voting Rights Division for Section 5 review. Once the plaintiff completes that review and preclears the forms, the forms can be used for voter registration, possibly in time for the November 2006 General Election (Exhibit 1 at 12-15.)

Additionally, in April 2006 the Secretary directed the counties to begin transmitting their local voter registration lists changes to ALVIN each work day. Jefferson County, which represents about 20% of Alabama's voting population, sends e-mail updates each work day. With the exception of two counties that have had recent computer vender problems, the other counties generally comply, although they might occasionally miss a day.

---

Any change in the dates of the elections also requires review pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c. Act No. 2006-634 has not yet been submitted for review.

The Secretary has been in touch with the two counties that have not been sending updates due to computer vender problems and is working to resolve that issue.

Additional measures, like running the election off of the ALVIN list or implementing interfaces with other governmental agencies, would involve unacceptable risk to the integrity of the November 2006 election. Exhibit G to the Secretary's Plan includes letters from officials in Shelby County and Jefferson County which provide some detail about the problems those officials anticipate if an attempt is made to conduct the November 2006 election using solely the ALVIN list.

Shelby County explains some of its concerns as follows:

1) ALVIN does not automatically assign voters with the correct precinct and political subdivision designations based on the entry of voter name and address. Our present system does, and that feature is particularly important due to the fact that Shelby County is dissected by nine legislative districts, nine commission districts and two state board of education districts. If the Board of Registrars is required to manually enter the precinct and district information for each voter, it will not only require an excessive amount of time, it will likely result in a much higher error rate;

2) ALVIN cannot automatically assign voters with a ballot style based on the voter's combination of political subdivision attributes;

> 3) ALVIN is not available during all voting hours, and, in fact, is unavailable, at least temporarily, during the peak voting hour of 5:00 p.m.;
>
> 4) There is no field in the ALVIN system for the state board of education districts. Many counties are wholly contained within one district; however, Shelby is split between two districts, as are some individual precincts. Our county system makes an automatic assignment of state board of education district, based on address point, and ballot styles are based on that and other variables.
>
> . . .

(Shelby County letter dated June 27, 2006 at 2-3).

Jefferson County's letter predicts the following problems would arise if the County were required to run the 2006 General Election using the ALVIN list:

> A. Some voters will be provided the wrong ballot. That is unavoidable because the existing state voter list does not contain ballot numbers that correspond with Jefferson County ballot styles. We have many precincts where multiple ballots are used. For example, in the November, 2006, general election there will be 186 polling places and up to 8 ballots in use at a single polling place. Poll workers at those precincts cannot determine from the state list which ballot should be provided to which voter. Providing the wrong ballot will disenfranchise voters, generate litigation in close elections and likely result in excessive use of provisional ballots.[5]

---

[5] "A voter [is] required to cast a provisional ballot when . . . the name of the individual does not appear on the official list of eligible voters for the precinct in which the individual seeks to vote, and the individual's registration cannot be verified while at the polling place by the registrar, deputy registrar, or a member of the canvassing board." Ala. Code § 17-10A-2(a)(1). After the election, the Boards of Registrars are required to "update the state voter registration list utilizing the voter reidentification forms of provisional voters and . . . verify by a certification attached to each provisional voter affirmation whether the provisional vote is entitled to be counted and the reason for or

> B. Poll workers will be required to manually perform the voter update function for every person who votes. The County voter list contains a bar code identification of every registered voter. Immediately following an election the bar codes of every person that votes are nearly instantaneously scabbed and the voter update function is completed. The existing state list does not contain a bar code. Therefore, a manual update will have to be performed for each person who voted. In an election with a fifty percent turnout 200,000 manual updates would be required.
>
> C. There will be substantial delays for voters. Jefferson County's software permits the county voter list to be split in up to 8 alphabetical sub-lists (i.e. A-D; E-H; I-M; etc.) with defined point breaks so that eight lines of voters can move simultaneously through the process. There is no way for Jefferson County to divide the existing state voter list with defined break points. That will result in a single line at each polling place which will cause substantial delays and likely discourage voters from voting.
>
> D. Poll workers will have difficulty determining which voters must complete a voter update form. The County voter list is further split into active and inactive lists. Poll workers are trained to require all voters whose name appears on the inactive lists to complete a voter update form before voting. There is no way for Jefferson County to divide the existing state voter list in that manner. Instead, the state list contains the letter "i" before the name of an inactive voter. If the poll work misses the letter "i", the voter update form will not be completed.

(Jefferson County letter dated June 28, 2006 at 2-3).

---

against counting the provisional ballot." Ala. Code § 17-10A-2(e). Regardless of the number of provisional ballots cast, a determination must be made about whether each one is to be counted before "noon seven days after the election," when the "ballots which have been certified by the board of registrars as cast by registered and qualified voters of the precincts in which such ballots were cast" are tabulated. Ala. Code § 17-10A-2(f).

The Court's Order contemplated computer interfaces with the Department of Public Safety, the Department of Public Health, and the Administrative Office of Courts be put in place for November. There is great uncertainty as to whether such interfaces can ever be made with ALVIN. While a vendor working on a plan for 2008 can be (and will be) charged with this task, there has been little discussion with these agencies about interfacing with ALVIN due to the lack on in-house technological expertise to bring about such interfaces. While there may be others in State government who are capable to achieving working interfaces for ALVIN, more pressing priorities have pushed that technological problem into the background. Given the limited resources (in terms of time and money) available to the Secretary for coming into full HAVA compliance, the Secretary respectfully requests that she not be ordered to create such computer interfaces for November. Not only might the task itself ultimately prove impossible, but it will be a significant distraction from efforts to re-draft the RFP and take other steps to ensure that the State is fully HAVA compliant for the 2008 elections.

Finally it is noted that, because the plaintiff is seeking injunctive relief, equitable principles apply to the case at bar.[6] HAVA jurisdiction is predicated on the presence of federal offices on the ballot and Congressional interest in the integrity of the results of those contests.[7] While technically there are federal offices present on the November 2006 ballot, those races are not expected to be close contests.

In the Fifth, Sixth, and Seventh Congressional Districts, only one candidate has qualified to be on the ballot for the general election in each of

---

[6] Admittedly, it is unclear whether equitable principles apply when relief is sought by the United States. *See Savory v. U.S. Attorney General*, ___ F.3d ___, 2006 WL 1426950 (11th Cir. May 25, 2006). Nonetheless, as noted in *Savory*, the Supreme Court has indicated that there may be occasions where equitable estoppel can be raised against the federal sovereign: "'the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.'" *Savory* at *9 *quoting Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 60-61 (1984).

The case at bar involves two sovereigns (both with Constitutional powers and protections) and the citizens' fundamental rights to have an election process that results in reasonable, speedy and reliable election outcomes. The very essence of democracy is the right to vote and to have that vote accurately and quickly counted. Hence, if equitable principles can ever be applied against the federal sovereign, then this would be an appropriate case for such principles: the federal sovereign must not use equity as a sword against the state sovereign while the State is denied the right to use equity as a shield in protection of her citizens' fundamental right to elect their own State officers.

[7] The United States has only challenged Alabama's failure to comply with federal HAVA requirements. It has not alleged that it may seek to raise claims related to State voting laws. While this Court may have jurisdiction to consider the claim concerning federal HAVA laws, it is without jurisdiction to consider any claim arising out of State HAVA laws. In *Pennhurst v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held that federal courts are without authority or jurisdiction to direct a State to abide by or to enforce its own laws. 465 U.S. at 106-07.

those Districts. (*see* Exhibit 4) The counties containing the State's first and fourth most populous cities (Birmingham and Huntsville) do not have genuinely contested federal offices on their ballots.[8] Indeed, the areas in which non-contested Congressional offices appear on the ballots comprise counties representing over 35% of Alabama's population (according to the 2000 census, data from which is available on a U.S government website) as well as portions of six additional counties (*see* Exhibit 5 for the statistical breakdown).

Balancing the equities, federal interest in the outcome of an election for federal offices wherein the results are not expected to be close is outweighed by State interest in how best to conduct elections for State and local offices.[9] It is inequitable, unreasonable, and imprudent to jeopardize State and local elections (many of which are expected to be close)[10] by requiring unproven and untested modifications in an election process where

---

[8] It is true that there federal offices officially on those ballots and that is theoretically possible that a write-in candidate could be elected, but the odds of that occurrence are certainly remote.

[9] It is noted that primary elections were held after this Honorable Court's May 30, 2006 preliminary injunction hearing and there were no public outcries questioning the general accuracy or integrity of the Alabama election process.

[10] Because Alabama elects its judges, any crisis arising out of a disorderly election would also apply to Alabama's judicial system in addition to its executive and legislative branches.

the preexisting voting system produces accurate results and where the federal jurisdictional nexus is strained.

For these reasons, the State of Alabama respectfully submits that it would be an abuse of discretion to direct further steps to comply with HAVA for the 2006 General Election.

**The 2007 Local Elections**

Although only mentioned in passing in the plan (Exhibit 1 at 19 n.2), there are local elections scheduled for 2007. At the present time the 2007 elections are for local offices only; no federal office is at issue. Therefore, the 2007 elections are currently beyond the scope of this lawsuit and federal HAVA requirements. However, in the event that a federal office comes to be at issue in 2007 (such as due to death or retirement of a current federal officeholder), and if the 2008 plan is not ready for implementation at that time, such election would take place in accordance with the 2006 protocols.

**Early Warning Signs of Structural, Political, or Legal Impediments**

In compliance with this Court's directive that the parties be "vigilant of early warning signs of structural, political, or legal impediments to implementation of HAVA," (Doc. 16 at 8), it is noted that complicating items for scheduling purposes include the fact that the Secretary is running for re-election and, therefore, the potential exists that a new Secretary will

be elected and sworn in to office at critical times during the implementation of the plan. For instance, it is conceivable that a new Secretary could take office in the middle of contract negotiations with the current Secretary's selected vendor. The advisability of including the Secretary's political opponent in the planning process is unknown variable with significant ramifications. Similarly, removing powers from the Secretary for HAVA implementation purposes would also have considerable political repercussions in a partisan political environment.

Another potential impediment is the portion of the plan that states that the Secretary believes she has the power and authority to implement a rule barring the certification of federal election results under specified circumstances. (Exhibit 1 at 30-31) Other responsible State officials, including the Attorney General, do not agree with that position. Neither the Secretary's general HAVA rulemaking authority, Ala. Code § 17-1-8(a) ("The Secretary of State is granted rule making authority for the implementation of Act 2003-313 under the Alabama Administrative Procedure Act."), nor the other statutory provision cited in the plan, Ala. Code § 17-14-24 ("The Secretary of State shall, within 10 days after receiving the returns of election from the judge of probate of each county, furnish, from a count of the actual vote cast, as the same appears by the

returns certified to him, certificates of election to members of the Legislature and to members of Congress."), definitively extend that far. As that portion of the plan is subject to both review by the plaintiff and has not been approved by the Court, the legality of the Secretary's certification position may not ultimately need to be resolved.

## CONCLUSION

Wherefore, for the above stated reasons, the Secretary respectfully submits her HAVA compliance plan and respectfully requests this Honorable Court to approve said plan for her to implement.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL
BY:

s/Winfield J. Sinclair

Winfield J. Sinclair
Assistant Attorney General
Attorney No. ASB-1750-S81W


s/Misty S. Fairbanks

Misty S. Fairbanks
Assistant Attorney General
Attorney No. ASB-1813-T71F

Attorneys for Defendants

## CERTIFICATE OF SERVICE

This is to certify that on the 29th day of June, 2006, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following:

>Michael W. Robinson, Esq.
>Attorney for Department of Public Safety
>Department of Public Safety, Legal Unit
>Post Office Box 1511
>Montgomery, Alabama 36102-1511
>
>Christy A. McCormick, Esq.
>United States Department of Justice
>1800 G Street, Room 7246
>Washington, D.C. 2006
>
>Robert D. Popper, Esq.
>United States Department of Justice
>Civil Rights Division
>Room 7254-NWB
>950 Pennsylvania Ave N.W.
>Washington, D.C. 20530
>
>Donald Palmer, Esq.
>Assistant Attorney General
>Civil Rights Division
>United States Department of Justice
>950 Pennsylvania Avenue, N.W.
>Washington, D.C. 2006
>
>R. Randolph Neeley, Esq.
>Assistant United States Attorney
>P.O. Box 197
>Montgomery, Alabama 36101-0197

>Algert S. Agricola, Jr.
>Slaten & O'Connor, P.C.
>Winter Loeb Building
>105 Tallapoosa Street, Suite 101
>Montgomery, Alabama 36104

And by first class mail, postage prepaid to the following:

>Wan J. Kim, Esq.
>Assistant Attorney General
>Civil Rights Division
>United States Department of Justice
>Room 7254-NWB
>950 Pennsylvania Avenue, N.W.
>Washington, D.C. 2006

>John K. Tanner, Esq.
>United States Department of Justice
>Civil Rights Division
>Voting Section
>P.O. Box 66128
>Washington, D.C. 20035-6128

>>s/Winfield J. Sinclair

>>Winfield J. Sinclair
>>Assistant Attorney General

Address of Counsel:

Office of the Attorney General
11 South Union
Montgomery, Alabama 36130
TEL: 334-242-7300
FAX: 334-353-8440
E-mail: wsinclair@ago.state.al.us

EXHIBITS

1. The Secretary's Plan for One Interconnected Statewide Voter Registration Database, including Exhibits A through H

2. June 23, 2006 facsimile communication

3. June 12, 2006 facsimile communication

4. Alabama's Congressional Races

5. Census information