United States v. State of Alabama, et al
2:06-cv-392-WKW
Dept. of Public Safety Exhibit 4

BATCH
April 25, 2005 Version, <u>AMENDED</u>

(This version supersedes the current 6/24/1996 version)

# INFORMATION EXCHANGE AGREEMENT

# BETWEEN

# Alabama Department of Public Safety (DPS)

# AND

# THE SOCIAL SECURITY ADMINISTRATION

## ARTICLE I
## PURPOSE AND GENERAL BACKGROUND OF AGREEMENT

The purpose of this Agreement is to establish the terms, conditions, and safeguards under which the Social Security Administration (SSA) will provide Social Security Number (SSN) verifications to the (State Name and Name of MVA) (hereinafter referred to as the MVA).

Under the national policy established by section 205(c)(2)(C)(i) of the Social Security Act (the Act)(42 U.S.C. § 405(c)(2)(C)(i)), States are authorized to use the SSN in the administration of their drivers' license laws for the purpose of establishing the identity of individuals affected by such laws, and may require any individual affected by such laws to furnish to the States (or any agency having administrative responsibility for such laws) his or her SSN.

As set forth herein, SSA will provide the MVA with SSN verification service via the batch process for individuals seeking drivers' licenses and identification cards from the MVA. The MVA will transmit to SSA the name, gender, date of birth and SSN for each verification request. The result is a "match"/"no match" response and the reason for the "no match." This verification service will assist the MVA efforts to determine whether the identification information presented to the MVA by individuals seeking drivers' licenses and identification cards is correct.

The MVA acknowledges that SSA's positive verification of an SSN only establishes that the submitted information matches the information contained in SSA records, subject to the tolerances established in SSA's matching routines. The verification does not authenticate the identity of the individual or conclusively prove that the individual submitting the information is who he or she claims to be. As described herein, SSN verification does not constitute a matching program as defined by the Privacy Act, 5 U.S.C. § 552a(a)(8). SSN verification is not used to determine entitlement or eligibility of, or continuing compliance with statutory and regulatory requirements by, applicants for, recipients or beneficiaries of, participants in or providers of

service with respect to cash or in kind assistance or payments under federal benefit programs, or recouping payments or delinquent debts under such federal benefit programs. However, this Agreement is executed under all of the other relevant portions of the Privacy Act of 1974, as amended, and the regulations and guidance promulgated thereunder.

## ARTICLE II
## PERIOD OF AGREEMENT

**The duration of this Agreement is 5 years, effective April 25, 2005 and will expire April 24, 2010. Parties to this Agreement may execute a new Agreement prior to the expiration date so that ongoing services are not disrupted.** The terms of this Agreement are effective upon the signature of both parties and the related and subsequent reimbursable agreements, whichever occurs later. This Agreement does not authorize SSA to incur obligations through the performance of the services described herein. Performance of such services is authorized only by execution of Form SSA-1235-U5. Moreover, SSA may incur obligations by performing services under this Agreement only on a full or partial fiscal year (between October 1 and September 30) basis. Accordingly, attached to, and made a part of this Agreement, is an executed Form SSA-1235-U5 that provides the authorization for SSA to perform services under this Agreement in fiscal year 2006 (or insert the first fiscal year that is applicable to this Agreement). Since SSA's performance under this Agreement spans multiple fiscal years, SSA will prepare a new Form SSA-1235-U5 prior to the beginning of each succeeding fiscal year during which SSA will incur obligations through the performance of the services described herein. Such Form will be signed by the parties before the commencement of the fiscal year and identify reimbursable cost estimates. SSA's ability to perform work for fiscal years beyond FY 2006 is subject to the availability of funds. Additionally, SSA must receive advance payment "in full" prior to the start of the fiscal year in which verification services are requested before SSA provides services to the MVA.

**The Form SSA-1235-U5, including the Conditions of Agreement appended thereto, is incorporated herein by reference. To the extent any inconsistency exists between the terms of this Agreement and the Conditions of Agreement appended to the Form SSA-1235-U5, the terms of this Agreement take precedence and control the relationship between SSA and the MVA.**

## ARTICLE III
## MODIFICATION OR CANCELLATION PROVISION

Either party may request modification to this Agreement at any time. Such a request must be in writing. Concurrence with a request for modification should be made within a reasonable time period. Any modifications to this Agreement must be agreed to by both parties in writing. Written notification of failure to reach agreement on a written request for modification constitutes notice of intent to cancel the Agreement, unless the requesting party withdraws the request for modification.

Either party may unilaterally terminate this Agreement by notifying the other party in writing of its intent to cancel the Agreement at the expiration of 30 days from the date of the notice or a longer period specified in the notice. The parties may confer during the period specified in the notice of intent to cancel for the purpose of resolving differences and reaching an agreement acceptable to both parties. Disputes may be referred jointly to the SSA Deputy Commissioner for Disability and Income Security Programs and the MVA official signing this Agreement for resolution. If the parties are able to resolve the dispute, the notice of intent to cancel will be withdrawn. If the dispute cannot be resolved, cancellation will be effective at the expiration of the period specified in the notice or such later period upon which the parties mutually agree.

However, SSA may make an immediate, unilateral termination of this Agreement if SSA has determined that there has been an: 1) unauthorized use of the verification service by the MVA; 2) a violation of, or a failure to follow, the terms of this Agreement; or, 3) non payment to SSA in accordance with the parties reimbursable agreement. SSA may make an immediate, unilateral suspension of this Agreement if SSA suspects that the MVA breached the terms for security of data until such time as SSA makes a definite determination regarding a breach.

## ARTICLE IV
## LEGAL AUTHORITY

Authority for this Agreement is found in section 205 of the Social Security Act (42 U.S.C. § 405);
5 U.S.C. § 552a(b)(3); and section 1106 of the Social Security Act (42 U.S.C. § 1306).

Section 205(c)(2)(C)(i) of the Social Security Act (42 U.S.C. § 405(c)(2)(C)(i)) authorizes the States to use SSNs in administering their drivers' license laws by requiring any individual affected by such laws to furnish to the States, or any agency having administrative responsibility for such laws, his/her SSN.

SSA maintains a system of records named "Master Files of Social Security Number Holders and SSN Applications" SSA/OEEAS, 60-0058 (referred to as the "Numident"). Routine use number 34 gives SSA authority to verify personal identification data (e.g., name, SSN, and date of birth) concerning individuals who apply for, or are issued, drivers' licenses or other identification documents by state motor vehicle agencies that issue such licenses or documents (60 F.R. 16155, March 29, 1995). In performing such "verification," SSA may indicate whether the identifying data furnished by the MVA concerning an individual match or do not match data maintained in this system of records, and SSA may identify the particular data elements that do not match. SSA will not disclose information from this system of records which does not match the information furnished by the MVA.

## ARTICLE V
## FUNCTIONS TO BE PERFORMED

The MVA agrees to provide to SSA the name, gender, date of birth, and SSN furnished by each person about whom SSN verification service is requested.

SSA agrees to compare the information furnished by the MVA with information in SSA's Master File of Social Security Number Holders system of records. SSA will provide the MVA with SSN verification via magnetic tape, the File Transfer Management System, or other mutually agreed upon transport mechanism. SSA will respond to the MVA with one of the following response codes:

> Blank = Input SSN verified on name, DOB, and gender code
> 1 = SSN not in file (impossible SSN/never issued to anyone, OR NO SSN found if all 000's submitted)
> 2 = Name and DOB match, gender code does not
> 3 = Name and gender code match, DOB does not
> 4 = Name matches, gender code and DOB do not
> 5 = Name does not match, DOB and gender code not checked
> **Y/N = Y if death data is present; N if death data is not present**

Note: Death Information will be available **beginning in March 2006.**

The MVA agrees to limit their input file to one (1) file per day and no more than 250,000 records per file. The MVA will annotate its computer system when an SSN has been verified. This will help prevent unnecessary verifications of the same record.

## ARTICLE VI
## REFERRAL OF INDIVIDUALS TO SSA

If the SSN given by the individual does not match SSA's records, the MVA should take the following steps before referring individual to the SSA field office:

1. The MVA should recheck their records to be sure that the original submission data has not changed; e.g., last name recently changed.

2. The MVA will recontact the individual to verify the data submitted is accurate.

3. The MVA will consult with the SSA Project Coordinator to discuss options before any mass mailing occurs advising individuals to contact their SSA field office for resolution.

Note: Issuance of new or replacement Social Security card usually takes two weeks.

## ARTICLE VII
## TECHNICAL SECURITY PROCEDURES

A. SSA and the MVA will safeguard information provided under this Agreement as follows:

1. Each party shall establish appropriate administrative, technical, and physical safeguards to assure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.

2. Access to the records exchanged and to any records created by the data exchange will be restricted to only those authorized employees and officials who need it to perform their official duties in connection with the uses of the information authorized in this Agreement.

3. The records exchanged and any records created by the data exchange will be stored in an area that is physically safe.

4. The records exchanged and any records created by the data exchange will be processed under the immediate supervision and control of authorized personnel in a manner which will protect the confidentiality of the records, and in such a manner that unauthorized persons cannot retrieve any such records by means of computer, remote terminal or other means.

5. The records will be transported under appropriate safeguards.

6. All personnel who will have access to the records exchanged and to any records created by the data exchange will be advised of the confidential nature of the information and the civil and criminal sanctions for noncompliance contained in the applicable Federal laws.

B. SSA and the MVA may make onsite inspections or make other provisions to ensure that adequate safeguards are being maintained under this Agreement by both agencies.

C. SSA and the MVA also will adopt policies and procedures to ensure that information contained in their respective records and obtained from each other shall be used solely as provided under this Agreement and any applicable laws.

D. Compliance with SSA's Information Systems Security Guidelines:

1. Data and Communications Security

   The MVA will utilize data encryption and dedicated communication circuits whenever SSN and/or SSN related information is transmitted for intrastate communication among MVA locations. If the public Internet is used for intrastate communication among MVA locations that include SSN information, all electronic communications must, at minimum, utilize Secure Socket Layer (SSL) and 128 bit encryption protocols, or more secure methods.

2. Audit Trail Records

   For audit tracking purposes, the MVA must have in place a mechanism that can be used to identify the driver's license or other authorized purpose that results in an SSN verification request being submitted to SSA by the MVA. The MVA also must have in place an audit trail mechanism for identifying the MVA users who can access/view verified SSN information resident in the MVA system subsequent to verification by SSA.

3. Integrity of the MVA System

   The MVA must assure that all attempts to verify name and SSN information with SSA are recorded, and that no person with access to the MVA system can delete or otherwise manipulate a driver's license record that was initiated for the purpose of obtaining an SSN verification from SSA. For situations where an SSN fails to verify, the MVA will establish a process to retain both the initial failed verification request(s) and the final, corrected SSN record. The MVA must retain SSN verification audit trail records for a period of at least three years following the date of SSA's reply to the requested SSN verification.

4. SSA Onsite Inspections

   SSA reserves the right to make reasonable onsite inspections or other provisions to ensure the information system security safeguards described above are being maintained by the MVA. SSA will provide advance notice to the MVA at least 24 hours prior to initiation of an onsite inspection. The MVA will make policies and provisions to ensure that SSA information used in the SSN verification process shall be used solely as provided in this Agreement.

The MVA agrees to use the verification services provided by SSA under this Agreement only for purposes of establishing the identities of applicants for, and holders of, drivers' licenses and identification cards issued by the MVA.

SSN verification services are being provided under the terms of this Agreement with the understanding that the MVA will not use the fact of SSN verification as an enhancement to any information marketing efforts conducted by the State or its agents. If any such marketing effort occurs, termination of this Agreement under Article III will be considered.

## ARTICLE X
## INITIATING THE VERIFICATION SERVICE

Initiating the SSN verification service requires a completed Agreement, SSA-1235 and payment in full before the process begins.

For service in a subsequent fiscal year SSA and the MVA will execute a separate reimbursable agreement (SSA-1235-U5) and payment will be made by the MVA prior to services being rendered.

While a reimbursable agreement (SSA-1235-U5) is required for each fiscal year (October through September), this Agreement **or any amendment to this Agreement** is in existence until **the expiration date in Article II**.

## ARTICLE XI
## REIMBURSEMENT

The reimbursement cost estimate is based on the volume of SSNs, as well as any associated personnel costs.

At the end of each quarter, SSA will provide the MVA a "Statement of Account" which will show the amount of the advance, expenses incurred, and current balance. If at any time it is determined that actual costs will exceed the estimate by 10 percent or $1,000, whichever is greater, the SSA Regional Office (RO) project coordinator must initiate an amended reimbursable agreement form which increases the estimated amount of the original reimbursable agreement form or terminate the project to prevent SSA from having to absorb the cost overruns.

SSA will prepare a final billing at the end of each fiscal year. If a balance is due to SSA, the MVA will immediately remit the balance due or service will be terminated. If a balance is due the MVA at the end of the fiscal year, SSA will reimburse the MVA promptly.

For any amounts past due, the Debt Collection Act, the Federal Claims Collection Act, and 45 CFR Part 30 require that interest, administrative costs, and penalties be charged if debts are not paid within thirty days of the mailing of the first notice. SSA will use the "Private Consumer Rates of Interest" developed by the Treasury and applied against the overdue payment.

**Accounting Information**

SSA
EIN : 52-6004813

SSA
Office of Finance
P.O.Box 17042
2-B-4 ELR
Baltimore, Md. 21235
(410) 965-0555
Attn: Collections Operations
    Branch Team Leader

Project Coordinators

SSA
(Name)
(Address)
(Office Location)
(Phone)

MVA
EIN: 63-0695764

MVA
Department of Public Safety
Financial Services
301 S. Ripley Street
Montgomery, Alabama 36104
(334) 353-9896
ATTN: Fran Copeland

MVA
Curt Terling
ATTN: Jamie McGregor
301 S. Ripley Street
Montgomery, Alabama 36104
(334) 242-4424
(334) 242-0713 Fax

## ARTICLE XII
## SIGNATURES

The signatories below warrant and represent that they have the competent authority on behalf of their respective agencies to enter into the obligations set forth in this Agreement.

**Social Security Administration**

APPROVED BY:

_____        _____
(Name)                                 Date
Regional Commissioner


**(State Name and Name of the MVA)**

APPROVED BY:

*[signature]*                          6/22/06
_____        _____
(Name and title of MVA official with   Date
authority to execute this Agreement on
behalf of the State)

10