IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| STATE OF ALABAMA, and | ) | 2:06-cv-0392-WKW-SRW |
| NANCY L. WORLEY, Secretary of State; | ) | |
| in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' SUBMISSION OF HAVA PLAN**

Plaintiff, the United States of America, by and through its undersigned counsel, hereby

objects to the Defendants' proposed interim and long-term plan for coming into compliance with

the Help America Vote Act of 2002 ("HAVA"), the submission of which was directed by this

Court in an order dated June 7, 2006.  Defendants have already had more than three years to

come into compliance with HAVA, and they have failed to do so.  As set forth herein, the plan

they have submitted envisions a further delay of at least two years.  Defendants' submission is

itself evidence of their inability or unwillingness expeditiously to take those steps necessary to

comply with HAVA and to safeguard the fundamental voting rights of Alabamians in federal

elections that HAVA seeks to ensure.

Due to Defendants' failure to submit a realistic plan, Plaintiff respectfully requests (1)

that the Court direct Defendants to submit an adequate plan within two weeks, which would,

*inter alia*, describe how the State would bring its existing "ALVIN" database into substantial

compliance with the HAVA for the 2006 federal primary, expedite a long-term plan that would

1

become fully operational no later than June 2007, and arrange for all maintenance and data transfer to occur well prior to Alabama's 2008 federal primary elections; (2) in the alternative, that the Court direct the appointment of a special master to assist with and direct the implementation of an appropriate plan; or (3) in the alternative, that the Court direct Defendants to proceed pursuant to a schedule delineated herein by Plaintiffs and set frequent status conferences so that their progress may be closely monitored.

## BACKGROUND

The Help America Vote Act was signed into law on October 29, 2002.  Pursuant to Section 303 of that statute, the State of Alabama was required to implement a statewide, computerized voter registration database that otherwise complied with the relevant statutory provisions of HAVA no later than January 1, 2004.  42 U.S.C. §§ 15483(d)(1)(A).

Alabama applied for, and received, a waiver of compliance with the statutory deadline, until January 1, 2006.  42 U.S.C. § 15483(d)(1)(B); *see* the Declaration of Christy McCormick, dated May 1, 2006, submitted in support of Plaintiff's motion for a preliminary injunction ("McCormick Decl."), at ¶ 5.

Alabama missed that deadline.  Its HAVA-compliant database is, as of today, six months overdue.

On May 1, 2006, the United States filed the instant action, along with a motion for a preliminary injunction.  On June 7, 2006, this Court issued an order granting Plaintiff's motion (the "Order").  That Order directed Defendants to submit a plan encompassing both interim and long-term arrangements that would bring Alabama into full compliance with HAVA.  On June 29, 2006, Defendants duly submitted their proposed plan.

For the reasons set forth in greater detail herein, the United States objects to that plan. The United States respectfully submits that Defendants' plan does not comply with this Court's Order and that it does not even attempt to achieve compliance with HAVA in a timely manner. Instead, Defendants have made what amounts to a request for reconsideration of the Order, submitting a plan that seeks to maintain the status quo by moving what is called an "achievable" target date all the way forward to the November 2008 general elections. Defendants' plan inadequately addresses the two intervening federal elections, as well as the plain text of this Court's Order. It also contradicts representations Defendants had previously made to the Department of Justice. Finally, Defendants' plan is inadequate because its proposed timetable is too lengthy, and because it seeks comments and reviews from entities that should not be permitted to participate in the process as parties.

1.      **Defendants' submission is inadequate in several respects.**

   A.      **Defendants have failed to propose an adequate plan to achieve the greatest possible degree of HAVA compliance either by the 2006 or by the 2008 federal elections, and have materially backtracked from previous representations.**

In September 2005, Defendants wrote to the Department of Justice to say that "Alabama is seeking to modernize ALVIN by implementing a statewide, uniform, centralized voter registration system using the best technology available." *See* McCormick Decl., Ex. F, at 2. Defendants at that time extolled the virtues of their existing system, stating that "Alabama is, as of this date, substantially compliant with section 303(a) of HAVA." *Id.*, at 3. Defendants further expressed confidence in the ease with which the current system could be updated, and made particular reference to the ease of implementing the necessary computer interfaces with other agencies:

> The Secretary of State's technical staff indicates the necessary enhancements of ALVIN can occur quickly. On January 1, 2006, an interface with other state agencies, including the Alabama Department of Public Safety, the Administrative Office of Courts, and the Department of Public Health, will be completed. By March of 2006, the functions of the interface will be implemented, and between January and April of 2006, the Secretary of State's office will coordinate training on the enhanced statewide voter registration system.

*Id.,* at 3.

The foregoing letter, and other written and oral communications by Defendants concerning inquiries from the Department of Justice, were attached to and described in Plaintiff's motion for a preliminary injunction, which was submitted with its complaint on May 1, 2006. *See* McCormick Decl., *passim*. Defendants did not dispute any of the facts alleged by Plaintiff in its motion or the authenticity of the documents attached to Plaintiff's motion papers. *See* Defendants' Response to Plaintiff's Motion for a Preliminary Injunction, dated May 17, 2006. At the May 30, 2006, hearing in this matter, Plaintiff's submissions were made part of the record without objection. *See* the Declaration of Donald Palmer, dated July 13, 2006 ("Palmer Decl."), Ex. A (excerpts of transcript of hearing), at 8.

In its subsequent June 7, 2006, Order, this Court directed, among other things, that

> 2. The defendants, their officers, agents, servants, employees, attorneys, successors in office, and all persons in active concert and participation with any of them, are ORDERED to develop promptly a HAVA compliance plan. The plan shall meet the following requirements and objectives: . . .
> b. An interim plan to bring the State's existing voter registration system (ALVIN) into the greatest possible degree of compliance with the requirements of HAVA *by the November 2006 elections* for Federal office . . .

4

Order, at 9, par. 2(b) (emphasis added).  In particular, the Court ordered that both the short-term and the long-term plans take steps to implement necessary computer interfaces with critical state agencies.  The Court directed

> [t]he development of network connections to obtain data from other State agencies to identify ineligible registrations for both the interim enhanced system and the permanent fully HAVA-compliant system, including but not limited to enhanced interfaces with the Alabama Administrative Office of Courts, the Alabama Department of Public Health, and the Alabama Department of Public Safety, and through the latter, an enhanced interface to the Social Security Administration; . . .

*Id.*, at 10, par. 2(i).

The Court directed Defendants to file a HAVA compliance plan containing these and other elements on or before June 29, 2006.  *Id.*, at 11.  Defendants timely submitted their proposed plan, with exhibits, along with an accompanying memorandum.  *See* Defendants' Submission of HAVA Plan, Analysis, and Argument ("Def. Subm."), and Ex. 1 ("The Secretary's Plan," etc.).

It is striking how completely Defendants' current submission contradicts each of their prior representations.  Defendants now maintain that "running the election off of the ALVIN list or implementing interfaces with other governmental agencies would involve unacceptable risk to the integrity of the November 2006 election."  Defendants' Submission of HAVA Plan, Analysis, and Argument ("Def. Subm."), at 7.  Defendants specifically denounce the ALVIN system they had previously described as "substantially compliant," and submit statements from Shelby County and Jefferson County officials discussing the insurmountable defects with the present system and explaining why it cannot be used to run the 2006 general election.  Def. Subm., at 7-9.

As for the computer interfaces with state agencies – which Defendants had represented as being technically easy and sure to be in place by April 2006 – Defendants now go so far in the opposite direction as to assert that any such interface to ALVIN may not even be possible. Defendants acknowledge that "[t]he Court's Order contemplated[1] computer interfaces with the Department of Public Safety, the Department of Public Health, and the Administrative Office of Courts be put in place by November." Def. Subm., at 10. Defendants then go on to assert that "[t]here is great uncertainty as to whether such interfaces can ever be made with ALVIN." *Id.* Defendants add, cryptically, that "more pressing priorities have pushed that technological problem into the background." *Id.* The Secretary of State then requests that "she not be ordered to create such computer interfaces for November" 2006, in part because "the task itself [might] ultimately prove *impossible*." *Id.* (emphasis added).

Defendants' assertions here are not plausible. Aside from the fact that these assertions conflict with their earlier statements, Defendants have submitted no evidence showing any impossible technical challenges or priorities that prevent the Secretary of State's office from establishing interfaces with other state agencies. Indeed, no technical concerns regarding connectivity were raised by Defendants when the issue was discussed during the May 30, 2006, hearing. *See* Palmer Decl., Ex. A, at 24-25. The Plaintiff also finds it notable that, in less than thirty days, the Department of Public Safety (DPS) has been able to make significant progress with the Social Security Administration (SSA) in signing a contract to establish a verification process by which DPS will submit their database in batches of 25,000 registrations to SSA for

---

[1]"Ordered" is the more accurate word.

6

review in compliance with the mandates of HAVA.  *See* Response to Court Order, dated July 5, 2006, submitted by DPS.

Nevertheless, Defendants assert that, with respect to the November 2006 general elections, "in the Secretary's opinion, the current systems in place represent the maximum HAVA compliance practicable at this time."  Def. Subm., at 6.  Defendants' plan adopts this approach, essentially freezing the current patterns of ALVIN usage in place.  Def. Subm., Ex. 1, at 9; and at 15-19.  Most significantly, the plan allows jurisdictions that run their elections by means of "local voter registrations systems" to continue to do so through the November 2006 elections.  *Id.*, Ex. 1, at 16, par. 3.2.2.

Defendants argue "that it would be an abuse of discretion to direct further steps to comply with HAVA for the 2006 general election."  *Id.*, at 13.  This is an extraordinary position to take.  Note that this Court's June 7, 2006, Order directed Defendants to produce an "interim plan to bring the State's existing voter registration system (ALVIN) into the greatest possible degree of compliance with the requirements of HAVA by the November 2006 elections for Federal office," and further ordered "[t]he development of network connections to obtain data from other State agencies to identify ineligible registrations for both the interim enhanced system and the permanent fully HAVA-compliant system."  Order, at 9-10.  By suggesting that enforcing these elements of the Court's Order would constitute an abuse of discretion, Defendants are really attempting – albeit in a backhanded and indirect way – to reargue and relitigate those aspects of the Court's Order that they do not like.[2]

---

[2]Among other things, such a motion to reargue is untimely.  *See* Fed. R. Civ. P. Rule 59(e).

Looking beyond 2006, Defendants have hinted that compliance may not be "achievable" *even by the time of the 2008 primary*. Thus, Defendants state that, "[w]hile the Secretary will strive to achieve compliance for the February 2008 primary election, the 2008 General Election is the more achievable target." Def. Subm., at 5. This position is troubling, not only because Defendants appear willing to accept the absence of a HAVA-compliant system as late as 2008, but also because compliance by the time of the November 2008 general elections is characterized only as an "achievable target," and not as a deadline.[3]

Plaintiff respectfully submits that Defendants have not approached the clear requirements of federal law with due seriousness. Defendants continue to violate Title III of HAVA with no indication of any forward movement. Plaintiff believes that Defendants' submission proves that they will not take the actions necessary to meet the requirements of HAVA without further Court intervention.

### B.    Defendants' plan contains an extraordinarily relaxed timeline.

The "Estimated Plan Timeline" submitted by Defendants contemplates an extraordinarily lengthy procurement and implementation process. In all, Defendants have allotted themselves a full nine months from the anticipated issuance of the Court's new order even to issue a request for proposals (RFP), to select a vendor, and to come to an agreement with it. Work on the system cannot commence until that nine months has elapsed – in other words, until June of 2007.

---

[3]In the same vein, the list of dates attached to Defendants' plan is styled only as an "Estimated Plan Timeline," rather than as a list of deadlines. Def. Subm., Ex. 1, Ex. H. This same timeline casts further doubt on the likelihood Defendants will comply in time for the 2008 primary, because it lists "February/March 2008" as the date on which the "New System [is] Complete" (*id.*), while Defendants have stated that the primary is scheduled for February 2008. Def. Subm., at 5.

*See* Def. Subm., Ex. 1, Ex. H.  The State then proposes to allow itself a further nine months to complete the work.  *Id.*

Plaintiff notes at the outset that the lengthy time periods associated with the RFP process contained in Defendants' proposed plan may be entirely unnecessary, because Defendants may not need to issue a new RFP at all.  Defendants suggested as much at the hearing in this matter, when counsel for the Secretary of State observed that Defendants had the option to "select or enter into negotiations with one of the last three vendors . . . that responded to the last RFP request," and noted that this would take less time than issuing a new RFP.  Palmer Decl., Ex. A, at 14.  Plaintiff respectfully submits that this option should be favored.

But even if it is determined that Defendants should issue a new RFP, the milestones contained within the nine-month selection and contracting period contained in the proposed plan are inexplicably long, especially given the fact that both Defendants and potential vendors have already been through the process before.  Thus, Defendants allow six weeks in which to issue the "new" RFP, even though Defendants make clear that it will be heavily based upon the original RFP (except for "any requirements set out herein or otherwise required by the Court").  Def. Subm., Ex. 1, at 21.  Vendors are then allowed about six weeks to reply, even though their old proposals will probably serve as templates for their new proposals.  Def. Subm., Ex 1, Ex H. Defendants reserve three months for review of proposals and the selection of a vendor.  *Id.* Defendants then reserve a leisurely three months for the negotiation of a contract with the vendor they have already selected.  *Id.*

These time periods are simply too long, especially given that Defendants have gone through the relevant process before.  Only last year, the Secretary of State admitted that having gone through the procurement process once necessarily will serve to shorten the time required to

9

go through it again.  When the Secretary of State reversed the decision to hire Diebold in late

2005 and issued a new RFP, she told a reporter for the Huntsville Times that any additional

review of vendor submissions would take less time, reasoning as follows:

> Worley said the state has already seen the original
> proposals, which she expects are similar to the new ones. The new
> request for proposals had one paragraph changed, to allow the state
> to license the software, rather than own it.
> "We don't have to go back and reread all of the proposals;
> we've already read them," she said. "We don't have to go back, in
> my opinion, and have any kind of technical group evaluate the
> proposals because they've already been evaluated from a technical
> standpoint."

Palmer Decl., Ex. B.  The same factors would shorten the process if a new RFP is issued in this

case.

In any event, the time periods contained in Defendants' proposed plan can be shortened

considerably, as Plaintiff has demonstrated in its proposed timeline, which is set forth below in

part 4.

> **2.    Defendants should be directed to submit an adequate plan for complying
> with HAVA.**

As set forth above, Defendants have failed to submit a realistic short-term and long-term

plan for meeting the requirements of Title III of the HAVA.

Plaintiff respectfully requests that Defendants be ordered to submit an adequate short-

term and long-term plan within two weeks.  Plaintiff maintains that the best outcome, even now,

is for Defendants willingly to submit a realistic plan to comply with HAVA.  At a minimum,

such a plan must comply with the Court's Order; take reasonable steps to assure greater

compliance with HAVA by the time of the November 2006 elections; guarantee compliance by

the time of the 2008 primaries; and do so with a process that is as streamlined and manageable as possible.

> **3.    In the alternative, the appointment of a special master is warranted because Defendants are either unable or unwilling to meet the obligations of HAVA in a timely manner.**

In the event that Defendants do not submit another plan that is adequate, Plaintiff respectfully submits, in the alternative, that the appointment of a special master to oversee the development, negotiation, and implementation of a HAVA-compliant plan is warranted, given Defendants' past failures, as well as the obstacles identified by the Defendants themselves.

Defendants had more than three years to develop a HAVA-compliant database, and failed to do so. Their response to this failure is to ask for a further delay of at least two years. Defendants' submission shows that they are unable or unwilling to take those steps necessary to comply with HAVA in time for the upcoming primary and general elections.

In addition, the Defendants' mishandling of the procurement process to date supports Plaintiff's request for the appointment of a special master. In Section 1.2.1 of their compliance plan, Defendants go through a lengthy (and self-serving) history of their previous attempt to find a vendor for the uniform, official, centralized, interactive computerized statewide voter registration list required by Section 303. Def. Subm., Ex. 1, at 1-8. They issued a request for proposals that was responded to by 12 vendors, and solicited input from Alabama's HAVA Committee, the Voter Registration Advisory Board, and Alabama's registrars, probate judges, and circuit clerks. Over the objections of one of these committees, the Alabama Secretary of State selected Diebold as the vendor for the system and entered into negotiations with them. Shortly thereafter, she rescinded that decision. That abortive procurement process took 30 months.

The indications that Defendants have learned from their failures are not promising. Defendants' submission evinces a willingness to continue to fail to comply with pertinent Court orders; to move deadlines back with each new communication or filing; to permit extraordinary delays in the selection process; and to endlessly solicit reviews and comments from dozens of other entities – with no assurance that these reviews and comments will be heeded.[4]  Under these circumstances, appointing a special master to act under authority of the Court will help to ensure the timely implementation of the uniform, official, centralized, interactive computerized statewide voter registration list required by HAVA.  *See Gary W. v. State of Louisiana*, 601 F.2df 240, 245 (5th Cir. 1979) (noting "desirability of appointing a master in a case where noncompliance with a previous court order is alleged").

Defendants also argue that one "complicating item for scheduling purposes" is the fact that the Secretary of State is running for reelection and that the potential exists for a new Secretary of State to be elected and sworn into office "at critical times during the implementation of the plan," for instance, during contract negotiations with the current Secretary's selected vendor.  Def. Subm., at 14.  Defendants cite no authority for the extraordinary proposition that an upcoming election relieves elected officials of their duty to comply with federal law and court orders.

---

[4]One particular item that has been the source of delay in the past is the Secretary of State's insistence that whatever software vendor is ultimately hired not charge a licensing fee for its software.  *See, e.g.,* McCormick Decl., Ex. M, at 2-3.  This demand has always seemed unreasonable, given that licensing fees are the standard method by which software vendors are compensated.  There is no indication that Secretary Worley has dropped this demand.  Indeed, the fact that Defendants have allotted months to negotiate a contract with whatever vendor they select suggest that Defendants will continue to press this unreasonable demand.

As a final point, the Court has the authority to require and indeed should require that the State of Alabama pay the fees and expenses associated with the appointment of the special master. It is Defendants' responsibility to comply with HAVA. Defendants have not done so. Because the need for the special master has arisen as a result of Defendants' failure to comply with federal law, it is fair and equitable that Defendants be required to finance the steps necessary to remedy their noncompliance. *See Gary W., supra,* 601 F.2d at 246.

4.    **In the absence of the appointment of a special master, the Plaintiff requests an expedited timeline to effectuate the long-term implementation of a statewide voter registration system**.

In the event that Defendants are neither compelled to submit a new, adequate plan, nor accept the appointment of a special master, Plaintiff respectfully requests that the Court direct, as a third alternative, that Defendants meet the deadlines contained in an expedited timeline in substantially the form set forth below.

Plaintiff maintains that an expedited time line for the long-term plan with a hard operational deadline of June 1, 2007, to reach full compliance with HAVA is reasonable and prudent.[5] This deadline gives the Defendants almost a year to comply; would prevent any further delay by Defendants; and provides the Secretary of State the opportunity timely to create

---

[5]Plaintiff also maintains that Defendants should be required to abide by the plain text of this Court's Order directing that, in the short-term, they bring the existing voter registration system into as much compliance with HAVA as may be possible by November 2006. At a minimum, this would entail establishing the connections with relevant state agencies that Defendants promised to have completed by March 2006 (*see* McCormick Decl., Ex. F, at 3). This should be accomplished in no more than sixty days, given the progress DPS has reported, and given that Defendants have never identified any technical impediments to doing so. *See* Palmer Decl., Ex. A, at 24-25.

Beyond that step, however, Plaintiff lacks sufficient information to allow it to determine what other concrete steps or deadlines are achievable by November 2006, and looks forward to the hearing in this matter to discover such information.

an accurate statewide list while allowing for the correction of any technical problems that may arise.

Plaintiff proposes the following timeline.[6]  Paragraph numbers are keyed to those in Defendants' proposed plan.

      A.    **August 1-3, 2006: Paragraph 3.3.1.**  "Within two weeks of the Plan being accepted by the Court, the Secretary of State will mail a letter to members of the relevant professional community listed with the Division of Purchasing requesting that vendors interested in bidding to develop a new statewide voter registration database respond in writing within two weeks.  The Secretary of State mailed a similar letter to approximately 600 vendors prior to the original Request for Proposals."

Since they have already been through this process once, Defendants should have a copy of the list of 600 as well as a copy of their original letter.  It should be feasible to substitute new dates for the dates on the present letter, perform a mail-merge with the address list, print 600 letters, and mail them.  There is no reason this step should take more than three days.

      B.    **August 1 - 10, 2006: Paragraph 3.3.2.**  "[T]he Secretary of State will issue [an] RFP to those vendors to purchase the services of a contractor to provide Alabama's long-term HAVA voter registration list solution.  The original RFP will serve as the basis for the

---

[6]Plaintiff notes that this timeline does not account for the possibility that Defendants might enter into negotiations with one of the vendors that responded to the last RFP request, as suggested by counsel for the Secretary of State at the May 30, 2006, hearing in this matter. Palmer Decl., Ex. A, at 14.  This expedient would shorten the procurement process significantly, in a way Plaintiff would strongly favor, and Plaintiff respectfully submits that Defendants should be directed to proceed in this way if it is possible.  For the purposes of this memorandum, however, Plaintiff simply lacks sufficient information to determine whether and how such an option could be effected.

new RFP.  However, the new RFP will incorporate any requirements set out herein or otherwise required by the Court.  The RFP will comply with Alabama purchasing law and procedure."

Defendants propose a six-week time frame.  However, they have represented that the original RFP would have resulted in a system that was HAVA-compliant, so any revisions to the previous RFP should be minimal.  Furthermore, there is no reason that the RFP cannot be under development at the same time as the letter soliciting interest (Paragraph 3.3.1) is being revised. Ten days should suffice.

C.    **August 10 - September 11, 2006: Prospective vendors respond to RFP.**

Defendants suggest a time frame of 45 days for vendor responses to the RFP.  Since the letter of interest is going out to the same 600 prospective vendors as the first one, those prospective vendors already have a good idea as to whether they are interested in submitting bids and, indeed, may only need to slightly revise the bids they entered for the original RFP.  Since the letter soliciting interest will go out on August 3, firms will have nearly a week to decide whether they want to receive the RFP.  Thirty days should be more than sufficient.

D.    **September 11 - October 2, 2006: Paragraph 3.3.3.**  "The Secretary of State, in conjunction with appropriate technology experts from the business, government, and education sectors, will evaluate the submitted proposals and determine which are responsive to the RFP.  The Secretary of State will then examine the proposals to determine a slate of five finalists."  Defendants suggest a time frame of six weeks.  However, having already been through this process once, the Secretary of State's office should already know what to look for in the proposals submitted.  Since Defendants are already nine months overdue on compliance by this point, time is critical, and a three-week time frame is reasonable.  Further, Defendants will

15

have five weeks from the beginning of this plan to convene the appropriate technology experts and have them ready to react quickly once the deadline for responding to the RFP passes.

     E.    **October 3 - 10, 2006: Paragraph 3.3.4.**  "The five proposals of the finalists will then be submitted to the Chairman of the Voter Registration Advisory Board ('Board'), the President of the Alabama Probate Judges' Association ('Probate Judges' Association'), the Chairman of the HAVA Committee ('Committee'), and the President of the Alabama Association of Boards of Registrars ('Registrars' Association') for input and advice. [These bodies] will have no more than two weeks to offer comments.  The chairs of the respective entities will be responsible for calling any meetings to discuss the proposals."  The relevant bodies, again, have been through this process once.  They should have their comments from the previous round of proposal evaluation available, and should have some knowledge of what aspects of the various proposals they wish to offer comments to.  They will have had two months to prepare to evaluate proposals and plan meetings.  One week should be sufficient.

     F.    **October 11 - 25, 2006: Paragraph 3.3.5.**  "The Secretary of State will select a vendor after she considers input offered by the Board, the two associations, and the Committee.  Once she has selected a vendor, the State will enter into contract negotiations with the chosen vendor.  The Secretary of State will spend no more than 30 days making the selection."  Again, the Secretary of State has already been through this process.  She has already evaluated one set of proposals and has, therefore, already formulated the criteria by which she wishes to make her selection.  The period from August 1, 2006, until October 11, 2006, should be utilized if she needs additional time to develop her assessment criteria or to refine them to meet any new strictures imposed by the Court.

G.     **October 26 - November 2, 2006: Vendor negotiation and finalization of contract documents.**  Defendants never explain why they would need a full three months – over 90 days – to negotiate a contract with the vendor they ultimately choose.  There is no reason that this step needs to take more than one week, especially given the urgent need of the State of Alabama to become HAVA-compliant.

H.     **November 3, 2006: Beginning of contract performance.**  The Secretary of State should declare, pursuant to Ala. Code § 29-2-41.1, that an emergency adversely affecting the economic welfare of the state exists, inasmuch as the state is out of compliance with HAVA, and failure to come into immediate compliance with the terms of the Court's Order implementing this plan could subject the state to fines or other penalties for contempt.  The State will thus be able to implement the contract immediately for a 60-day period, during which review by the Permanent Joint Legislative Contract Review Oversight Committee should take place.

I.     **November 3, 2006 - December 18, 2006: Paragraph 3.3.7.**  As noted above, the contract will be implemented on an interim basis utilizing the emergency provisions of Ala. Code § 29-2-41.1.  Such an immediate implementation requires that the Permanent Joint Legislative Contract Review Oversight Committee review the contract if it is to be in force for more than 60 days.  Note that the Contract Review Committee has no authority under Alabama law to contravene the Secretary of State's declaration or to abrogate the contract.  Since Ala. Code § 29-2-41 establishes a 45-day window during which this review is to occur, the contract should be submitted to the Contract Review Committee no later than November 3, 2006.

J.     **November 3, 2006 - May 6, 2007: Paragraphs 3.3.6., 3.3.8, Sections 3.4, 3.5, 3.6, 3.7**  "The contract will allow a maximum of nine months for project completion."

17

The vast majority of U.S. states are already in compliance with Section 303 of the Help America Vote Act of 2002.  Many states have come into compliance by purchasing information technology solutions from the very same vendors from whom the State of Alabama received proposals during the last round of submissions.  This indicates that off-the-shelf technology already exists for the implementation and security of single, uniform, official, centralized, interactive computerized statewide voter registration lists.

In these circumstances, nine months may not be necessary to develop and implement such a system.  Defendants' original RFP contemplated nine months for the completion of the project.  Although that nine-month window was acceptable in the normal course of business, the Plaintiff believes there needs to be a sense of urgency and a compression of the contract completion time-line.  The RFP and the contractual process should request a expedited completion date and solicit proposals for a compressed period of time of six months.

If a vendor is selected which has already implemented systems in other states that are HAVA-compliant, only minor alterations will be required to implement the same solution in Alabama.  Although it may involve additional cost to the State, six months is more than sufficient time to install 333 desktop computers, a set of servers, and lines to connect them; to make minor alterations to an existing software package and upload it onto the new computer system; to establish connections with the Alabama Department of Public Health, the Alabama Department of Public Safety, and the Alabama Administrative Office of Courts; and to upload voter registration data from the existing ALVIN system.  Rather than utilizing sometimes cumbersome public procurement processes in multiple iterations to procure computer hardware as suggested by Defendants, hardware procurement should be included in the initial RFP.  The vendor will then procure the hardware.

18

Since the vendor will be delegated responsibility for implementation of the information technology portions of the plan, to include what is outlined in Paragraphs 3.4.1, 3.4.2, 3.5.1, 3.6.1, 3.6.2, the Secretary of State may utilize the same six-month period to promulgate the regulations outlined in Paragraph 3.4.3 and Sections 3.7 and 3.8 and to prepare the training materials outlined in the plan.

K.    **May 7, 2007 - June 1, 2007: Testing and Implementation.**  On May 7, 2007, the State of Alabama should begin testing the new system and migrating from the existing ALVIN system and the separate systems maintained by some of the state's jurisdictions.  The process should be fully completed, and Alabama should be fully compliant with all requirements of Section 303 of the Help America Vote Act of 2002, by June 1, 2007.

## <u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests that this Court reject Defendants' proposed plan; that the Court (1) direct Defendants to submit an adequate plan within two weeks, or (2) direct the appointment of a special master to assist with and direct the implementation of an appropriate plan, or (3) direct Defendants to proceed pursuant to a schedule delineated by Plaintiffs and set frequent status conferences so that their progress may be closely monitored; and that the Court take such other actions as may be just and proper.

Respectfully submitted this 13rd day of July 2006.

ALBERTO R. GONZALES
Attorney General

WAN J. KIM
Assistant Attorney General
Civil Rights Division

LEURA GARRETT CANARY
United States Attorney

19

R. RANDOLPH NEELY
Assistant United States Attorney

JOHN K. TANNER
Chief, Voting Section

By:     s/Donald Palmer
        ROBERT D. POPPER
        CHRISTY A. McCORMICK
        DONALD L. PALMER
        Attorneys
        Voting Section
        Civil Rights Division
        U.S. Department of Justice
        Room 7254-NWB
        950 Pennsylvania Ave., NW
        Washington, D.C. 20530
        (800) 253-3931 (telephone)
        (202) 307-3961 (facsimile)

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 13rd day of July 2006, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following:

Nancy L. Worley
Secretary of State of the State of Alabama
State Capitol, Room 5105
600 Dexter Avenue
Montgomery, Alabama 36101

State of Alabama
c/o Troy King
Attorney General for the State of Alabama
Winfield J. Sinclair
Margaret L. Fleming
Misty S. Fairbanks
Assistant Attorneys General
11 South Union Street
Montgomery, Alabama 36130

Algert S. Agricola, Jr.
Slaten & O'Connor, P.C.
Winter Loeb Building
105 Tallapoosa Street, Suite 101
Montgomery, Alabama 36104

Michael W. Robinson, Esq.
Attorney for Department of Public Safety
Department of Public Safety, Legal Unit
Post Office Box 1511
Montgomery, Alabama 36102-1511

Address of Counsel:                          s/Donald Palmer
                                             Trial Attorney
Voting Section, Room 7254-NWB                U.S. Department of Justice
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
(800) 253-3931 (telephone)
(202) 307-3961 (facsimile)
E-mail: Donald.Palmer@usdoj.gov