IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. |
| | ) | |
| STATE OF ALABAMA, and | ) | 2:06-cv-0392-WKW-SRW |
| NANCY L. WORLEY, Alabama | ) | |
| Secretary of State, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ALABAMA PROBATE JUDGES | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Amicus Curiae. | ) | |

RESPONSE OF THE ALABAMA PROBATE JUDGES ASSOCIATION
TO THE SUBMISSION BY THE ALABAMA SECRETARY OF STATE
OF HER PLAN FOR COMPLIANCE WITH THE HELP AMERICA VOTE ACT

Comes Now Amicus Curiae the Alabama Probate Judges Association (hereinafter "the APJA" or "the Association"), by and through counsel, and responds to the plan for compliance with the Help America Vote Act of 2002 (hereinafter "HAVA") submitted by the Alabama Secretary of State (hereinafter "the SOS"), [Doc. No. 22], as follows:

1. In the portion of the SOS Plan entitled Background and Introduction, there are a number of historical inaccuracies which the APJA is compelled to report on because they are significant to a full understanding of how Alabama finds itself in its current situation. Under the provisions of § 17-25-2, ALA. CODE, the HAVA Committee was formed to advise the SOS on the development of the state plan and to make recommendations on all aspects of

the state plan described in Section 254 of HAVA. The permanent HAVA Committee first met in June, 2004, and held its organization meeting in September, 2004, at which Lawrence County Probate Judge Richard Proctor was elected Chairman.. The members of the HAVA Committee studied the proposals submitted to the SOS by various vendors in response to the Request for Proposals ("RFP") sent out by the SOS in August, 2003. In December, 2004, the HAVA Committee submitted its unanimous recommendation to the SOS that the proposal of ES&S be accepted by the State for its statewide voter registration system. See Minutes of the HAVA Committee meetings attached as Exhibit 1. Thus, it is not correct as stated by the SOS on page 6 of her plan that "[t]he Alabama HAVA Committee deliberated for approximately a year and issued its final recommendations to the Secretary of State." See SOS Plan, Section 1.2.1, at 6.

2.  Further, it was somewhat misleading to indicate in the next sentence that groups composed of voter registrars, probate judges, and circuit clerks came to conflicting recommendations. The APJA unanimously endorsed the recommendation of the HAVA Committee. Representatives of the Circuit Clerks who served on the HAVA Committee also endorsed the recommendation of the HAVA Committee. It was the Voter Registration Advisory Board, which is not the statewide organization of voter registrars, which did not endorse the proposal of ES&S.

3.  The SOS Plan indicates that the SOS announced that the state would enter into negotiations with Diebold to implement a new HAVA-compliant, statewide voter registration database. See SOS Plan, Section 1.2.1, at 6. The SOS Plan fails to mention that the

announcement was not made until the last weekend in May, 2005, some nineteen months after the RFP was sent out. During that period of time, the state of Alabama went from being a state in the forefront of states in their efforts to achieve compliance with HAVA to one of several states which sought a compliance deadline waiver to one of a very few states which failed to comply with HAVA.

4. The SOS Plan also fails to make clear that it was the insistence of the SOS that its vendors transfer ownership of the source codes to the software to the state of Alabama that lead to the breakdown of negotiations with Diebold and the state's ultimate reversal of its position on that issue which was the reason for the amendment to the RFP. See SOS Plan, Section 1.2.1, at 7. Had the SOS not insisted that the state own the source codes for the software, there would have been no such impasse in the RFP process. Critical time in the state's efforts to achieve compliance with HAVA was lost as a result of the insistence by the SOS that the state of Alabama own, instead of license, the source codes for the software.

5. The SOS Plan further indicates that the state could not enter into a software licensing agreement until funding for the continuing operation and maintenance of the system was added to the state budget. See SOS Plan, Section 1.2.2, at 7. It is inconceivable that the SOS expected the legislature to appropriate funds to continue the operation and maintenance of a statewide voter registration database for which a contract had not even been awarded.

6. The State Plan prepared and submitted to the people of the state of Alabama on August 19, 2003, by SOS Nancy Worley states: "The Secretary of State plans to hold in the HAVA election fund any unspent federal funds remaining after all HAVA requirements have

been met and using the interest earned from these funds to pay on-going maintenance and program costs at the state and local levels." State Plan—Final Draft, August 19, 2003, at 18, attached as Exhibit 2. The SOS expected the state to expend $12,000,000 of its federal HAVA funds on its Statewide Voter Registration System according to this same document. *Id.* at 17. However, the vendor proposals submitted in 2003 were in the range of $2,500,000 to $3,800,000. Although the cost of hardware for use in the implementation of the system at the state and local level was never ascertained because the software contract was never awarded, it is reliably estimated that the total cost of the system (software and hardware) would be between $7,000,000 and $8,000,000. Thus, there should have been between $4,000,000 and $5,000,000 in leftover federal HAVA funds to use for on-going maintenance and operation of the statewide voter registration system without any money contributed by the Alabama legislature. That should cover quite a bit of maintenance on a system that only cost $7,000,000 to $8,000,000. So there was no reason for the SOS to refuse to enter into a software licensing agreement on the basis of a shortage of funds as claimed by the SOS. See SOS Plan, Section 1.2.2, at 7.[1] Even if there had been such a shortage of funds, a point the

---

[1] The SOS Plan indicates that a request made to the Governor and the Legislature for $400,000 in additional funding to defray recurring licensing and data line costs associated with the system was not approved. See SOS Planm, Section 1.2.2, at 7. The Legislature does not appropriate money for hypothetical systems that have not been implemented. If the system had been in place and if additional funding could be shown to be needed after all federal funds had been exhausted as planned by the SOS, then responsible state officials would have had a basis for taking action. It is simply not credible for the SOS to claim that a software contract could not even be awarded because the legislature had not appropriated funds for the maintenance and operation of the system in the future.

4

APJA does not concede, it is inconceivable that the Alabama legislature would fail to appropriate money for the operation and maintenance of a statewide voter registration database knowing that failure to do so would jeopardize the ability of the state to conduct elections, elections to fill legislative seats.[2]

7. The SOS Plan asserts that resistance from state and county officials delayed implementation of a new voter registration database. See SOS Plan, Section 1.2.3, at 8. Those counties that maintain their own voter registration database constantly update the state voter registration database, known as ALVIN. Some counties have expended very large sums of money to implement state-of-the-art election systems that comply with HAVA's requirements. Those counties have legitimate interests in seeking the implementation of a HAVA-compliant statewide voter registration database that is operationally compatible with their election systems. One of the issues in this context is who will assume the cost of the development of modules that allow this compatibility to occur, the state or the counties. Discussion of these issues should not delay implementation of a new system. These discussions should have resulted in modifications that led to a solution.

8. In summary, it is the position of the APJA that all efforts by the SOS to deflect responsibility from the SOS for the state's failure to achieve compliance with Sections 303(a) and (b) of HAVA, 42 U.S.C. § 15483(a) and (b), represent a failure on the part of the SOS to recognize the reality of the authority and resources that are available to the SOS under the law.

---

[2] This Court could probably take judicial notice of the propensity of a legislative body for self-perpetuation.

No person could exercise the authority granted to the state's chief election officer other than the SOS to achieve compliance with HAVA. Section 255, HAVA, 42 U.S.C. § 15405; *see also* §§ 17-4-250(a), 252, 255, ALA. CODE. Similarly, no HAVA funds supplied by the federal government could be expended from the Help America Vote Fund in the state treasury without approval from the SOS. § 17-25-1, ALA. CODE. Further, there are no provisions of law that provide authority to probate judges, voter registrars, circuit clerks, or any other local election officials to prevent the SOS from implementing the requirements of HAVA.[3] The SOS must bear all responsibility for the state's failure to meet its responsibility to comply with Section 303(a) and (b) of HAVA by the January 1, 2006, statutory deadline.

9. Having taken this position as to the performance of the SOS, it is with understandable reluctance that the APJA announces its full agreement with the position of the SOS as to the possibility of modifying ALVIN in such a way as to achieve the greatest possible degree of compliance with HAVA by November 7, 2006. Obviously, had the SOS performed her responsibilities as outlined in the State Plan—Final Draft dated August 19, 2003, see attached Exhibit 2, the state would have been in compliance with HAVA by the statutory deadline. There is general agreement among those who are familiar with the technical capabilities of ALVIN that, because it is generations behind current technology and operates

---

[3] This discussion is not meant to assign blame for the state's current predicament. Rather, this discussion should inform the Court as to how we got where we are for purposes of its decision as to how we get to where we need to be and, more importantly, who should be entrusted with responsibility for going forward. The APJA trusts this Court's judgment as to the government's alternative suggestion for the appointment of a Special Master to oversee the state's ongoing efforts to achieve compliance with HAVA.

in an entirely different environment from other systems, completing the interfaces with other systems like the systems operated by the Department of Public Health, the Department of Public Safety, and the Administrative Office of Courts may not be possible. There are other problems that have been the subject of correspondence directed to the SOS from counties like Jefferson, Shelby, and Mobile where precincts are routinely split by district lines resulting in the use of multiple ballot styles within the same precinct on election day. In such election precincts, it is essential for poll workers to know what ballot style to give voters when they arrive to cast their votes. The registered voter list must indicate what ballot style each voter must receive in order to avoid electoral chaos. The ALVIN system lacks the requisite number of fields to accommodate automatic assignment of ballot style designation for voters based on their combination of political subdivision attributes in the larger, more populous counties. The result is that ballot style designations in these counties will have to be accomplished manually if ALVIN is used to generate the registered voter list. In these counties, this task would consume a tremendous amount of time and personnel resources. There would also be a much higher error rate from manual assignment of voter ballot styles. The APJA adopts herein by reference those additional issues raised in correspondence addressed to SOS Worley by Jefferson County and Mobile County as additional reasons why the use of the ALVIN system for the statewide voter registration database for the November 2006 general election is inadvisable. See correspondence attached hereto as Exhibit 3. The APJA believes that this Court recognized the practical and technical limitations on the achievement of full compliance with HAVA for the November 2006 general election when it ordered the state to develop a plan

to bring ALVIN into the greatest possible degree of compliance with HAVA for November 2006.[4] The APJA disagrees with the government's characterization of the SOS Plan as a request for reconsideration of this Court's order. Doc. No. 31, at 7. The plan simply recognizes what is possible to achieve at this time given the technology in place.[5]

10. The SOS has had rule making authority under state law for some time. See SOS Plan, Section 2.2, at 10. The SOS does not need this Court to enforce rules she makes under state law. Indeed, there are issues under the 11th Amendment arising from such an effort. The APJA cannot comment on the rules the SOS proposes to make until it has had an opportunity to examine those rules. The APJA would oppose any effort by the SOS to promulgate rules and regulations in excess of the authority granted to the SOS under state law. Similarly, the APJA would be opposed to any effort by the SOS to seek permission from this Court to bypass any requirements of state law in the formulation or promulgation of rules and regulations.

---

[4] Under § 17-10-12(a), ALA. CODE, absentee voters can begin receiving absentee ballots 40 days prior to the election. This year that date is September 28, 2006. That is the date when the general election starts. The circuit clerk must rely on the voter registration list to determine what ballot style is to be mailed to each absentee voter. If ALVIN cannot accomplish this task, it will not be possible to determine what ballot style absentee voters must receive. Further, when regular absentee voting concludes on November 2, 2006, the ALVIN system must be able to process data and supply a voter registration list that identifies voters who have already voted by absentee ballot so that they cannot vote again at the polls. See correspondence from Lee County Circuit Clerk Corinne T. Hurst, dated July 13, 2006, attached as Exhibit 4.

[5] Part of the problem is that lawyers generally have limited ability to comprehend the technical aspects of computers, especially mainframe computers. Without an understanding of the computer programs that run computers, and what it means for example to say that a computer operates in a completely different environment from another computer, it is very difficult to communicate intelligently about problems with accomplishing tasks that are directly related to the complexity of computer software.

11. As previously indicated, the APJA agrees with the statement set out in the SOS Plan, Section 3.2.10, at 19.

12. The APJA does not believe that it is necessary for the SOS to issue a new RFP for the state's new voter registration database. The current RFP should be modified as necessary, amended responses from those vendors who supplied proposals should be received expeditiously, and the contract should be negotiated and implemented on a far more rigorous schedule than that proposed by the SOS. The APJA believes the time table proposed by the government in its response to the SOS Plan is reasonable. See Doc. No 31, at 14-19.

Respectfully submitted this 18th day of July, 2006.

/s Algert S. Agricola, Jr.
Algert S. Agricola, Jr. (SJS No. AGR001)

Counsel for The Alabama Probate Judges Association

OF COUNSEL:

**SLATEN & O'CONNOR, P.C.**
Winter Loeb Building
105 Tallapoosa Street, Suite 101
Montgomery, AL 36104
(334) 396-8882
(334) 396-8880 Fax
aagricola@slatenlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. |
| | ) | |
| STATE OF ALABAMA, and | ) | 2:06-cv-0392-WKW-SRW |
| NANCY L. WORLEY, Alabama | ) | |
| Secretary of State, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Winfield J. Sinclair wsinclair@ago.state.al.us
Margaret L. Fleming mfleming@ago.state.al.us
Misty S. Fairbanks mfairbanks@ago.state.al.us
Christy A. McCormick christy.mccormick@usdoj.gov
Donald Palmer donald.palmer@usdoj.gov
R. Randolph Neeley rand.neeley@usdoj.gov
Robert D. Popper robert.popper@usdoj.gov
Dorman Walker dwalker@balch.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

John K. Tanner
U.S. Department of Justice
Chief, Voting Section
Civil Rights Division
Room 7254-NWB
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Wan J. Kim
U.S. Department of Justice
Voting Section
Civil Rights Division
Room 7254-NWB
950 Pennsylvania Avenue NW
Washington, D.C. 20530

                Respectfully submitted,

                s/ Algert S. Agricola, Jr.
                Algert S. Agricola, Jr.
                **SLATEN & O'CONNOR, P.C.**
                Winter Loeb Building
                105 Tallapoosa Street, Suite 101
                Montgomery, AL 36104
                Phone:  (334) 396-8882
                Fax:     (334) 396-8880
                E-mail: aagricola@slatenlaw.com

F:\Gen Litigation\Ala Probate Judges Assoc\Pleadings\PJA Response to SOS Plan.wpd