# EXHIBIT 2

# State of Alabama

# State Plan – Final Draft

As Required by Public Law 107-252,
The "Help America Vote Act of 2002," Section 253 (b)



Submitted to the People of Alabama
For Public Comment and Recommendations By

Nancy L. Worley
Secretary of State
P.O. Box 5616
Montgomery, Alabama 36103
1-800-274-VOTE (8683)

August 19, 2003

# TABLE OF CONTENTS

Introduction ........................................................................................ 2

Section 1 - Federal Mandates in Title III and Other Activities...................... 4

Section 2 - Distribution of Requirements Payments.................................. 12

Section 3 - Voter Education, Election Official Education and Training, and
            Poll Worker Training........................................................ 13

Section 4 - Voting System Guidelines....................................................... 15

Section 5 - Management of Alabama's Help America Vote Fund ............. 16

Section 6 - Alabama's HAVA Budget......................................................... 17

Section 7 - Maintenance of Alabama's Effort in Funding Elections ........... 19

Section 8 - Setting Performance Goals and Measures for Compliance .... 20

Section 9 - Creating Alabama's Administrative Complaint Procedure....... 21

Section 10 - Use of Title I Payments ........................................................ 22

Section 11 - Management of Alabama's State Plan................................... 23

Section 12 - Changes to State Plan from Previous Year (Reserved)........ 25

Section 13 - Alabama's State Plan Committees ....................................... 26

Appendix 1 – State Plan Committee Members .......................................... 27

# INTRODUCTION

On October 29, 2003, President Bush signed into law the Help America Vote Act of 2002. Perhaps the most sweeping elections legislation since the Voting Rights Act of 1965, the Help America Vote Act (HAVA) seeks to increase public confidence in the accuracy of our elections and to make voting more accessible to our citizens.

The Help America Vote Act contains two sets of federal mandates:

By the end of this year (2003), Alabama must:

- Combine all local voter registration lists into a single state list made available to local officials through an interactive computer network.
- Require that voters who register by mail show identification before voting in their next federal election.
- Create a system of provisional voting where an individual's eligibility to vote must be verified before his or her ballot is counted when the person's name is not on the precinct's list, or when they do not have an ID but are required to show one, or when their vote is challenged by the inspector of the polling place.
- Provide a single state office for military and overseas voters to contact in order to get applications for voter registration or absentee voting; and
- Offer voters greater information about the voting process and how to file a complaint.

By the end of 2005, Alabama must:

- Replace mechanical lever voting machines in Bullock county;
- Replace or modify voting machines in Mobile, Montgomery and DeKalb counties;
- Replace centralized ballot counting systems in nine (9) counties; and
- Place a modern computerized direct record voting machine in each precinct in the state capable of permitting persons with disabilities to vote without assistance and which facilitates voting in an alternative language (e.g., Spanish) for those counties whose voting age population exceeds 5% in that language group.

The Help America Vote Act promises significant federal funds to states in order to assist the states in meeting the Act's federal mandates. In order to qualify for this funding, each state must provide a five percent (5%) match of state money and must complete a State Plan to be filed with the federal government.

I wish to express my gratitude to the diverse group of citizens who worked diligently to provide the recommendations which helped to create this plan. Despite coming from differing

backgrounds with respect to race, age, gender, political affiliations, and careers, this group was surprisingly unified in their conclusions.

The work is not finished, however, until we have heard from the public. I look forward to learning about your suggestions and concerns. In the end, we will find that what we have accomplished will be a lasting change to the infrastructure of conducting elections in Alabama. I am convinced this will be a fitting beginning to our efforts to restore public confidence in the elections process.


                                    Nancy L. Worley
                                    Secretary of State

## Section 1 - Federal Mandates in Title III and Other Activities

*How the State will use the requirements payments to meet the requirements of Title III, and, if applicable under Section 251(a)(2), to carry out other activities to improve the administration of elections.*

The total amount of federal funding available as requirements payments under Section 254 of HAVA to Alabama is uncertain. Congress has not appropriated funds beyond Federal Fiscal Year 3 (FFY 3). The initial appropriation provides an estimated $12,807,000 in requirements payments. HAVA requires the state to match this payment by appropriating an amount equal to 5% of the total spent. In order to match the initial federal payment, the state must appropriate $640,350 in the current fiscal year.

The FFY 3 appropriation by Congress was substantially less than what was projected within HAVA. This has created uncertainty with respect to the commitment of Congress to fully fund HAVA in the second and third years of implementation. This plan must nonetheless presume full funding by Congress.

HAVA establishes a number of requirements that all states must meet whether or not federal funds are accepted. The specific choices on the methods of complying with these requirements is left to the discretion of the state. (See HAVA Section 305.) A brief description of the requirements and how Alabama will meet the requirements is set out below.

### Voting Systems Standards Requirements - HAVA Section 301 (a)
*Deadline for Compliance: January 1, 2006; no waiver permitted.*

HAVA establishes standards for voting systems. The deadline for meeting these standards is January 1, 2006. Each voting system used in an election for Federal office shall meet the following requirements:

- In general, the voting system shall:

  - Permit the voter to verify in a private and independent manner the votes selected by the voter on the ballot before the ballot is cast and counted;

  - Provide the voter with the opportunity in a private and independent manner to change the ballot or correct any error before the ballot is cast and counted including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error; and

  - If the voter selects votes for more than one candidate for a single office:

- notify the voter that the voter has selected more than one candidate for a single office on the ballot;

- notify the voter before the ballot is cast and counted of the effect of casting multiple votes for the office; and

- provide the voter with the opportunity to correct the ballot before the ballot is cast and counted.

A State or jurisdiction that uses a paper ballot voting system, a punch card voting system, or a central count voting system (including mail-in absentee ballots and mail-in ballots), may meet these requirements by establishing a voter education program specific to that voting system that notifies each voter of the effect of casting multiple votes for an office; and providing the voter with instructions on how to correct the ballot before it is cast and counted (including instructions on how to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error).

The voting system shall ensure that any notification preserves the privacy of the voter and the confidentiality of the ballot.

◎ The voting system shall produce a record with an audit capacity for the system. The record shall be a permanent paper record with a manual audit capacity. The voting system shall provide the voter with an opportunity to change the ballot or correct any error before the permanent paper record is produced. The paper record produced shall be available as an official record for any recount conducted with respect to any election in which the system is used.

◎ The voting system shall be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation, including privacy and independence as for other voters. This requirement can be satisfied through the use of at least one direct recording electronic voting system or other voting system equipped for individuals with disabilities at each polling place.

◎ The voting system shall provide alternative language accessibility pursuant to the requirements of the Voting Rights Act of 1965.

◎ The error rate of the voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under the voting systems standards issued by the Federal Election Commission.

◎ Each State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in

the State.

Of Alabama's 67 counties, 53 counties use precinct-level tabulation optical scan voting systems, 10 counties use central count tabulation systems for optical scan voting systems, 3 counties use direct record equipment voting systems and 1 county uses lever voting machines. Alabama has not used punch card voting systems.

The optical scan voting system meets the general requirements on privacy and independence. It also meets the audit capacity requirements. Alabama anticipates adopting a uniform style of voting by use of precinct-level tabulation optical scan voting systems supplemented by one (1) direct record voting system at each precinct deemed necessary for compliance with HAVA's provisions for persons with disabilities and for alternative language capabilities. The direct record system is also seen as offering privacy to those citizens who have difficulty reading but who are not visually impaired.

As a consequence, Alabama anticipates replacing voting systems in 14 of 67 counties and providing one (1) direct record voting system in each precinct. This can only be accomplished with full funding of HAVA by Congress.

While Alabama is presently exempt from the alternative language requirements of the Voting Rights Act of 1965, Alabama anticipates achieving compliance with those requirements by January 1, 2006. At present, 4 of Alabama's 67 counties have populations of Hispanic people which exceeds 5% of that county's voting age population. Full funding of HAVA is essential to Alabama's ability to reach out to this growing sector of our citizenry.

Since 2001, the Alabama statutes governing the Alabama Electronic Voting Committee require any electronic voting system to be qualified against the voting systems standards established by the Federal Election Commission before it can be used in the state. The qualification must be done by an independent testing laboratory approved by the National Association of State Election Directors (NASED).

In order to promote public confidence in the accuracy of Alabama's voting equipment, the Alabama Electronic Voting Committee will be requiring systems in use in Alabama that were approved prior to 2001 also have a certification on file by a NASED-approved independent testing laboratory that the system complies with voting system standards established by the Federal Elections Commission. The Alabama Secretary of State will also seek state legislation which requires recertification upon any material change in the voting system standards established by the Federal Elections Commission.

Historically, Alabama has conducted its own testing of the accuracy of electronic voting equipment and will continue to do so as a supplement to the findings of the independent testing laboratories approved by NASED.

Currently uniform standards of what constitutes a vote are established by administrative rule of the Alabama Electronic Voting Committee.  ALABAMA ADMINISTRATIVE CODE Rule 307-X-1-.17.  A review of whether to modify this rule pursuant to HAVA is under way.

## Provisional Voting Requirements - HAVA Section 302 (a)
*Deadline for Compliance:  January 1, 2004; no waiver permitted.*

HAVA requires a state to provide an individual the opportunity to vote a provisional ballot if the individual asserts that he is registered, but the person's name does not appear on the list of qualified voters or when an election official asserts that the individual is not eligible to vote.  The individual must complete a written affirmation that he is a registered voter in the jurisdiction and eligible to vote in that election. The individual is then permitted to vote a provisional ballot.  The provisional ballot is not counted unless it is verified that the individual is a registered voter in the jurisdiction and eligible to vote in that election.

Historically, Alabama has operated under a similar system of "challenged ballots" wherein the vote is counted on election day but made identifiable so that the election count may be modified in an election contest.

Alabama replaces "challenged ballots" with provisional balloting through Act 2003-313 which is pending preclearance by the U.S. Department of Justice.  This legislation would provide a three day period after a primary election and a seven day period in all other federal, state and county elections to verify provisional ballots.  It will be the role of the Board of Registrars in each county to verify provisional ballots and to certify their verification of the provisional ballots to the Judge of Probate.  The Judge of Probate, the Sheriff and the Circuit Court Clerk will have the responsibility of counting the provisional ballots and reporting those returns as though from an individual precinct within the county – similar to the manner in which absentee ballots are reported in Alabama.

## Voting Information Requirements - HAVA Section 302 (b)
*Deadline for Compliance:  January 1, 2004; no waiver permitted.*

HAVA requires that specific information be posted at each polling place on election day. The  required information is:

●      A sample version of the ballot that will be used for that election;

●      Information regarding the date of the election and the hours during which polling places will be open;

●      Instructions on how to vote, including how to cast a vote and how to cast a provisional ballot;

⊛    Instructions for mail-in registrants and first-time voters;

⊛    General information on voting rights under applicable Federal and State laws, including information on the right of an individual to cast a provisional ballot and instructions on how to contact the appropriate officials if these rights are alleged to have been violated; and

●    General information on Federal and State laws regarding prohibitions on acts of fraud and misrepresentation.

Alabama's current law does not fully encompass these requirements but each of these requirements is addressed in Act 2003-313 which is pending preclearance by the U.S. Department of Justice.  Act 2003-313 further provides that three sets of these instructions will be posted at each polling place in various locations specifically convenient to voters.

## Voters Allowed to Vote After the Polls Close Pursuant to a Court Order – HAVA Section 302 (c)
*Deadline for Compliance:  January 1, 2004; no waiver permitted.*

HAVA requires that any individual who votes after the polls close pursuant to a court order shall vote a provisional ballot.  The ballot shall be separated and kept apart from other provisional ballots.

Act 2003-313, which is pending preclearance by the U.S. Department of Justice, addresses this requirement.

## Computerized Statewide Voter Registration List Requirements - HAVA Section 303 (a)
Deadline for Compliance: January 1, 2004; State can submit a certification stating "good cause" that will extend the deadline for compliance to January 1, 2006.

HAVA requires the state, acting through the chief State election official, to implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State.  The chief State election official is also responsible for defining, administering and maintaining the statewide list of registered voters.  HAVA requires the computerized list to have the following attributes:

●    The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State.

⊛    The computerized list contains the name and registration information of every legally registered voter in the State.

- Under the computerized list, a unique identifier is assigned to each legally registered voter in the State.

- The computerized list shall be coordinated with other agency databases within the State.

- Any election official in the State, including any local election official, may obtain immediate electronic access to the information contained in the computerized list.

- All voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official.

- The chief State election official shall provide such support as may be required so that local election officials are able to electronically enter voter registration information into the computerized list on an expedited basis.

- The computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State.

Under current law, each county in Alabama has at least two official lists of registered voters – one maintained by the Board of Registrars for that county and one maintained by the Judge of Probate from which each precinct's list of qualified voters is produced. In addition, Alabama has a statewide computer file of registered voters which serves to assist each county in updating their records. The statewide computer file is maintained by the Office of Voter Registration which operates independently of the chief State election official – the Secretary of State. Due to a lack of adequate funding, the statewide computer file has become obsolete according to Alabama's Chief Information Officer.

In order to comply with the voter ID and provisional balloting provisions of HAVA, which may not be waived beyond January 1, 2004, Alabama will implement the state voter registration system under the authority of the enabling legislation, Act 2003-313, which is pending preclearance by the U.S. Department of Justice. The State Plan Committee found that establishing an official centralized state voter registration list with interactive links to other state agencies is the most economical and effective method to comply with HAVA's voter ID and provisional balloting requirements.

The State Plan Committee also recommended that lines of responsibility be clearly established in order to comply with HAVA. HAVA mandates that the state act through its chief State election official in managing a single statewide voter registration list. Act 2003-313 consolidates the Office of Voter Registration into the office of the chief State election official (the Secretary of State in Alabama) and will codify the federal requirements into Alabama law. In order to comply with HAVA's requirement that the list be defined, administered and maintained at the state level, Act 2003-313 provides that the Secretary of State may remove a

member of a county's Board of Registrars for cause in order to create accountability in a system dependent on maintenance of the state voter registration system by county-level registrars.

Due to the obsolete condition of the existing statewide voter file and admissions by Alabama's Chief Information Officer that state agencies have historically been overcharged for computer services by the Alabama Department of Finance, the Alabama Secretary of State is submitting requests for proposals to various prospective vendors for computer-related services associated with establishing and maintaining the statewide voter registration list. The Alabama Secretary of State expects to get proposals to evaluate from several vendors and from the Information Systems Division of the Alabama Department of Finance and will cooperate with the Department of Finance in the implementation of the system. The proposals will assist the Secretary of State in defining the computerized statewide voter registration list in accordance with HAVA Section 303(a) and with Act 2003-313, which is pending preclearance by the U.S. Department of Justice.

The Alabama Secretary of State is committed to achieving the most economical, reliable and effective system for the statewide voter registration list and will evaluate proposals and define the computerized state voter registration list only in that context. The system in Alabama will provide redundant PC servers managed by the Office of the Secretary of State with direct interactive connection to county boards of registrars and will provide multiple report functions to county Judges of Probate and Circuit Court Clerks in a format helpful to them in administering their election responsibilities. In addition Circuit Court Clerks will use the system to account for military and overseas absentee reporting requirements imposed on Alabama by HAVA. Pursuant to a recommendation of the State Plan Committee, Alabama is studying the feasibility of optical image scanning of voter registration applications of various types as part of its system.

The statewide voter registration list system will also have direct interactive access to the Alabama Department of Public Safety (drivers license database and Social Security Administration); the Alabama Administrative Office of Courts (felony records and records showing reinstatement of voting rights for ex-felons) and the Alabama Department of Public Health (death records). Access to voter registration information on the statewide voter registration list system by individuals, entities and agencies will be limited to that access required by state law in order to protect the privacy of voter registration information in accordance with Section 17-4-122, CODE OF ALABAMA.

## Requirements for Voters Who Register by Mail - HAVA Section 303 (b)
*Deadline for Compliance: January 1, 2004; no waiver permitted.*

HAVA requires an individual who registers by mail and who has never voted in the state before registering by mail to provide specific identification before being permitted to vote. The identification specified in HAVA includes a current and valid photo identification or a current utility bill, bank statement, government check, paycheck or other government document that shows the name and address of the voter. Act 2003-313, which is pending preclearance by the

U.S. Department of Justice, adopts HAVA's exception to the voter identification requirement where a driver's license number or last four digits of a social security number given by the applicant enables the registrars to verify the identity of the applicant via the computer link with the driver's license database of the Alabama Department of Public Safety.  If the registrars are unable to identify the applicant in advance, they will note through the computerized state voter registration list that the registered voter must provide identification at the next federal election. Should that individual fail to provide the required identification, the individual must vote on a provisional ballot.

An absentee voter, subject to this requirement may provide a copy of the identification as part of the absentee voting process.  Local election officials will have to track first-time voters and secure the required identification.  This can be done after the voter registers and before election day.

Act 2003-313, which is pending preclearance by the U.S. Department of Justice, adopts the HAVA voter identification requirements.  As noted previously, the State Plan Committee has recommended prompt implementation of the statewide voter registration list system, with interactive links to the drivers license database of the Alabama Department of Public Safety, to assist boards of registrars in identification of mail-in registrants as a way of reducing the number of voters required to produce identification and consequently reducing the number of provisional ballots in the 2004 elections.

## Section 2 - Distribution of Requirements Payments

*How the State will distribute and monitor the distribution of the requirements payment to units of local government or other entities in the State for carrying out the activities described in Section 1 of the State Plan, including a description of the criteria to be used to determine the eligibility of such units or entities for receiving the payment; and the methods to be used by the State to monitor the performance of the units or entities to whom the payment is distributed, consistent with the performance goals and measures adopted under Section 8 of the State Plan.*

Alabama does not plan to distribute any of the requirements payments to local governments in Fiscal Year 2003.

Subject to future guidance from the Alabama legislature, Alabama anticipates making distribution of requirements payments to county governments principally for the purpose of purchasing voting equipment necessary to comply with HAVA.

The State Plan Committee recommended that counties be required to certify a means of effort establishing that county election expenditures would not fall below the amount expended in the fiscal year immediately preceding the November, 2000 election and that the county would reimburse the State Help America Vote fund for monies returned to the federal government as a result of an audit exception showing the county has mis-spent a distribution of requirements payments.

County governments seeking a distribution of the requirements payment shall apply with the Secretary of State. The application must show performance goals and measures relating to compliance with HAVA and itemize how the local distribution of requirements payments will be spent in support of those performance goals and measures.

## Section 3 – Voter Education, Election Official Education and Training, and Pollworker Training

*How the State will provide for programs for voter education, election official education and training, and pollworker training which will assist the State in meeting the requirements of Title III.*

Training of election officials and voter education is the foundation of the election system. Trained election officials and informed voters are crucial resources in ensuring the integrity of the entire electoral process. The process of training and education will be enhanced by HAVA funding to assure that uniform and standardized procedures are implemented within each locality.

Currently, training programs in the State are localized at the county level. The Secretary of State distributes a training video and Pollworker Guides to the local election officials. These officials are responsible for how the information is disseminated to the pollworkers and to the public. The Secretary of State, in cooperation with local election officials, and with input from advocacy groups, will enhance the existing system by providing regular training to local election officials. HAVA funds will be used to provide uniform and standardized training programs, to produce and distribute training materials, and to establish other training resources.

The Secretary of State will include additional training on the HAVA requirements in the election officials training program. The Secretary of State will include material in the Pollworker Guide that addresses sensitivity training and the use of the voting machines.

The successful implementation of HAVA will require comprehensive election official training programs and public education. The Secretary of State will work with advocates for persons with disabilities to devise an outreach and education program to train voters on the new voting machines. The Secretary of State and local election officials will use public service announcements in the major media markets in the state as a forum to conduct voter education. Improved website and other free access systems for voters to obtain voter registration and election information will be utilized. The website will include information on, or links to, local websites with information on polling place hours and location.

The Secretary of State will place an increased emphasis on the recruitment of pollworkers. The State Plan Committee recommended the enactment of legislation that will raise the pay for pollworkers and will provide pay for attending training sessions. The Secretary of State will also involve civic and service organizations in pollworker recruitment, will recruit college students to become pollworkers, and will use the media and the Secretary of State website in recruiting pollworkers.

Information posted on election day at the polling locations will include a sample version of the ballot, information on the date of the election, the hours of the polling place, instructions on provisional ballots, instructions for mail-in registrants voting for the first time, and general information on voter rights.  These instructions will also be available on the Secretary of State website.

## Section 4 - Voting System Guidelines

*How the State will adopt voting system guidelines and processes which are consistent with the requirements of Section 301.*

Alabama's current statutes provide for voting system guidelines and processes to be established by administrative rules adopted by the Alabama Electronic Voting Committee made pursuant to the Alabama Administrative Procedures Act. See Chapter 307-X-1, ALABAMA ADMINISTRATIVE CODE; Chapter 17-24, CODE OF ALABAMA; and Chapter 41-22, CODE OF ALABAMA.

Alabama requires that each electronic voting system used in the state must be approved by the Alabama Electronic Voting Committee and must be certified by an Independent Testing Authority designated by the National Association of State Election Directors (NASED) that the system complies with voting systems standards established by the Federal Elections Commission.

Act 2003-313, which is pending preclearance by the U.S. Department of Justice, requires compliance with Section 301 by January 1, 2006.

## Section 5 – HAVA Election Fund Management

*How the State will establish a separate Election fund for purposes of administering the State's activities under this part, including information on fund management.*

The Secretary of State has established a state "Help America Vote Act" fund to receive the federal and state money for the purpose of complying with HAVA. This fund is separate and distinct from all other funds within the office. All disbursements from the fund will require the approval of the Secretary of State. The Secretary of State will work with the State Comptroller and the Executive Budget Office to ensure that all mandated fiscal controls and policies are put into effect.

## Section 6 – Alabama's HAVA Budget

*The State's proposed budget for activities under this part, based on the State's best estimates of the costs of such activities and the amount of funds to be made available, including specific information on the costs of the activities required to be carried out to meet the requirements of Title III: the position of the requirements payment which will be used to carry out other activities.*

The total amount of federal funding available to Alabama under HAVA is uncertain. Congress has not appropriated funds beyond Federal Fiscal Year 2003. Funds have been appropriated under HAVA Title I for activities to improve the administration of elections and replacement of lever voting machines. The Secretary of State plans to use funds to reimburse the agency for staff training costs associated with HAVA and agency costs associated with the preparation of the State Plan.

### Estimated HAVA-Related Receipts

| Federal Fiscal Year | Total Federal Funds | Alabama Federal Share | 5% State Match Requirement |
|---|---|---|---|
| Early Payments (Title I Funds) | $650,000,000 (Appropriated) | $5,000,000 | $0 |
| 2003 (Title II Funds) | $833,000,000 (Appropriated) | $12,807,000 | $640,350 |
| 2004 (Title II Funds) | $1,000,000,000 (Authorized) | $16,404,000 | $820,000 |
| 2005 (Title II Funds) | $600,000,000 (Authorized) | $9,843,000 | $492,132 |
| Total | $2,564,000,000 | $44,054,000 | $1,952,682 |

### Estimated HAVA-Related Expenditures

Statewide Voter Registration System ..........................................................................$12,000,000
Direct Record Voting Machines for Persons with Disabilities/Others .........................$11,000,000
Upgrade Other Voting Machines to HAVA Standards..................................................$12,000,000
Voter Education and Outreach.......................................................................................$2,500,000
Election Official Training..............................................................................................$2,500,000
Military and Overseas Balloting ......................................................................................$334,000
Provisional Balloting ......................................................................................................$333,000

Voter ID for Mail-in Registrants..................................................................................$333,000
Complaint Review Process ....................................................................................$1,000,000
Improvement of Election Administration ............................................................. $2,000,000
TOTAL ....................................................................................................................$44,000,000

     If no additional federal funding is appropriated, Alabama will not be able to fund the requirements mandated by HAVA. Alabama must also appropriate the required 5% spending match. Legislation has been approved that will fund this 5% match.

     Alabama is assuming that the costs of complying with HAVA will not end after federal appropriations have ceased. The Secretary of State plans to hold the HAVA election fund any unspent federal funds remaining after all HAVA requirements have been met and using the interest earned from these funds to pay on-going maintenance and program costs at the state and local levels.

     The duration for the budget is based on HAVA deadlines and projected funding. The State is concerned, however, that beyond the three years of federal funding, the ongoing costs of operating and maintaining the statewide voter registration list and the new voting equipment will be considerably higher than current local budget for these efforts and any unspent money in the Elections Fund. The operation and maintenance of the new infrastructure will be a financial burden when HAVA funding is no longer available.

## Section 7 - Maintenance of Alabama's Effort in Funding Elections

*How the State, in using the requirements payment, will maintain the expenditures of the State for activities funded by the payment at a level that is not less than the level of such expenditures maintained by the State for the fiscal year ending prior to November 2000.*

Alabama will maintain the level of state budgeting for election requirements at the same or greater level as the state spent in the fiscal year ending before the November 2000 election. In the fiscal year ending September 30, 2000, the state spent no funds on activities related to HAVA requirements. The state election-related budget consisted of the following line items:

"125.   Secretary of State
       (A) Administrative Support Services Program
           (1) State General Fund                               $753,056
           (3) Electronic Voting Fund ........................................................................$5,000
       Conditional Appropriation:
       Section 5. Page 103, Line 17 Secretary of State ......................................................$84,977

"142   Voter Registration Identification Program
       (A)  Special Services Program                                  $566,140
       Conditional Appropriation: Section 5, Page 103, Line 8 ........................................$41,316

"2D OTHER:
"6.     Distribution of Public Documents:
       (A) Administrative Support Services Program, Estimated           $305,206

"8.     Election Expenses:
       (A) Special Services Program, Estimated                   $4,500,000
       (B) Training of Election Officials ........................................................................$72,694

"28.   Registration of Voters Special Services Program, Estimated ...........................$2,800,000
TOTAL .................................................................................................................$9,128,389

Any payments to local government will be conditioned on a continuing maintenance of effort to ensure that federal funds do not replace existing local expenditures on election administration.

## Section 8 – HAVA Performance Goals and Measures

*How the State will adopt performance goals and measures that will be used by the State to determine its success and the success of units of local government in the State in carrying out the plan, including timetables for meeting each of the elements of the plan, descriptions of the criteria the State will use to measure performance and the process used to develop such criteria, and a description of which official is to be held responsible for ensuring that each performance goal is met.*

The State's goal is to achieve election reform and compliance with HAVA requirements through the successful implementation of the programs outlined in the State Plan. The Secretary of State and local election officials are responsible for ensuring the success in meeting each performance goal and objective.

The Secretary of State will establish performance objectives and measurement processes to monitor the progress under the State Plan. This will provide measurable management objectives. The performance goals and measurements will provide a high-level view of a project's progress towards achieving compliance with HAVA requirements. The Secretary of State will measure critical areas of each project.

The Secretary of State will continuously monitor and, at a minimum, audit semi-annually the performance of each initiative that is funded by requirements payments in three areas: financial controls, compliance with standards, and program results.

Concurrent with the public comment period of the State Plan, the Secretary of State will be developing performance goals and measurements required by HAVA. This process includes input already obtained from the State Plan Committee and will also include input from local election officials and public comments received pertaining to this Plan. Performance goals and measurements will be established for the following elements of the State Plan.

Performance Topics
1. Statewide Voter Registration List
2. Voter Education and Outreach
3. Training of Election Officials
4. Military and Overseas Ballot Process
5. Provisional Voting
6. Voting Accessibility
7. Complaint Review Procedure

The Secretary of State will ensure that the State and any recipient of payments under HAVA maintain records in accordance with the record-keeping requirements of the Act and all such records will be available for audit. This will include Quality Assurance Reviews.

## Section 9 - Creating Alabama's Administrative Complaint Procedure

*A description of the uniform, nondiscriminatory State-based administrative complaint procedures in effect under Section 402.*

Act 2003-313, which is pending preclearance by the U.S. Department of Justice, establishes an administrative complaint procedure requirement in order to comply with HAVA Section 402. The legislation authorizes the Secretary of State to promulgate detailed procedures by rule pursuant to the Alabama Administrative Procedures Act.

As recommended by the State Planning Committee, complaints will be on a form prescribed by the Secretary of State and submitted either to the Probate Judge of the county or directly to the Secretary of State. Complaints submitted at the local level will be forwarded to the Secretary of State for review.

The Secretary of State will determine whether the complaint relates to a local matter or a matter requiring resolution at the state level. If local in nature, the complaint will be submitted to the county Judge of Probate who will convene a meeting of the county appointing board (Probate Judge, Sheriff and Circuit Court Clerk) to evaluate and make a disposition of the complaint on behalf of the state. Such evaluations may include a hearing on the record upon request of the complainant.

If the matter is to be resolved at the state-level, the Secretary of State shall evaluate the merits of the complaint with the assistance of the Secretary of State's Elections Division. Requested hearings will be conducted by a hearings officer on the record appointed by the Secretary of State.

Whether resolved locally or at the state-level, complaints shall be reviewed, resolved and appealed pursuant to the Alabama Administrative Procedures Act. If not resolved within 90 days after receipt of the complaint, the complainant may then obtain arbitration pursuant to the Rules of the American Arbitration Association. Should arbitration fail to resolve the matter within 150 days after the complaint was originally filed, the complainant may then pursue their remedy through litigation under the terms of the Alabama Administrative Procedures Act.

## Section 10 – Use of Title I Payments

*If the State received any payment under Title I, a description of how such payment will affect the activities proposed to be carried out under the plan, including the amount of funds available for such activities.*

The State of Alabama has received payments under HAVA Title I. The Secretary of State plans to use the Section 101 payments to reimburse the agency for staff training costs associated with HAVA and agency costs associated with the preparation of the State Plan. In addition, these funds will be used for activities to meet the following requirements:

- Statewide voter registration list
- Voter education and outreach
- Training of election officials
- Military and overseas ballot process
- Provisional voting
- Voter ID for mail registrants voting for the first time
- Complaint review procedure

The State has also applied for Section 102 payments to be used as reimbursement for the acquisition of electronic voting systems that replace lever voting machines used at the November 2000 election. The one county that uses lever voting machines has not purchased replacement equipment that complies with HAVA Section 301.

The Secretary of State will evaluate new voting systems for HAVA Section 301 and disability access compliance and develop an implementation and acquisition plan for compliant voting systems. Section 102 payments will be part of the acquisition funds that apply to the voting equipment purchased for the qualifying county.

## Section 11 – State Plan Management

*How the State will conduct ongoing management of the plan.*

Act 2003-313, which is pending preclearance by the U.S. Department of Justice, establishes a committee of 20 individuals to assist the Secretary of State in the development of the State Plan. This committee will reflect the racial diversity of the state and will consist of the following members:

- The Judge of Probate in the most populous county;

- The Judge of Probate in the second most populous county;

- Three local elections officials to be appointed by the Secretary of State, one of whom shall be recommended by the Sheriffs' Association and one of whom shall be recommended by the Circuit Clerks Association;

- Five individuals representing the interests of the electorate to be appointed by the Secretary of State, one of whom shall represent the political party with the highest number of votes in the last Presidential election, recommended by the chair of the party; one of whom shall represent the political party with the second highest number of votes in the last Presidential election, recommended by the chair of the party; and one of whom shall represent an organization serving as an advocate for the rights of individuals with disabilities;

- Three private citizens, representing the public at large, to be appointed by the Governor;

- Five members of the state House of Representatives to be appointed by the Speaker of the House of Representatives and two members of the state Senate to be appointed by the President of the Senate.

This committee will have the power and the duty to advise the Secretary of State on the further development of the State Plan and to make recommendations on all aspects of the State Plan. The committee will continue to meet and revise and refine the State Plan to reflect goals of HAVA and respond to legislative and executive direction. The State Plan will be reviewed in January of each year, or more frequently upon the discretion of the Secretary of State, in order to incorporate changes that reflect the State's progress in implementing HAVA and addressing new election-related challenges.

The State will not make any material change in the administration of the plan unless the change is developed and published in the Federal Register in accordance with HAVA Section 255 in the same manner as the original State Plan. Any modifications to this State Plan will be subject to public notice and comment in accordance with HAVA Section 256. The revised State

Plan will take effect only after the expiration of the 30-day period which begins on the date the change is published in the Federal Register.

## Section 12 – Changes to State Plan from Previous Fiscal Year

*In the case of a State with a State plan in effect under this subtitle during the previous fiscal year, a description of how the plan reflects changes from the State Plan for the previous fiscal year and of how the State succeeded in carrying out the State plan for such previous fiscal year.*

This State Plan is the Preliminary State Plan required under the Help America Vote Act of 2002 (HAVA).  This section will be updated in the next fiscal year, reflecting changes to the State Plan, as well as a summary of the 2003 success.

## Section 13 – State Plan Committee

*A description of the committee which participated in the development of the State Plan in accordance with HAVA Section 255 and the procedures followed by the committee.*

The State Plan Committee was appointed in April 2003 by Secretary of State Nancy L. Worley, Alabama's chief election official (§17-4-250, Code of Alabama). The committee consists of 36 Alabama citizens from throughout the state. There are 19 local elections officials, including the chief election official from Jefferson and Mobile counties. The committee has five representatives of groups of individuals with disabilities and one representative of groups of individuals who speak an alternative language. A list of the committee members are attached to the State Plan as Appendix 1.

The committee held meetings May 7, May 12, and May 21, 2003. These meetings were held in Montgomery, Clanton, and Prattville. The committee reviewed the Help American Vote Act (Public Law 107-252) and provided comments to the Secretary of State. These comments were incorporated into Recommendations from the Committee for inclusion into the State.

## Appendix 1 – State Plan Committee Members

Tim Baer
Executive Director, Republican Party

Robert Bates
Circuit Court Clerk, Cullman County

Mike Bolin
Judge of Probate, Jefferson County

Betsy Burkhalter
Pollworker, Talladega County

Lauren Carr
Alabama Disabilities Advocacy Program

Joan Carter
American Association of Retired Persons

T.C. Coley
County Commissioner, Tallapoosa County

Marty Connors
Chairman, Republican Party

Reuben Cook
Alabama Disabilities Advocacy Program

Catherine Crosby
Close-up Foundation

Gayle Crume
Persons with Disability Representative

Barbara Crozier
Governor's Office on Disability

Don Davis
Judge of Probate, Mobile County

Karey DeShazo
Ms. Crume's Assistant

Stephen Goodwin
Deputy Sheriff, Calhoun County

Alba Hernandez
Democratic Hispanic Caucus

Ricky Hill
Elections Supervisor, Jefferson County

Earlean Issac
Judge of Probate, Greene County

T. Michael Jones
Alabama Federation of the Blind

Walta Mae Kennie
County Administrator, Perry County

Joe McEarchern
Chief Probate Court Clerk, Mobile County

Myra McKinney
Elections Clerk, Jefferson County

Jerry Morris
Alabama Education Association

Chad Nichols
Governor's Representative

Anne Permaloff
League of Women Voters

Paul Pinyan
Alabama Farmers Federation

Redding Pitt
Chairman, Democratic Party

Guin Robinson
Mayor, Pell City

Les Sellers
Registrar, Coosa County

Buddy Smith
Registrar, Dale County

Jane Smith
Circuit Clerk, Madison County

Frankie Stone
Registrar, Etowah County

Gloria Strickland
Clerk, Jefferson County

Donald Watkins, Jr.
Youth Representative

Susan Wilson
Circuit Court Clerk, Mobile County

Wallace Wyatt, Jr.
Judge of Probate, St. Clair County