IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-392-WKW |
| | ) | |
| The STATE OF ALABAMA and | ) | |
| NANCY L. WORLEY, | ) | |
| Alabama Secretary of State, | ) | |
| in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO THE COURT'S ORDER (Doc. 38)

Come now Defendants State of Alabama and Nancy L. Worley, in her official capacity as Alabama Secretary of State, by and through Troy King, Attorney General for the State of Alabama, and submit their response to the Court's Order dated July 21, 2006 (Doc. 38), (hereinafter "Order").

## INTRODUCTION

On May 1, 2006, the United States filed suit against the State of Alabama and Nancy L. Worley, in her official capacity as Alabama Secretary of State, alleging that the State had not complied with Sections 303(a) and (b) of the Help America Vote Act of 2002 ("HAVA"), *codified at*

42 U.S.C. § 15483(a) & (b). (Doc. 1) The United States also moved for a preliminary injunction, (Doc. 2), which motion was accompanied by a memorandum of law, including various exhibits (Doc. 3). A hearing was held on May 30, 2006, at which time this Honorable Court issued its oral findings and order, and said that a written order would follow (Doc. 26 at 36-40).

On June 7, 2006, the Court issued a Memorandum and Order Granting Declaratory Judgment and Preliminary Injunction (hereinafter Preliminary Injunction) (Doc. 16), *available at United States v. State of Ala.*, 2006 WL 1598839 (M.D. Ala. 2006). In pertinent part, the Court declared that "[t]he defendants are not in compliance with § 303(a) of HAVA, 42 U.S.C. § 15483(a), with respect to having a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office; and . . . [t]he defendants are not in compliance with § 303(b) of HAVA, 42 U.S.C. § 15483(b), with respect to . . . matching procedures in elections for federal office . . . ." (Doc. 16 at 8). *United States v. State of Ala.*, 2006 WL 1598839, at *5 (M.D. Ala. 2006). The Preliminary Injunction further provided that "[t]he defendants, their officers, agents, servants, employees, attorneys, successors in office, and all person in active concert and participation with any of them, are ENJOINED from failing or

refusing to comply promptly with the requirements of § 303(a) and (b) of HAVA; and [these same persons] are ORDERED to develop promptly a HAVA compliance plan" (Doc. 16 at 9). *United States v. State of Ala.*, 2006 WL 1598839, at \*5 (M.D. Ala. 2006).

On June 29, 2006, the Secretary of State timely filed her HAVA compliance plan (Doc. 22 at Exhibit 1). On July 13, 2006, the United States filed Plaintiff's Response to Defendants' Submission of HAVA Plan (Doc. 31). That same day, Shelby County Judge of Probate Patricia Fuhrmeister filed her Motion for Leave to Participate as Amicus Curiae, including her affidavit (Doc. 32; *see also* Doc. 33, ruling on said motion). On July 18, 2006, the Alabama Probate Judges Association, also appearing as amicus, filed its response to the Secretary's HAVA compliance plan (Doc. 34; *see also* Doc. 20, Doc. 23, Doc. 25, Doc. 28, Doc. 29, Doc. 30, and Doc. 33, all concerning the participation of the Alabama Probate Judges Association in this litigation). That same day, the State of Alabama and the Secretary of State filed Defendants' Reply to Plaintiff's Response to Defendants' Submission of HAVA Plan (Doc. 36).

A hearing to consider the Secretary's plan was held on July 20, 2006. The next day, the Court issued its order, giving notice that a Special Master

is to be appointed[1] (Doc. 38 at 5).  The Special Master is tasked with "bringing Defendant State of Alabama into complete compliance with HAVA with regard to the development and implementation of a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office" (Doc. 38 at 5).[2]  The Court ordered that the parties file responses to this Order, giving consideration to particular issues, in addition to the Rule 53 factors.  This is the Defendants' response.

---

[1]    The appointment of the Special Master in this case appears to be under Rule 53(a)(1)(C), in that developing and implementing a new voter registration system is akin to managing a post-trial (*i.e.,* post-liability) matter that cannot be addressed by the Court directly, because of sovereignty concerns.

The appointment of the Special Master may also be pursuant to the Court's inherent authority.  *Cf. Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

[2]    In its complaint, the United States also challenged the voter registration forms used by the State of Alabama, contending that the forms did not comply with Section 303(b) of HAVA, 42 U.S.C. § 15483(b), (Doc. 1 at 8).  The Secretary of State revised the forms, and those revised forms have been precleared by the Department of Justice pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, (see Doc. 35 at Exhibit 2).  At the July 20, 2006 hearing, counsel for the plaintiffs announced that the revised forms were HAVA compliant.  The Secretary has already initiated the process of having the forms printed, (Doc. 36 at 7), and will continue to oversee the printing and distribution of the forms.

## RESPONSE

In compliance with the Court's Order, the Defendants offer the following response.

## The Nature and Extent of the Duties and Authority of the Special Master (Rule 53(b)(2)(A))

The Special Master will be tasked with "bringing [the] State of Alabama into complete compliance with HAVA with regard to the development and implementation of a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office" (Doc. 38 at 5). Among other things, this will include: selecting a professional services company to develop the voter registration system software; negotiating a contract with the vendor; working with the vendor to design and implement the new statewide voter registration system, including developing interfaces with the Department of Public Safety, the Department of Public Health, and the Administrative Office of Courts; buying the hardware necessary to support the new voter registration system, including a server or servers, computers, and printers; and, training local election officials on the use of the new voter registration system.

To assist the Special Master in undertaking this task, it will be necessary to enjoin various officials and entities to cooperate with the Special Master in the performance of his duties. Defendants respectfully

submit that the injunction should be narrowed to include only the officers, agents, servants, employees, attorneys, successors in office, and all persons in active concert and participation with the following individuals and entities: the Secretary of State and her Office; Registrars; Judges of Probate; Circuit Clerks/ absentee ballot managers; the Department of Public Safety; the Department of Public Health; the Administrative Office of Courts; and, the Information Services Division of the Finance Department.

This narrower injunction would replace the broader preliminary injunction, which included within its scope thousands of State agents, employees, lawyers, *etc.*, who had no role in the State's HAVA compliance (*See* Doc. 16 at 9). *United States v. State of Ala.*, 2006 WL 1598839, at *5 (M.D. Ala. 2006)  ("The defendants [which includes the State of Alabama], their officers, agents, servants, employees, attorneys, successors in office, and all persons in active concert and participation with any of them, are ENJOINED from failing or refusing to comply promptly with the requirements of § 303(a) and (b) of HAVA . . . .").

**Delineation of Roles of the Special Master from those of the Secretary of State**

Pursuant to this Court's Order, the Special Master is tasked with "bringing [the] State of Alabama into complete compliance with HAVA with regard to the development and implementation of a single, uniform,

official, centralized, interactive computerized statewide voter registration list in elections for federal office" (Doc. 38 at 5). The Special Master should have the power and authority necessary to implement the Court's order.

The Secretary remains the State's chief elections official responsible for all other election duties, including other HAVA duties, *see* Ala. Code § 17-1-8(a). Accordingly, the Special Master should coordinate with the Secretary and her staff, including periodic meetings, updates, and briefings, when appropriate.

Additionally, because the Secretary's plan assumed her participation in the selection of the vendor and the development and implementation of the voter registration system, the plan did not specifically provide for her input. Now that a Special Master is being appointed, the Secretary should be allowed to offer advisory input to the Special Master.

After the Special Master has selected a vendor and the vendor has begun to develop the State's voter registration system, the parties, the Special Master, and the Court can revisit what, if any, rulemaking or other enforcement mechanism may be required.[3] Rulemaking may require the

---

[3] While the Court's order states that there were no objections to the Secretary's plan, other than the timeframes (Doc. 38 at 4), various officials and entities, including the State of Alabama by and through its Attorney General, did express concerns about the Secretary's proposed use of rule-making authority (*See, e.g.* Doc. 22 at 14-15 (Submission of HAVA Plan, Analysis, and Argument); *Id.* at Exhibit G to the Secretary's Plan – Letter from the Association of County Commissions of Alabama ("The ACCA is

cooperation of the Secretary of State, who has broad rulemaking authority under State law.    *See* Ala. Code § 17-1-8(a).  During the Special Master's tenure, the Secretary of State should not promulgate any rules impacting on the new voter registration system without the concurrence of the Special Master.

## Staffing Assigned to the Special Master

The Order indicated that the Special Master is being appointed pursuant to Fed. R. Civ. P. 53.  Rule 53(b)(1) provides that "[a] party may suggest candidates for the appointment."  Fed. R. Civ. P. 53(b)(1).  As will be discussed below, *see* Other Rule 53 Factors, the Honorable Bob Riley, Governor of the State of Alabama, should be appointed Special Master. With respect to staffing, the Governor's legal advisor has indicated that the Governor has in place sufficient staff for initial assessment and administrative purposes.  Additional staffing will be provided as needed. Staff will be paid with HAVA funds (if permissible) or with State funding (if

---

greatly concerned about the language in the proposal regarding the Secretary of State's rulemaking authority and plans for promulgating rules to govern the maintenance of voter lists for the November 2006 general election and for the development of the new system."); Doc. 32 at Affidavit of Patricia Fuhrmeister, Shelby County Judge of Probate) ("I have concerns about the extent to which Administrative Rulemaking has been proposed as a substitute for matters which might require legislative action.  I have particular concerns regarding a proposed rule that would bar certification of certain federal election results.").

HAVA funds cannot be used). The details of these matters should be resolved after staffing needs have been determined.

## Transfer of HAVA Funds and Interest to the Special Master

Ala. Code § 17-25-1 "establishe[s] a separate trust fund in the State Treasury to be known as the Help America Vote Fund" and provides that "[a]ll state and federal monies designated in accordance with the Help America Vote Act of 2002 and accrued interest are to be deposited into this fund."[4] Defendants believe it will be necessary for this Court to partially supersede Ala. Code § 17-25-1 in its order by enjoining the necessary State officials to create a separate fund, the "Help America Vote Act – Voter Registration Fund" (hereinafter HAVA-VRF), for the use of the Special Master in developing and implementing the State's new voter registration

---

[4]       Ala. Code § 17-25-1 provides:

          There is established a separate trust fund in the State Treasury to be known as the Help America Vote Fund. All state and federal monies designated in accordance with the Help America Vote Act of 2002 and accrued interest are to be deposited into this fund. The receipts shall be disbursed only by warrant of the state Comptroller drawn upon the State Treasury supported by itemized vouchers approved by the Secretary of State. No funds shall be withdrawn or expended except as budgeted and allotted according to Sections 41-4-80 to 41-4-96, inclusive, and 41-19-1 to 41-19-12, inclusive, and only in amounts as stipulated in the general appropriations act or other appropriation acts.

Ala. Code § 17-25-1.

system. This will also simplify federal audits of the HAVA funds allocated under the order.

In accordance with past large disbursements from the Help America Vote Fund, payments from the HAVA-VRF should require dual approval (*i.e.,* approval from both a representative of the Governor and a representative of the Secretary of State) before large disbursements are made. This ensures that the HAVA-VRF retains the same checks and balances built into the Help America Vote Fund. The Secretary should be expected to demonstrate the same level of cooperation that the Governor has thus far shown in these matters.

The amount transferred from the Help America Vote Fund to the HAVA-VRF should consist of the monies allocated to the purchase of the software and hardware for the voter registration system, the money allocated for training on the new voter registration system, and the interest earned thereon.[5] Additionally, the Governor has indicated that he will initially need up to $250,000 to cover his expenses as Special Master.

---

[5]    Under the Order, the Secretary is "to prepare an accounting of HAVA funds budgeted or dedicated to the development of the statewide voter list (the "Funds"), including a pro rata share of interest earned thereon, and further indicating the amounts expended, the purposes of the expenditures, any accounts payable from the Funds, and the location of deposits of the Funds" (Doc. 38 at 6). The Court further ordered that "[t]he accounting shall be filed **on or before July 31, 2006**" (Doc. 38 at 6).

Within two weeks of being appointed, the Special Master should be required to advise the Court of the funding level he believes is necessary to complete the voter registration system.

Thereafter, in the event that the funds transferred for the use of the Special Master are insufficient for the assigned task, the Special Master should so advise the Court and additional funds may need to be transferred from the Help America Vote Fund. Such a transfer could require a Court order to re-designate funds that were earmarked for other purposes under HAVA.

Any funds that are transferred to the HAVA-VRF and not expended by the Special Master in the development and implementation of the voter registration system should revert back to the Help America Vote Fund once the new voter registration system is completed. At that time, the HAVA-VRF should be closed. These functions could be ordered by the Court in the future, or the Court's forthcoming order could provide that these functions occur automatically upon the completion of the voter registration system.

## Access to Records by the Special Master (Rule 53(b)(2)(A) & Rule 53(c))

The Order directs the Secretary "to compile, organize, and identify all HAVA records relating to development of the statewide voter list" (Doc. 38 at 6). The Special Master should have full access to all these records

Depending on the nature and volume of the records, and in the sole discretion of the Special Master, these records may be accessible to the Special Master in the Secretary's Office or they may be transferred to the Special Master's office.

These records will include the proposals submitted by vendors in response to the original RFP, which contain confidential, proprietary information. Other records to which the Special Master has access may likewise contain confidential or highly sensitive information. The Special Master should protect the integrity of the information, just as the Secretary has.

**Communications Between the Special Master and Parties, and Between the Special Master and the Court, Including the Extent to Which Ex Parte Communications with the Special Master Will Be Allowed (Rule 53(b)(2)(B))**

The Defendants have no objection to the Special Master having *ex parte* communications with either the Court or the parties.

**Other Rule 53 Factors**

Several provisions of Rule 53 are not applicable to the case at bar.[6]

Those provisions of Rule 53 that the Defendants consider to be applicable to

---

[6]    Subsections (c) (except the first sentence), (d), (e), (f), and (g) all deal with the Special Master as regulating administrative or judicial proceedings, and are therefore inapplicable here where the Special Master is implementing the Court's remedy.

this case, and which have not already been discussed above, are set out below with comments.

### Fed. R. Civ. P. 53(b)(1)

Rule 53(b)(1) provides that "[a] party may suggest candidates for appointment." The Defendants have already expressed their conviction that the Special Master must be a State official, saying as follows:

> Because the running of elections is an essential state function which cannot, and should not, be delegated to a private entity, the appointment must be made to a State official. The lengthy proceedings arising out of *Wyatt v. Stickney*, 334 F. Supp. 1341 (M.D. Ala. 1971), are instructive. In the early 1980s, Judge Myron Thompson attempted to appoint a non-state official as receiver of the Department of Mental Health and Mental Retardation (then known by a slightly different name) and the State Defendants obtained a stay of the appointment from the United States Court of Appeals for the Eleventh Circuit. The District Court then appointed an appropriate high State official as receiver. *See Wyatt v. Wallis*, 1986 WL 69194 (M.D. Ala. Sept. 22, 1986) at 2) ("On February 1, 1983, the court appointed a non-state official as receiver. The defendants appealed to, and obtained a stay of the appointment from, the Eleventh Circuit. In response to the stay, the court appointed Ken Wallis, the new governor's legal advisor, as receiver.").

(Doc. 36 at 28-29).

---

Rule 53(b)(2)(E) and Rule 53(h) involve compensating the Special Master. Those provisions are not applicable in this case because the Governor is already compensated under State law. (The Governor's request for up to $250,000, noted above, is for expenses, not additional compensation.)

Rule 53(i) concerns the appointment of Magistrate Judges as Special Masters, and is therefore inapplicable.

The Defendants now suggest that the appointment of a Special Master must first be tendered to the State's highest executive official, which in Alabama is the Governor.  Ala. Const. Art V, § 113 ("The supreme executive power of this state shall be vested in a chief magistrate, who shall be styled "The Governor of the State of Alabama.").  As the Governor's Office has advised that the Governor would accept such a tender, it is not necessary to consider alternative suggestions for the appointment at the present time.

There are a number of reasons why the appointment of the Governor as Special Master is most logical and appropriate.  The Governor is the chief administrative officer of the State.  He has a number of subordinate State officials who will be integral to the implementation of the new voter registration system.  He also has relationships with many local election officials and others who will be involved in the implementation process.

To a great extent, the Governor expects to handle the staffing internally, therefore making the endeavor more economical for the State. *See* Fed. R. Civ. P. 53(a)(3) ("In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.").

In the event that legislative action is required, the Governor is in the best position to pursue such action, whether it be a change in existing Alabama election law or funding for HAVA-related activities that may not be paid for with federal funds.

For all these reasons, and others, the appointment of the Special Master should first be tendered to the Governor of the State of Alabama, the Honorable Bob Riley.

**Fed. R. Civ. P. 53(b)(2)(C)**

Rule 53(b)(2)(C) concerns "the nature of the materials to be preserved and filed as the record of the master's activities." The Defendants expect that the Special Master will produce and collect numerous records and materials, including, among other things, the new or amended RFP, new or amended proposals from vendors, a contract with the selected vendor, an ITB for the server, various other procurement documents, and training materials for the new voter registration system. Once the new voter registration system has been completed, these documents should all be transferred to the Office of the Secretary of State.

**Fed. R. Civ. P. 53(b)(2)(D)**

Rule 53(b)(2)(D) requires that "[t]he order appointing a master must . . . state (D) the time limits, method of filing the record, other

procedures, and standards for reviewing the master's orders, findings, and recommendations . . . ."  Applied here, Defendants suggest that the Court's order provide for progress reports.  The appointment of a Special Master, even when he is a State official, has implications that impact upon State sovereignty and the State's statutory framework.  It also raises various State and Federal constitutional concerns.  Therefore, to minimize these and to address any public concerns about the conduct of State business outside of the ordinary statutory framework, the Defendants suggest that the Special Master file monthly progress reports with the Court and make these reports accessible to the general public, *e.g.,* on the Governor's official website.

*Fed. R. Civ. P. 53(b)(3)*

The Defendants consent to the appointment of the Governor of Alabama as Special Master irrespective of whether any grounds for disqualification exist under 28 U.S.C. § 455.

## SUBMISSION OF PROPOSED ORDER

As directed by the Court's Order (Doc. 38 at 5), the Defendants submit herewith as Exhibit A, a proposed order for this Honorable Court's consideration.

## **CONCLUSION**

Wherefore, for the foregoing reasons, the Defendants respectfully request that the Governor of the State of Alabama, the Honorable Bob Riley, be appointed Special Master, and that this Court enter an order consistent with the attached proposed order.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL
BY:

s/Winfield J. Sinclair

Winfield J. Sinclair
Assistant Attorney General
Attorney No. ASB-1750-S81W

s/ Misty S. Fairbanks

Misty S. Fairbanks
Assistant Attorney General
Attorney No. ASB-1813-T71F

Attorneys for Defendants

CERTIFICATE OF SERVICE

This is to certify that on the 25th day of July, 2006, a copy of the

foregoing has been electronically filed with the Clerk of the Court using the

CM/ECF system, which will electronically send a copy of the same to the

following:

Michael W. Robinson, Esq.
Alabama Dept. of Public Safety
Legal Unit
P.O. Box 1511
Montgomery, Alabama 36102-1511

Christy A. McCormick, Esq.
United States Department of Justice
1800 G Street, Room 7246
Washington, D.C. 20006

Robert D. Popper, Esq.
United States Department of Justice
1800 G Street, Room 7270
Washington, D.C. 20006

Donald Palmer, Esq.
Civil Rights Division
Voting Section
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Room No. 7149
Washington, D.C. 20006

R. Randolph Neeley, Esq.
United States Attorney's Office
P.O. Box 197
Montgomery, Alabama 36101-0197

Algert Swanson Agricola, Jr., Esq.
Slaten & O'Connor, P.C.
P.O. Box 1110
Montgomery, Alabama 36101-1110

Dorman Walker, Esq.
Balch & Bingham
P.O. Box 78
2 Dexter Avenue
Montgomery, Alabama 36101-0078

Frank Corley Ellis, Jr., Esq.
Wallace, Ellis, Fowler & Head
P.O. Box 587
Columbiana, Alabama 35051

And by first class mail, postage prepaid, to the following:

Wan J. Kim, Esq.
Voting Section
United States Department of Justice
Civil Rights Division
Room 7254-NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

John K. Tanner, Esq.
United States Department of Justice
Chief, Voting Section
Civil Rights Division
Room 7254-NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

s/Winfield J. Sinclair

Winfield J. Sinclair
Assistant Attorney General


Address of Counsel:

Office of the Attorney General
11 South Union
Montgomery, Alabama 36130
TEL: 334-242-7300
FAX: 334-353-8440
E-mail: wsinclair@ago.state.al.us