IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:06-cv-392-WKW |
| | ) |
| The STATE OF ALABAMA and | ) |
| NANCY L. WORLEY, Secretary of State, | ) |
| in her official capacity, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

By Order (Doc. # 58) dated August 2, 2006, the Court denied the Motion to Intervene of Joe Turnham in his Individual Capacity and as Chair of the State Democratic Executive Committee of Alabama (Doc. # 42) and the Motion to Intervene of Joe L. Reed in his Individual Capacity and as Chair of the Alabama Democratic Conference (Doc. # 56). The motions were denied for the reasons set forth below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On May 1, 2006, Plaintiff United States of America commenced an action in this Court alleging that Defendants State of Alabama and Nancy L. Worley, in her official capacity as Secretary of State, had failed to comply with their responsibilities under Section 303 of the Help America Vote Act of 2002 ("HAVA"), 42 U.S.C. § 15483, to implement a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office. A hearing was held on May 30, 2006, at which the defendants admitted liability. By Order dated June 7, 2006, this Court entered a declaratory judgment and preliminary injunction against Defendants requiring them to submit a HAVA compliance plan by June 29, 2006, in anticipation of a hearing on the plan

to be held on July 20, 2006. Secretary of State Worley was also required to provide a copy of the Order to each Alabama registrar and to probate judges and county governing bodies that the Secretary of State deemed necessary.

Upon consideration of the evidence adduced at the July 20, 2006 hearing, the Court ordered (Doc. # 38) that HAVA compliance be achieved by Defendant State of Alabama on or before August 31, 2007, a deadline which the Court found to be reasonable and necessary to bring Alabama into HAVA compliance before the 2008 federal primary elections. Secretary of State Worley, the chief elections official of Alabama, could not assure compliance by the 2008 federal primary elections. In light of Secretary of State Worley's position, when considered in conjunction with her failure to discharge the duties imposed upon her by the voters of Alabama, the State Legislature, and HAVA, the Court's remedial arsenal was limited to one viable alternative. The Court accordingly gave notice of its intent to appoint a Special Master to be responsible for bringing Defendant State of Alabama into complete compliance with Section 303 of HAVA. An opportunity for responses, objections, and comments was given to the parties and amici curiae. By responses filed July 25, 2006, the parties indicated their suggestion of and agreement to the appointment of the Governor of Alabama as Special Master. Amici concurred (Docs. # 46 and # 49).[1]

Two days later, on July 27, 2006, Joe Turnham ("Turnham" or "proposed intervenor"), in his individual capacity and as chair of the Alabama Democratic Executive Committee, filed a motion to intervene as a defendant for the limited purpose of "suggest[ing] alternative Special Masters who could be appointed and who could be both more qualified and experienced than the Governor to

---

[1] The Court allowed the Alabama Probate Judges Association ("APJA") (Doc. # 30) and Shelby County Probate Judge Patricia Fuhrmeister (Doc. # 33) to be heard as amici curiae.

undertake the task at hand and whose appointment would undermine any possibility or appearance that this effort will result in a system controlled by the Republican Party for purposes of furthering partisan political ends." (Doc. # 42 at 4.) On August 1, 2006, one day before the scheduled hearing on the appointment of the special master, Joe L. Reed ("Reed" or "proposed intervenor"), in his individual capacity and as Chair of the Alabama Democratic Conference, filed a motion to intervene for the same purpose.[2]

On August 2, 2006, the date scheduled for the hearing on the appointment of a special master, the Court denied the intervention motions because the proposed intervenors had not established the requisite criteria for their intervention of right or for permissive intervention.[3] This memorandum opinion contains the Court's analysis of the intervention criteria requiring the denial of the motions to intervene.

## II. STANDARD

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. The Rule provides for intervention of right, where intervention is mandatory if a proposed intervenor meets certain criteria:

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or

---

[2] The proposed intervenors filed motions and proposed answers as contemplated by Rule 24(c) of the Federal Rules of Civil Procedure. The motions contained argument but provided no sworn testimony or other evidence.

[3] Notwithstanding the denial of intervention, the Court permitted counsel for the proposed intervenors to address the appointment of a special master on behalf of his clients, as interested persons. The proposed intervenors did not suggest an alternative to the Governor for the appointment.

> impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Thus, a proposed intervenor must show: (1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests. *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989).

Rule 24 also provides for permissive intervention:

> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). "Permissive intervention under Fed. R. Civ. P. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co. v. Sandy Lake Prop., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (quoting *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002)). A district court is vested with broad discretion to decide a motion for permissive intervention. *United States v. Dallas County Comm'n.,* 850 F.2d 1433, 1443 (11th Cir. 1988); *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983).

### III. DISCUSSION

**A.**  *Intervention of Right*

Proposed intervenors Turnham and Reed assert that they are entitled to intervention of right. All parties and amici opposed the intervention because the proposed intervenors do not meet Rule 24(a)'s requirements.[4] The proposed intervenors' arguments are not well taken.

**1.  Interest**

The proposed intervenors are required to show that they have an interest related to the property or transaction that is the subject of the lawsuit. *Chiles*, 865 F.2d at 1213. They must have a direct, substantial, and legally protectable interest that "the *substantive* law recognizes as belonging to or being owned by the applicant." *Mt. Hawley Ins. Co.*, 425 F.3d at 1311 (citing *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991)). "[A] legally protectable interest is an interest that derives from a legal right." *Id.* Moreover, the alleged interest cannot be speculative. *See Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are purely a matter of speculation are not the kind of protectable interest necessary to support intervention as of right." (citations and internal quotation marks omitted)).

The proposed intervenors describe their alleged interests in several ways. They claim "an interest relating to fair and adequate voter registration procedures and in ensuring that voters have confidence in Alabama's electoral systems, including the development of a single statewide

---

[4] The parties and amici did not have the opportunity to respond to the motion to intervene by Reed as the motion was filed at the end of business on August 1, 2006, the day before the hearing in this matter. However, because the motions to intervene are largely the same, the arguments advanced by the parties and amici against the Turnham motion will be construed as applying to the Reed motion.

computerized voter registration database," (Docs. # 42 and # 56 ¶ 1); "an interest in ensuring that partisan politics do not taint the development of the single statewide computerized voter registration system or otherwise create distrust in Alabama's electoral systems," (*Id*. ¶ 2); an interest that the voter registration database "not be undermined by the suspicion or reality that the development of the system is being hijacked and used to further partisan political agendas," (*Id*. ¶ 6); "an interest in seeing that Democratic voters do not lose further confidence in the registration system and in the electoral system in Alabama," (Doc. # 42 ¶ 6); and "an interest in seeing that African-American voters do not lose further confidence in the registration system and in the electoral system in Alabama." (Doc. # 56 ¶ 7.) As they summarize it, the proposed intervenors' claimed interest is "in ensuring that voter registration is fairly administered, accessible to all persons, and not controlled or, even perceived to be controlled by, partisan interests." (Doc. # 56 ¶ 1.) As the parties and amici summarize it, the proposed intervenors are voters and partisan political operatives who wish to suggest, not surprisingly in an election year, and in a legal rather than a political venue, that they "may or may not" be cheated by the Special Master, whose political affiliation is different than their own. (Docs. # 47, 53, 54, and 55.)

Without citation, the proposed intervenors further allege that the purpose of HAVA is to give the voters more confidence in the electoral process.[5] (Docs. # 42 and # 56 ¶ 6.) To the extent the

---

[5] HAVA's purpose is no mystery:

> An Act To [sic] establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes.

Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666 (2002).

proposed intervenors are claiming a right of action under HAVA,[6] the Court concludes that, irrespective of its purpose, HAVA does not confer a private right of action. Congress granted explicitly to the Attorney General of the United States the right of enforcement of Sections 301, 302, and 303 of HAVA. *See* 42 U.S.C. § 15511.[7] The Supreme Court has "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004). This case is no different. Congress determined that the United States, not private individuals, should enforce HAVA. This Court will not interpret the HAVA legislation to mean anything else. As HAVA does not confer a legally cognizable right upon the proposed intervenors, their alleged interest is not a legally protectable one.

Even if the alleged interest were a legally protectable interest, the proposed intervenors cannot establish entitlement to intervention by relying on the conclusory and bald allegation of a mere "perception" of partisan politics. As a practical matter, this allegation could be made regardless of which individual is appointed to carry out the HAVA implementation. This is because most Alabama voters could be fairly characterized as having expressed at one time or another a

---

[6] Because the proposed intervenors move for intervention as defendants to this action, it is unlikely that they are claiming to be plaintiffs with a private right of action under HAVA. Nonetheless, in the interest of clarity, and because such possibility was raised by the United States, the Court addresses this possibility.

[7] The HAVA enforcement statute provides:

The Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 15481, 15482, and 15483 of this title.

§ 15511.

general party affiliation.[8] Because the alleged interest could be claimed by any voter, the interest is only of a general--not a direct and substantial--concern. Such general interests do not justify intervention in litigation brought by the United States against a state for the enforcement of a federal statute. *See Chiles*, 865 F.2d at 1212 ("[A]n intervenor's interest must be a particularized interest rather than a general grievance.")

Moreover, the alleged perception is entirely remote and speculative. The proposed intervenors admit as much; they claim that it "may or may not be the case" that appointment of a special master who is a Republican creates the perception that the Republican Party seeks to control the voter registration database "to its own ends." (Docs. # 42 and # 56 ¶ 5). The proposed intervenors have not proffered any evidence of wrongdoing by the parties' suggested candidate for special master. They only offer conjecture on some future wrongdoing. Assuming *arguendo* that such wrongdoing is possible,[9] it has not occurred and, as such, is purely a matter of speculation.

The speculative nature of the alleged interest also clearly demonstrates that the alleged interest is not related to the property or transaction that is the subject of the lawsuit. *See Laube*, 215 F.R.D. at 658-59. As voters, the proposed intervenors claim an interest in the fair administration of voter registration. However, the main subject matter of this lawsuit is not the fair *administration* of voter registration, but rather the physical development of a voter registration computer database. The United States has made no other allegation. Furthermore, both the United States and Defendants'

---

[8] If at no other time, then during primary voting, which requires voters to choose which party's ballot they wish to use.

[9] The United States illustrates how the implementation of a HAVA-compliant voter registration database cannot be done in a biased manner: "There is no 'Democratic' or 'Republican' approach to constructing a computerized database – any more than there is a 'partisan' approach to building a bridge." (Doc. # 53 at 5.)

suggested remedies only address the development and implementation of the database. The preliminary injunction does not contemplate the *administration* of voter registration. Not only is it highly speculative that there may be some future perception that voter registration is not fairly administered *after* the implementation of the computer system, but it is also irrelevant. The Special Master's tenure is limited to one task in a fixed time frame. When the development and implementation of the voter registration database is achieved, the maintenance of the database will be returned to the Secretary of State. Accordingly, the Court finds that the proposed intervenors have not asserted an interest in the transaction that is the subject of this lawsuit such that would entitle them to intervention of right.

### 2. Impeded or Impaired Interest

The proposed intervenors are required to show that the disposition of this action, as a practical matter, may impede or impair the ability to protect their alleged interest in this case. *See Chiles*, 865 F.2d at 1213. This requirement is "intimately related" to the alleged interest sought to be protected by the proposed intervenors. *Id.* The proposed intervenors do not allege how the disposition of this action may impede their ability to protect their claimed interest. The Court cannot envision how the political affiliation of the special master could either practically or legally impair the proposed intervenors' alleged interest. Without having established a direct, substantial, and legally protectable interest in this litigation, the proposed intervenors' claim of impairment must fail.

### 3. Inadequate Representation

The proposed intervenors must show that the existing parties to the lawsuit inadequately represent their interests. Adequate representation is presumed where an existing party seeks the

same objectives as the proposed intervenors. *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (citing *Clark v. Putnam County,* 168 F.3d 458, 461 (11th Cir.1999)). To overcome the presumption, the proposed intervenors must come forward with some evidence to the contrary. *Id.*; *Clark*, 168 F.3d at 461. If the proposed intervenors carry their burden, the Court will find adequate representation if (1) no collusion is shown between the representative party and opposing party; (2) the representative party does not have an interest adverse to the proposed intervenor; and (3) the representative does not fail in the fulfillment of its duty. *Id.*; *Clark*, 168 F.3d at 461.

The proposed intervenors claim that "[n]one of the existing parties to this lawsuit can adequately represent" their interests. (Docs. # 42 and # 56 ¶ 2). Although the proposed intervenors' Answers are substantively similar to the Answer of the Defendants and they do "not . . . seek to oppose the Court's decision to appoint a Special Master or to re-litigate those matters," (Doc. # 42 ¶ 7; Doc. # 56 ¶ 9), the Court assumes, only for the sake of argument, that the proposed intervenors' objectives are not the same as the parties' objectives. Thus, the Court assumes without deciding that there is no presumption of adequate representation.

Nevertheless, the Court finds adequate representation. The proposed intervenors have offered no proof evidencing collusion. That the parties both have suggested the appointment of the Governor, who, as chief executive officer of the State of Alabama, has the ability to draw on the state's considerable resources to implement the voter registration database, is simply not indicative of collusion.

The proposed intervenors have offered no proof demonstrating that the interests of the defendants are adverse to their own interests or that the defendants have not fulfilled their duties. They claim that their interests are divergent from those of the existing defendants because the

10

defendants are represented by a Republican Attorney General and the plaintiff is aligned with the Republican Party; thus, they conclude, neither party can adequately represent the interests of Democrats in Alabama.[10] (Doc. #42 ¶ 2.) However, all of the parties, amici, and voters of Alabama have an interest in the enforcement of HAVA. Without the appointment of a special master, such as the Governor, who has the resources to implement HAVA on an expedited timeline, the integrity of federal elections in Alabama will be jeopardized. All other interests, including the proposed intervenors' partisan concerns, are subordinate to the implementation of the database.

Another circumstance encumbering the lack of adequate representation argument of the proposed intervenors is the position taken by the APJA. In Alabama, probate judges are the local chief elections officials. Ala. Code § 17-1-8(b). Each county, except Jefferson County, has one elected probate judge; Jefferson County has two. By the Court's count, 52 of the 68 probate judges in Alabama (or 76.47%) are Democrats. Yet, the APJA supports the appointment of Governor Riley as Special Master and specifically opposes intervention by Turnham and Reed. The conspiracy of partisanship envisioned by the proposed intervenors neglects to account for the eyes and ears of 68 elected probate judges, as well as other presumably watchful local election officials of both political parties (i.e., 67 elected circuit clerks, 199 registrars, and the Democratically-controlled State Legislature, to name but a few).

The proposed intervenors failed to establish inadequate representation.

---

[10] In order to advance this argument, the proposed intervenors must deal with the inconvenient truth that Secretary of State Worley is herself a Democrat who personally would protect that interest, whatever it is. This they do by insinuating, not very credibly, that Secretary of State Worley cannot speak to the matter because she is required by law to be represented by the Alabama Attorney General, who happens to be a Republican. Because Secretary of State Worley has not made this allegation to the Court, and in view of her sophistication and personal participation in these proceedings, the Court rejects this argument.

### 4. <u>Timeliness</u>

The determination of whether a motion to intervene is timely is within the district court's discretion. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 854 (11th Cir. 1997) (citing *Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 (5th Cir. 1977)[11]). "[T]imeliness is not limited to chronological considerations but is to be determined from all the circumstances." *Stallworth*, 558 F.2d at 263-64 (citations and internal quotation marks omitted). The timeliness inquiry involves consideration of four factors: (1) the length of time during which the proposed intervenor knew or reasonably should have known of their interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenors' failure to move for intervention as soon as they knew or reasonably should have known of their interest; (3) the extent of prejudice to the proposed intervenors if their motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely. *Chiles*, 865 F.2d at 1213. A more lenient standard of timeliness should be applied where the proposed intervenor qualifies for intervention of right rather than permissive intervention. *Stallworth*, 558 F.2d at 266.

### a. *Knowledge*

The Court must consider "[t]he length of time during which the would-be intervenor actually know [sic] or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Id.* at 264 (citations omitted). "Actual knowledge is not required." *Id.*

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

The proposed intervenors assert that their interest in the case is "in ensuring that voters have confidence in Alabama's electoral systems, including the development of a single statewide computerized voter registration database." (Docs. # 42 and # 56 ¶ 1). They claim that their interests are divergent from those of the existing defendants because the defendants are represented by a Republican Attorney General, who cannot adequately represent the interests of Democrats in Alabama. (*Id*. at 2.). Proposed intervenor Turnham contends that he "first became aware" of the Court's notice of appointment of a special master "[a]fter publication of a news article on July 25, 2006." (Doc. # 42 ¶ 3). Turnham then filed the present motion two days later on July 27, 2006. Reed asserts that he became aware of the imminent appointment of a special master "[o]nly recently," (Doc. 56 ¶ 3) and filed the motion on the eve of the hearing in this matter.

This case was filed on May 1, 2006. The Court takes judicial notice of the fact that the case has been widely reported in the local media.[12] There can be no doubt that the proposed intervenors, who are the heads of political associations, knew or should have known the political affiliations of the Secretary of State and the Attorney General since the institution of this case. The Court's June 7, 2006 Order was sent to all registrars and probate judges. For nearly three months, the proposed intervenors knew or should have known of the divergent political interests yet did not seek intervention. Turnham and Reed's awareness weighs against a finding that their motions were timely. *See United States v. Jefferson County*, 720 F.2d 1511, 1516-17 (11th Cir. 1983) (finding that the proposed intervenors, who knew they could be adversely affected by others they relied on to advance their interests, could not be heard).

---

[12] Secretary of State Worley's dilatory handling of vendor selection, among other issues, was a matter of public interest even before the case was filed. (*See* Doc. # 3 Exs.)

### b. *Prejudice to Parties and Unusual Circumstances*

The Court must consider "[w]hether allowing intervention will delay the progress of the case or prejudice the rights of the original parties." *Stallworth*, 558 F.2d at 265. "Prejudice" in this context refers to "only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action." *Id.* Moreover, the Court must consider any other "unusual circumstances militating either for or against a determination that the application is timely." *Id.* at 266.

The proposed intervenors claim that intervention will not prejudice the rights of the parties. The parties, on the other hand, agree that because the action is in its late stages -- only the Court's order on the Special Master's identity and duties remain -- any further delay to hear and respond to the proposed intervenors' objections is prejudicial to the parties and to Alabama voters. Indeed, the overriding concern has been one of time and the shortness of it. Secretary of State Worley's refusal to accept any timeline for compliance other than her own, which was made clear to the Court at the July 20 hearing, firmly tipped the scales toward the appointment of a special master.

The Court concurs with the parties. Although absolute measures of timeliness, such as how far the litigation has progressed, should generally be ignored by the Court, *id.* at 266, in this litigation, time is of the proverbial essence. After a two-year extension, Defendant State of Alabama failed to come into HAVA compliance by the January 1, 2006 deadline. It is absolutely imperative that compliance is reached well before the 2008 federal primary elections. Had the proposed intervenors properly sought intervention when they first knew or should have known of their interest in this action, i.e., shortly after May 1, 2006, when the lawsuit was filed, their suggestions as to the appropriate injunctive relief and the selection of a special master could have been submitted to the

Court within the same time frame as the parties and amici. At this point, Alabama has less than thirteen months to develop and implement the voter registration database, which is no small task and which will require efficient use of all days. Additional time cannot be taken to postpone the appointment of the special master in order to allow the proposed intervenors to make their case, to present evidence and fully brief the issue, and to permit the parties, who are already in full agreement on the most appropriate special master, the opportunity to respond to the proposed intervenors' suggestion. Such prejudice, not only to the parties but also to Alabama voters, weighs against a finding of timeliness.

### c.  *Prejudice to Proposed Intervenors*

The Court must also consider "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied." *Stallworth*, 558 F.2d at 265-66. In general, the proposed intervenors claim to be harmed if not permitted to intervene, but they do not specify any particular prejudice. The parties disagree with the proposed intervenors' argument and reiterate that because the interests of the proposed intervenors are not any different than those of all Alabamians and those interests are adequately represented by the United States, there could be no prejudice to the proposed intervenors.

The Court concludes that there is no prejudice to the proposed intervenors. Prejudice with respect to timeliness is irrelevant in light of the Court's determination that the proposed intervenors do not have a legally protectable interest and any interest they do have is adequately represented by the parties. Moreover, Turnham and Reed, who are interested persons, were permitted to make a statement through counsel at the hearing on the appointment of a special master. Counsel aired their concerns, yet he did not suggest an alternate candidate or nomination process for the special master

position. As pointed out by the parties, intervention may be sought at a later date should the actions of the appointed Special Master harm the proposed intervenors.

### d. *Timeliness Conclusion*

The *Stallworth* timeliness factors weigh against a finding of timeliness. The proposed intervenors knew or should have known of their interest in this case upon the institution of the action. In light of the length of time necessary to remedy the State of Alabama's HAVA violation, the proposed intervenors' nearly three-month delay in seeking intervention unduly prejudices the parties and Alabama voters while the denial of intervention does not prejudice the alleged interests of the proposed intervenors. Accordingly, the Court finds that the motions for intervention are not timely.

After careful consideration of the four criteria that must be met under Rule 24(a) to allow a party to intervene as a matter of right, the Court concludes that the proposed intervenors have not established any of the requisite criteria.

### B.   *Permissive Intervention*

Permissive intervention may be allowed when a proposed intervenor's "claim or defense and the main action have a question of law or fact in common" and the motion to intervene is timely.[13] Fed. R. Civ. P. 24(b). The Court has the discretion to deny permissive intervention even if both of those requirements are met. *Chiles*, 865 F.2d at 1213.

The proposed intervenors seek to become defendant-intervenors and allege that their "defenses have questions of law and fact in common with those of the named defendants." (Doc.

---

[13] Permissive intervention is also allowed where a federal statute grants a conditional right to intervene. Here, the proposed intervenors do not claim a statutory right.

# 42 ¶ 7). A review of the pleadings accompanying the motions to intervene, which are required by Rule 24(c), reveals that the proposed intervenors' Answers are substantively similar to the Answer of the Defendants and affirms the assertion that they do "not . . . seek to oppose the Court's decision to appoint a Special Master or to re-litigate those matters." (*Id*.).

However, they do not present a common question of law or fact. This lawsuit is about whether Alabama has violated Section 303 of HAVA and, if so, how to remedy the violation; the proposed intervenors challenge neither the violation nor the remedy. Instead, they seek to prevent the possible perception or suspicion that partisan politics may have an effect on the creation of a voter registration database. This suggestion, which is vague, speculative, and wholly unsupported by any evidence, is not at issue in this case, much less the "main" issue required by the rule.

Having determined that the motions to intervene are not timely[14] and having concluded that the proposed intervenors' interests do not present a question of law or fact in common with the defendants, the Court exercises its discretion to deny the motions for permissive intervention.

## IV. CONCLUSION

For the reasons set forth above, the motions to intervene were denied.

DONE this the 8th day of August, 2006.

                                          /s/ W. Keith Watkins
                                          UNITED STATES DISTRICT JUDGE

---

[14] See, *supra*, Section A.4., for the Court's timeliness analysis with respect to intervention of right that is equally applicable to permissive intervention.