IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:06-cv-392-WKW |
| ) | |
| The STATE OF ALABAMA and ) | |
| NANCY L. WORLEY, Secretary of State, ) | |
| in her official capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On October 29, 2002, HAVA[1] was signed into law. As of this date, the State of Alabama is in violation of Section 303 with respect to the statewide computerized voting registration list required by HAVA. The statutory deadline for compliance was January 1, 2004. Alabama sought and received a two-year extension. Alabama likewise failed to meet the subsequent January 1, 2006 deadline, which passed with no credible effort in place to remedy the violation.[2] The responsibility for this lies squarely on Defendant Secretary of State, Nancy L. Worley, Alabama's chief elections official.[3] Having in a prior order enjoined Defendants Worley and the State of Alabama from further violations, the Court has found it necessary, upon Defendant Worley's confessed failure to discharge the duties of her elected office, and her refusal to accept any timeline for HAVA compliance other

---

[1] The Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666 (2002). Section 303 of HAVA requires states to implement a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office.

[2] The November 2, 2006 general election will likewise find Alabama non-compliant.

[3] Ala. Code § 17-1-8(a).

than her own,[4] to appoint a Special Master to complete the task in a timely and orderly manner. The purpose of this Memorandum Opinion and Order is to establish the factual and legal basis for the appointment of a Special Master, to delineate the role and responsibilities incumbent upon the office, and to name the Special Master.

## I. BACKGROUND

Although Defendant Worley admitted from the beginning of this litigation that the Defendants were non-compliant, a brief review of the undisputed facts, and a description of the technology-intensive project at hand, will be helpful in the analysis of the need for a Special Master. Alabama has a diffuse electoral system, loosely managed at the state level by the Secretary of State, and at the county level by elected probate judges, who are the chief elections officials of the counties;[5] and by elected circuit clerks[6] and appointed registrars.[7] The responsibility for developing and maintaining voter registration lists has traditionally been a local function, resulting in over thirty voter registration systems in operation in the state. (*See* Doc. # 35-11 Defs.' Evid. Subm.) In 1991, ALVIN, a statewide computerized system, was designed in-house in an attempt to standardize these multifarious systems.[8] Currently being used by thirty-eight counties as a primary voter registration

---

[4] At the July 20 hearing, Ms. Worley, through her attorney, indicated that her proposed timeline of 552-618 days could be reduced by sixty to ninety days, contingent on the actions of others over whom the Secretary of State has no control. She offered, in good faith but against the advice of counsel, to accept the somewhat shortened time frame. As more fully explained herein, the Court found it inadvisable to accept Ms. Worley's offer. (*See* Doc. # 38.)

[5] Ala. Code § 17-1-8(a).

[6] *See* Ala. Code § 17-6-1 (appointing board); § 17-4-131 (notification of disqualification), § 17-10-2 (absentee election manager); and § 17-14-1 (canvassing).

[7] *See generally* § 17-4-120, *et seq.* (voter registration).

[8] ALVIN is an acronym for Alabama Voter Information Network. (*See* Doc. # 31-2 Palmer Decl.)

base, (*see* Doc. # 31-2 Palmer Decl.), ALVIN is hopelessly outdated and completely useless to larger counties.[9]

An important component of HAVA was allocation to the states of funds to implement HAVA. Alabama's portion was $41,350,962, which was received by the Secretary of State's Office in late 2003 or 2004.[10] According to Defendant Secretary of State, $12,000,000 of that budget was allocated to completion of the voter registration system.[11] The task of developing the statewide voter registration system is almost entirely technical. The voter registration system is statutorily required to be single, uniform, official, centralized, interactive, and computerized.[12] The technology must actively interface with the databases of the Alabama Department of Public Health (vital statistics); Alabama Administration Office of Courts (records of felony convictions); and the Alabama Department of Public Safety (drivers license records and a collateral interface with the Social Security Administration). (*See generally* Doc. # 3-2 McCormick Decl.) The system must accommodate daily updates from sixty-seven counties, as well as the regular monitoring of the interfaces, for the system to be accurate and dependable. (*Id.*; *see also* Doc. # 32-2 Fuhrmeister Aff.) Perhaps the most daunting technological issue is the transfer of existing data from ALVIN and all

---

[9] For instance, Jefferson County, with the largest number of registered voters, has its own system to accommodate what will be 156 different ballots in the upcoming 2006 general election. Mobile County, the second or third largest county by number of voters registered, will have thirty-five ballot styles in the general election. *See* Doc. #34-4 Alabama Probate Judges Association's ("APJA") Resp.) ALVIN is not a voter registration option for these and other counties. Any HAVA-compliant system will be required to accommodate the needs of all counties, including the accurate uploading of existing voter registration data from local databases. (*See* Doc. # 32-2 Fuhrmeister Aff.)

[10] The record does not reflect the exact date or dates of receipt, but funds were expended in late 2003. *See* Doc. # 52 Def.'s Accounting.)

[11] The balance is to be used for other voting system upgrades, including voter equipment. According to the representations of the parties, Alabama is HAVA compliant in this respect.

[12] 42 U.S.C. § 15483.

3

other local systems into the new system. (*See id.*; Doc. # 32-2 Fuhrmeister Aff.) The vendor ultimately engaged will be responsible for design and implementation of the technology and distribution of the computer hardware to be disbursed in the counties. An indication of the technical complexity of the project is the size of the request for proposals issued by the Secretary of State, which runs to twenty-six single-spaced pages. (*See* Doc. # 3-4 McCormick Decl., Ex. B.)

The State of Alabama has a purchasing process which requires services to be engaged separately from the purchase of equipment.[13] The statutory process necessarily contributes to time constraints, which will, if the statutory scheme is followed, extend the timeline for completion. *See, e.g.*, Ala. Code § 29-2-41 (mandating the time of review, not to exceed 45 days, by the Contract Review Permanent Legislative Oversight Committee, of all contracts for goods and services subject to competitive bidding).

## II. PROCEDURAL HISTORY

On May 1, 2006, Plaintiff United States of America commenced this action in this Court alleging that Defendants State of Alabama and Nancy L. Worley, in her official capacity as Secretary of State, had failed to comply with their responsibilities under Section 303 of HAVA to implement a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office. A hearing was held on May 29, 2006, at which the defendants admitted non-compliance and substantial evidence was admitted supporting the position of the United States.

By Order dated June 7, 2006, this Court declared that Defendants were not in compliance with HAVA with regard to implementing a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office, and entered a declaratory

---

[13] (HAVA Plan Hr'g Tr. 23-26, July 20, 2006.)

judgment and preliminary injunction against Defendants. The Court ordered the defendants to develop and submit a HAVA compliance plan.

A hearing on the proposed plan and objections was held on July 20, 2006. The timeline contained in defendants' proposed plan to achieve HAVA compliance before the 2008 primary election contemplated a start date of August 1, 2006, but not a deadline. The Plaintiff objected to the defendants' timeline and requested the appointment of a Special Master to administer the HAVA compliance plan. Defendant Worley took the position that HAVA compliance could not be achieved any sooner than her proposed 552-618 days. *See supra* note 4. She further advised the Court through counsel that she would prefer the appointment of a Special Master rather than accept a significantly shortened timeline for compliance.

By Order dated July 21, 2006, the Court ordered that HAVA compliance must be achieved on or before August 31, 2007. This deadline was necessary to bring Alabama into HAVA compliance before the 2008 primary election. In light of the Secretary of State's position that she could not attain HAVA compliance within the necessary time period, the Court's remedial arsenal was limited to one viable alternative. The Court accordingly gave notice of its intent to appoint a Special Master to be responsible for bringing Defendant State of Alabama into complete compliance with Section 303 of HAVA.[14] The parties were further ordered to respond to the notice and to file proposed orders. An opportunity for objections and comments to the responses was given to the

---

[14] Without question, the Court has the inherent power to appoint a master to assist in administering remedial injunctive relief. "Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has the 'inherent power to supply itself with this instrument for the administration of justice when deemed by it essential.'" *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956) (quoting *Ex parte Peterson*, 253 U.S. 300, 312-13 (1920)); *see also Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982); *United States v. Connecticut*, 931 F. Supp. 974 (D. Conn. 1996). Rule 53 of the Federal Rules of Civil Procedure explicitly contemplates reliance on masters "when a complex decree requires complex policing, particularly when a party has proved resistant or intransigent." Fed. R. Civ. P. 53 advisory committee's notes, 2003 amends.

parties and amici curiae. Two movants filed motions to intervene in order to make comments on the appointment of the Special Master.[15]

A hearing on the proposed orders, objections, and comments relating to the appointment of a Special Master was held on August 2, 2006. The Court heard from Kenneth D. Wallis, Chief Legal Advisor to the Office of the Governor for the State of Alabama, who conveyed the Governor's willingness to accept the appointment as Special Master. The Court permitted Edward Still, counsel for movants Joe Turnham and Joe Reed, to make a statement on the record, to which the parties responded, regarding the appointment. Nancy Worley, in her personal capacity, also made a statement. However, neither Mr. Still nor Ms. Worley suggested a candidate for the position of Special Master, although Ms. Worley assured the Court she could work with whomever was appointed Special Master, including the Governor. (*See* Special Master Hr'g Tr. 30-33, Aug. 2, 2006.)

### III. DISCUSSION

From the inception of this case until the July 20 hearing, the Court was of the opinion that Defendant Worley, who was elected to a constitutional office and charged, among other duties, to administer the election laws of the State, should be compelled to fulfill her duty. Though her failure as it related to HAVA was admitted and without credible excuse, on balance the Court felt Defendant Worley should be given a structured opportunity to complete her public charge. The only impediment identified at the July 20 hearing was her proposed timeline for completion, which left

---

[15] Joe Turnham, in his individual capacity and as Chair of the State Democratic Executive Committee of Alabama, and Joe L. Reed, in his individual capacity and as Chair of the Alabama Democratic Conference, filed motions to intervene. The parties and amici unanimously opposed the intervention. By Order (Doc. # 58) dated August 2, 2006, the Court denied the motions to intervene but made provisions for the movants as interested persons to be heard through counsel at the hearing on the appointment of the Special Master. See Memorandum Opinion, Doc. # 63, for the rationale for denial of intervention.

compliance by the 2008 presidential primary largely in doubt.[16] Given the opportunity to adopt a considerably shortened timeline, defendant Worley confirmed the representations of her counsel that she could commit to no more than a sixty or ninety day reduction of her timeline "and that depends on a number of factors and circumstances beyond her control." (HAVA Plan Hr'g Tr. 56. ) Moreover, this "commitment" was against the advice of her counsel. (*Id.*) It was at this point that the need for a special master reached critical mass.

Confronted with this stance, the Court considered the undisputed historical timeline of Defendant Worley's HAVA activities.

On June 13, 2003, Alabama passed the HAVA enabling legislation.[17] Under the provisions of § 17-25-2, the HAVA Committee was formed to advise Defendant Worley on the development of the state plan and to make recommendations on all aspects of the plan. In the meantime, Defendant Worley issued a request for proposals ("RFP") for a new voter registration system on August 12, 2003. (Doc. # 3-2 McCormick Decl. ¶ 7.) On September 10, 2004, a full thirteen months later, Defendant Worley and the HAVA Committee heard vendor proposals. (Doc. # 34-2 APJA Resp.) Deliberating in an admirably non-partisan fashion, the HAVA Committee unanimously recommended a vendor to Defendant Worley on December 14, 2004.[18] Under the statutory scheme, the ultimate decision rested with the Secretary of State. On May 27, 2005, after five and one-half months, Defendant Worley chose another vendor, ignoring the unanimous recommendation of the

---

[16] At present, the scheduled date for the 2008 presidential primary is February 5, 2008.

[17] Ala. Code § 17-25-1 *et seq*.

[18] (*See* Doc. # 34-2 APJA Resp. Exs.) The APJA also unanimously recommended the HAVA Committee's choice. *See id.*

7

HAVA Committee and the APJA. (*See* Doc. # 3-2 McCormick Decl. ¶ 9.) Three months later, in August 2005, Defendant Worley terminated negotiations with her choice of vendor and issued a revised RFP requesting further bids. (*Id.* ¶¶ 31-32.) As of the filing of this action in May 2006, for aught that appears in the record, no HAVA-compliant system was being developed.

It was against this factual backdrop that the decision to appoint a Special Master was made.[19] In view of her history, the Court simply lacks confidence that Defendant Worley can or will achieve HAVA compliance before the 2008 federal primary election. The Court has repeatedly expressed reluctance to intervene in the affairs of the Secretary of State. (*See, e.g.*, Doc. # 33; Special Master Hr'g Tr. 30.) The Court must now acknowledge, reluctantly still, that it has no other viable alternative than the appointment of a special master to achieve full and timely HAVA compliance.

## IV. ORDER APPOINTING SPECIAL MASTER

Because the running of elections is an essential administrative state function which cannot, and should not, be delegated to a private entity, the Court agrees that the appointment must be made to a State official. The Governor, as the chief executive officer of the State, is the most appropriate official, and has indicated, through his legal advisor, a willingness to accept the appointment. With the parties and amici in agreement on the appointment, and in light of the fact that no other interested person suggested another candidate for the appointment, the Court will appoint the Governor of the State of Alabama, the Honorable Bob Riley, as the Special Master responsible for the implementation of a HAVA-compliant voter registration system in the State of Alabama.

---

[19] An after-the-fact consideration favoring the appointment is the agreement of the parties and amici on the appointment of Governor Bob Riley to the position.

As stated in open court, Governor Riley is the official who can marshal the most governmental resources in the shortest time to apply to the task. He has substantial influence over subordinate state officials whose cooperation is essential.[20] Further, the governor has substantial staffing capabilities to apply to the project. An objection raised by proposed intervenors is the Governor's lack of expertise in voting matters. It is not seriously contended that the Governor will personally manage the project. Expertise can be acquired, which is the Court's expectation with respect to the project. Moreover, the Governor is in the best position to propose and push legislation, should that become necessary. Finally, Governor Riley has expressed his desire to consult with the HAVA Committee and other election stakeholders in the process.

This appointment is made pursuant to the inherent authority of the Court and Rule 53 of the Federal Rules of Civil Procedure. *See, supra*, footnote 14. As Rule 53 requires, the Court states the appointment, duties, and responsibilities of the Special Master.

1. **Appointment of Special Master**

In furtherance of the injunctive orders heretofore entered in this action (Doc. # 16), the Court hereby appoints Bob Riley, in his official capacity as Governor of the State of Alabama, as Special Master to develop and implement a single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office which complies with Section 303 of the Help America Vote Act of 2002, 42 U.S.C. § 15483. It is ORDERED that the Special Master must "proceed with all reasonable diligence," Rule 53(b)(2), and achieve HAVA compliance on or before August 31, 2007. The Governor shall serve as Special Master without compensation.

---

[20] A partial list would include the Department of Public Safety, the Alabama Department of Public Health, to a lesser extent the Alabama Office of Courts, and Registrars, who have been found to be state agents. (*See* Doc. # 16.)

### 2. Limited Role as Chief Election Official

The Special Master shall be the Chief Election Official of the State of Alabama, as defined in Section 10 of the National Voter Registration Act of 1993, 42 U.S.C. § 1973gg-8 and in Section 253(e) of HAVA, 42 U.S.C. § 15403(e), for the purposes of implementing Section 303 of the Help America Vote Act of 2002, 42 U.S.C. § 15483. The Alabama Office of the Secretary of State is expressly divested of such authority, but the Secretary of State shall otherwise remain the chief election official for the State of Alabama.

### 3. Duty and Authority

The Special Master shall have the duty and authority to take all actions necessary and proper to ensure the development and implementation of the single, uniform, official, centralized, interactive computerized statewide voter registration list for elections for federal office described in Paragraph 1 of this Order. If necessary, at an appropriate time, the Court will revisit whether any additional enforcement mechanism, *e.g.,* rulemaking, is required. Prior to that time, the Secretary of State shall not promulgate any rule impacting the new voter registration system without the express consent of the Special Master.

### 4. Office of the Special Master

The Office of the Special Master, independent of the Alabama Office of the Secretary of State, is hereby established and shall be comprised of the Special Master and such staff as he may acquire pursuant to Paragraph 5 of this Order.

### 5. Staff of the Office of the Special Master

The Special Master shall have the authority to acquire such staff as he deems necessary and to delineate the terms, conditions, duties, and compensation of their employment.

### 6. Access to Records

By previous Order, the Secretary has been directed "to compile, organize, and identify all HAVA records relating to development of the statewide voter list." (Doc. # 38 at 6.) The Special Master or his designees shall have full access to these records, and to other HAVA-related records in the possession of Alabama counties and other political subdivisions, except those records in the possession of the Alabama Office of the Attorney General which are subject to a claim of either attorney work product or attorney-client privilege. Should the Special Master require access to any material that the Alabama Office of the Attorney General claims is subject to such privilege, he shall have the power to request that the Court examine such material *in camera* to determine whether the requested material is exempt from disclosure to the Special Master.

Depending on the nature and volume of the records, and in the sole discretion of the Special Master, these records may be accessible to the Special Master in the Secretary of State's Office or they may be transferred to the Special Master's office. The Special Master will protect those portions of the record which are confidential or which contain vendor trade secrets. Once the Special Master has been discharged by the Court, the records he received from the Secretary of State and those that he accumulated in his work shall be transferred to the Secretary of State.

### 7. HAVA Funds

All funds appropriated by the United States Congress under the Help America Vote Act of 2002 and that are dedicated to the development and implementation of the voter registration list delineated in Paragraph 1 of this Order, together with all interest income earned thereon, shall be at the disposal of the Special Master for the implementation of this Order. The Special Master shall be responsible for compliance with the requirements of Section 902 of the Help America Vote Act of

2002, 42 U.S.C. § 15542, and may requisition such staff as necessary from agencies of the State of Alabama to aid him in compliance with such requirements. The State of Alabama shall be responsible for paying all staff fees and expenses. No funds appropriated by the United States Congress in accordance with the Help America Vote Act of 2002 may be utilized in any way toward the compensation of the Special Master's staff without the express approval of this Court.

Notwithstanding the provisions of Ala. Code § 17-25-1, the Special Master is hereby authorized to establish a separate trust fund in the Alabama State Treasury known as the "Help America Vote Act – Voter Registration Fund" (hereinafter HAVA-VRF). Payments from the HAVA-VRF are not subject to dual approval before disbursements are made. Based on the Secretary of State's accounting, filed pursuant to this Court's July 21, 2006 Order, that amount is $ 12,000,000 plus $ 420,932.38 interest (less certain amounts for prior expenditures on the voter registration system).[21]

Any funds that are transferred to the HAVA-VRF and not expended by the Special Master in the development and implementation of the voter registration system will revert back to the Help America Vote Fund once the new voter registration system is completed.

**8. Communications with Court**

The Special Master shall have the authority to conduct any contacts, including *ex parte* communications, he deems necessary with the Court, expressly to include petitioning the Court for additional orders necessary to implement the duties and responsibilities delineated in this Order.

---

[21] The Secretary of State asked for and received an additional 30 days from August 2, 2006, to complete this aspect of her accounting.

**9. Communications with Counsel**

The Special Master shall have the authority to communicate directly with agencies of the State of Alabama and its counties and political subdivisions other than the Alabama Office of the Attorney General subject to no prohibition on *ex parte* contacts. The Special Master shall not conduct *ex parte* contacts with counsel representing either party to this action, but shall have the authority to conduct consultative proceedings, independent of the Court, at which counsel for both parties are present, as he deems necessary. Such consultative proceedings may, at the direction of the Special Master, be conducted on the record and be taken down stenographically or in any other manner authorized by Fed. R. Civ. P. 30(b)(2). The Special Master is authorized to conduct such proceedings by telephone, videoconference, or other remote means, and the term "present" shall be construed to include being connected by telephone, videoconference, or other such remote means as the Special Master may deem proper.

**10. Recordkeeping**

The Special Master shall maintain complete and accurate records of his acts and doings, which shall be delivered to the Secretary of State at the conclusion of the project.

**11. Special Master Reports**

The Special Master shall file a report with the Clerk of the Court on the first Tuesday of every month, beginning September 2006, detailing the progress that has been made on the implementation of the single, uniform, official, centralized, interactive computerized statewide voter registration list in elections for federal office delineated in Paragraph 1. The reports shall be deemed matters of public record.

**12. Time Constraints**

The prime force moving this case is time and the shortness of it. The Court suggested benchmarks for completion of implementation, including training and testing, in its July 21 Order. (Doc. # 38.) The Special Master is DIRECTED to review those benchmarks with instructions to consider the same and make reference to them in his initial report in September 2006 as to their reasonableness.

**13. Scope of Injunction**

The injunction entered on May 29, 2006, in open court and memorialized in the June 7, 2006 Order shall remain in full force and effect as against any state agency, department, employee or other agent, and all persons acting in concert with them, with respect to HAVA compliance.

It is so ORDERED this 8th day of August, 2006.

      /s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE