IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number: |
| v. | ) | |
| | ) | 2:06-CV-00392-WKW |
| STATE OF ALABAMA, and | ) | |
| BETH CHAPMAN, Secretary of State, | ) | |
| in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO PROPOSED ORDER (docs. 154 & 154-2)

The State of Alabama and Alabama's Secretary of State, the Honorable Beth Chapman,

hereby respectfully submit their response to the Court's proposed order, docs. 154 & 154-2.

Following, and with particularity, the State and the Secretary set out their reasons, both technical

and substantive, and the bases therefor, why certain language contained in paragraphs 4, 5, and 6

of the proposed order should not be adopted.

**Paragraph 4—The Security Policy**

Section 303(a)(3) of HAVA provides: "The appropriate State or local official shall provide

adequate technological security measures to prevent the unauthorized access to the computerized

list established under this section." 42 U.S.C. § 15483(a)(3). The State and the Secretary of State

appreciate the Special Master's development of such a security policy. Further, the State and the

Secretary of State appreciate the Court's recognition of the on-going need for modifications to that

policy; for instance, the Secretary of State's Office has concerns about the control of the

1

Powerlock passwords and can be expected to make changes to that portion of the security policy once it is within her power to do so.[1]  Still, there are two changes that the State and the Secretary of State would like to see made to proposed paragraph 4.

The State and the Secretary would respectfully ask this Court to remove the restriction on who may make modifications to the policy; the proper official may change in time and should be determined by State law.   We seek to avoid a situation where, for example, in 2040, a newly created Office of the Secretary of Elections must seek modification of this Court's order.   One way to address this issue would be to add the words "or its designate" after "the Alabama Legislature" in the last sentence of paragraph 4.  Alternatively, the Court might strike everything after "as it may be modified from time to time."

The State and the Secretary also share a substantive concern with the security policy as written, and would ask that the policy be subject to modification *before* the November 2008 general election.  Specifically, the security policy provides that "[c]ounties that are not fully in compliance with this security policy by *September 30, 2008* will be subject to *disconnection from the central system*."  Doc. 154-2 at 9 (second emphasis added).  As we read this statement, failure to comply with the security policy will result in a disconnection from Alabama's Voter Registration System itself.  If we understand correctly, that action would necessarily defeat the "single, uniform, official, centralized, interactive computerized statewide voter registration list" and take the State out of HAVA compliance.  To avoid this outcome while enforcing security, the

---

[1]  Even with the allowance for modification, the security policy should apply to Alabama's Voter Registration System for only so long as the current Voter Registration System is in use.  Future years will almost certainly bring changes in the law and in the technology being used.   Unless the Court specifically orders otherwise, the State and the Secretary of State will so interpret this Court's final order.

Secretary of State proposes amending the second paragraph in the Introduction of the Security Policy to provide: "Each user of the system shall be bound by the conditions defined herein. **Users who** are not fully in compliance with this Security Policy by *September 30, 2008* **shall have their user accounts reset to the appropriate access levels by the State**."

**Paragraph 5—The Software Review Committee**

The Special Master's final report noted that his Implementation Committee had "established and made significant use of the Software Review Committee," which he described as "a broad-based committee with representatives of all system user groups, the Secretary of State, and vendor." Doc. 153 at 6. The Special Master made no recommendation about the continuation of the Committee, nor did he state that there was any particular work left for that Committee to do. Nonetheless, the Committee may prove helpful, and the State and the Secretary of State are appreciative of the Court's permission to continue the Software Review Committee to assist with the transition. The State and the Secretary do, however, have concerns about the open-endedness of the continuation of the Committee. No doubt the State's contractual relationship with ES&S, the measure by which the Committee continues, will last for a considerable time. The State and the Secretary suggest the following:

> To ensure an orderly transition of the Alabama Voter Registration System to the control of the Alabama Secretary of State, and to ensure the integrity of the Alabama Voter Registration System through the 2008 federal election cycle in Alabama, **control and supervision of the Special Master's Software Review Committee is transferred to the Secretary of State. The Secretary is authorized, in her discretion, to continue to use the services of said Software Committee until the completion of all contract obligations by Election Systems & Software ("ES&S"), including the fulfillment of all warranty**

3

**obligations, but, in no event, later than December 31, 2010.[2]  Membership on the Committee may change over time.  The Secretary, of course, retains full authority under State law to perform those acts consistent with the Office, as authorized by State law, and this paragraph shall not be read in derogation thereof.**

**Paragraph 6—Voting Locations**

Paragraph 6 of the proposed order provides that "no local election official shall produce a voter list reflecting that persons are qualified to vote in a particular box or voting location if that box or location does not encompass their [the voter's] place of residence."  Doc. 154-2 at 5-6.  Voting at one's place of residence is a requirement of State law. [3]  The proposed order further provides that "[n]o voting official shall participate in the conduct of a federal election in which a voter is capable of voting in more than one voting location."  Doc. 154-2 at 6.  The proposed injunction is based on page 5 of the Special Master's final report.

Following entry of the Court's September 4, 2008 Order and Exhibit (Docs. 154; 154-2), counsel for the State and Secretary of State contacted counsel for the Special Master asking for details as to what counties, other than St. Clair County, were believed to be assigning voters to

---

[2]     This date represents the end of the calendar year for the last full year in the current term of the present Secretary of State.  An election for that Office will be held in November 2010, and the winner will take office in January 2011.

[3]     Alabama law provides: "At all elections held within this state, the elector shall vote in the county and voting place of his or her domicile and nowhere else and shall have registered as provided in this title. If any elector attempts to vote in any voting place other than that of his or her domicile, his or her vote shall be rejected, except when casting a provisional ballot, as provided by law."  Ala. Code § 17-9-10.

The Eleventh Amendment prohibits a federal court from enjoining a State to comply with State law.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Here, of course, there are federal interests at stake in that a voter might vote twice in a federal election, and, under certain facts, a voter might cast a ballot in the wrong Congressional race.  Accordingly, a tailored injunction to comply with federal law, based on a proper factual predicate, could be appropriate if there is reason to believe that federal law is being violated on an on-going basis.

incorrect boxes or allowing for double voting.  The Special Master's counsel replied that a very small number of other counties *may* have done this in the past and *may* be continuing to do so; only one county was mentioned by name.[4]  Thus, the Special Master's Office has not provided concrete information that any county (other than St. Clair County, which is addressed below) is *currently* engaged in this practice using the Alabama Voter Registration System.  The State and the Secretary of State submit that, under these circumstances, a permanent injunction against all 67 counties is overbroad and unnecessary; further, as the counties have not been heard and determined to be in violation of any federal law, it lacks sufficient factual predicate.[5]

With respect to the practice in St. Clair County, local officials have taken steps to resolve the underlying problems and the same will be resolved in time for the November General Election. The issue was the refusal of the St. Clair County Commission to draw certain lines required by State law as well as a certain amount of obstinacy on the part of the Probate Judge.  The lack of lines in those precincts with multiple boxes led to a single, comprehensive precinct list being

---

[4]      The named county is Covington County.  A Registrar there informed the undersigned that the problem that previously existed arose not from any problem with the voter registration list, but from actions undertaken by poll workers on Election Day.  Specifically, poll workers allowed persons who were not on the poll list to add their names thereto and vote in the wrong polling place.

        The undersigned also spoke to Covington County Special Probate Judge Leland G. Enzor, Jr., who was appointed earlier this year after the elected Probate Judge was indicted on unrelated matters in June, *see* Exhibit A.  Judge Enzor is a lawyer and former district attorney.  While new to the job of holding elections, Judge Enzor fully understands the importance of following the law.  There is to be poll worker training before the general election, and Judge Enzor represented that he would make it a priority at that training to instruct the poll workers that voters may only vote at their proper, assigned location.  He may be aided in this effort by an Attorney General Opinion issued to a Covington County Registrar earlier this year. *See* Exhibit B.

[5]      As a separate matter, the proposed order operates on the unspoken, and unverified, assumption that any problems are fully capable of being resolved before the November general election; should this assumption fail, and should the injunction be entered, the apparent result would be the cancellation of the election for the relevant county.

reproduced for each box in the precinct—as opposed to box-specific lists.  In short, a voter living

in an affected precinct could appear at any box in the precinct and vote.  The fact that a voter's

name appeared on the precinct-wide list kept at each box also made it theoretically possible for a

voter to vote at more than one box during a single election.  Of course, doing so would violate

State law, and, in the case of a federal election, federal law.[6]  Whether the problem of double-

voting was actual or merely theoretical is not known to the undersigned at this time.[7]

Counsel for the State and for the Secretary of State forwarded a copy of the proposed

Order, along with the Special Master's final report, for context, to St. Clair County Attorney Billy

R. Weathington, Jr.   Mr. Weathington has represented to the undersigned that the Probate Judge

---

[6]       Alabama law provides:  "Any person who votes more than once at any election held in this state, or
deposits more than one ballot for the same office as his or her vote at such election, or knowingly attempts
to vote when not entitled to do so, or is guilty of any kind of illegal or fraudulent voting, shall be guilty,
upon conviction, of a Class C felony."  Ala. Code § 17-17-36.

Federal law, 42 U.S.C. § 1973i(e), provides:

(e) Voting more than once

(1) Whoever votes more than once in an election referred to in paragraph (2) shall be
fined not more than $10,000 or imprisoned not more than five years, or both.

(2) The prohibition of this subsection applies with respect to any general, special, or
primary election held solely or in part for the purpose of selecting or electing any
candidate for the office of President, Vice President, presidential elector, Member of the
United States Senate, Member of the United States House of Representatives, Delegate
from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of
the Commonwealth of Puerto Rico.

(3) As used in this subsection, the term "votes more than once" does not include the
casting of an additional ballot if all prior ballots of that voter were invalidated, nor does it
include the voting in two jurisdictions under section 1973aa-1 of this title, to the extent
two ballots are not cast for an election to the same candidacy or office.

[7]       As noted just below, the undersigned have been in touch with the St. Clair County Attorney.  He
has represented that the County did have a process in place to check for double-voting, and, to the County's
knowledge, no one had actually double-voted.

and the County Commission desire to fully comply with all applicable laws. Towards that end, at its regularly scheduled meeting on Tuesday, September 9, 2008, the County Commission drew the lines necessary to permit voter assignment to single boxes within precincts. *See* Exhibit C (letter from St. Clair County Attorney); Exhibit D (St. Clair County Resolution No. 2008-43); Exhibit E (maps of precincts with more than one polling place, showing lines drawn). As it has been relayed to the undersigned by a Registrar familiar with the situation, Mr. Buel H. Plemons[8], the official lines drawn by the County Commission are similar to the *de facto* lines that have been in place, and, as a result, at this time, few voters are expected to have their official voting places changed.[9] This means that there will not be a lot for the Registrars to do in terms of updating voter registration data. There will, of course, remain the issue of informing voters—those who have moved and those who have not, but may have been voting in the wrong place—about the changes. Mr. Weathington has already been working on a plan of action for that information campaign, and expects newspaper coverage in *The St. Clair Times* to be involved in informing the citizenry.[10] A story by the Editor of *The St. Clair Times* entitled "St. Clair Commission makes

---

[8]    Mr. Plemons is the Chairperson for the St. Clair County Board of Registrars. He had notified the Offices of the Attorney General and the Secretary of State of the problems in St. Clair County, and both appropriately referred him to the Special Master's Office.

[9]    Preclearance of the new lines, pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, is required. Counsel for the United States has represented that the U.S. Department of Justice is committed to accomplishing an expedited preclearance review of the submission, when St. Clair County makes it. Counsel for St. Clair County has represented that the submission will be made expeditiously; that is consistent with the direction in the Resolution issued by the St. Clair County Commission. *See* Exhibit D. Additionally, due to the hurried circumstances in which the lines were drawn, they may require some adjustment for future elections.

[10]    *The St. Clair Times* is a free newspaper delivered to everybody in the County.

changes to voting precincts" is already available at the website for the *Daily Home*, which serves

Talladega, Pell City, and Sylacauga; Pell City is in St. Clair County. *See* Exhibit F.

Since the St. Clair County Commission has now drawn the lines, the absence of which

were the source of the problems identified by the Special Master on page 5 of his final report, the

need for a broad and permanent injunction as to St. Clair County is either eliminated or is

minimized. Reasons for not enjoining the remaining counties have already been set out.

Therefore, the State and the Secretary of State suggest that Paragraph 6 is unnecessary.

The State and the Secretary of State ask that the Court turn the Alabama Voter Registration

System over to the Secretary as soon as practicable [11]; however, we recognize that this Court may

wish to retain jurisdiction until a date certain, such as December 31, 2008, in order to address any

problem that may arise during the November 2008 general election.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL
BY:

s/ Winfield J. Sinclair
Winfield J. Sinclair (SIN006)
Misty S. Fairbanks (FAI005)
Assistant Attorneys General

Attorneys for the State of Alabama &
Secretary of State Beth Chapman

---

[11]    Once the Voter Registration System is transferred to the Secretary of State, her Office will undertake to resolve known issues and any issues which are identified in the future.

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 10th day of September, 2008, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following:

Kenneth D. Wallis, II, Esq.
Office of the Governor
State Capitol
600 Dexter Avenue, Suite NB-05
Montgomery, Alabama 36104

Algert S. Agricola, Jr.
Ryals Plummer, Donaldson,
 Agricola & Smith, P.C.
60 Commerce Street, Suite 1400
Montgomery, AL 36104

Robert D. Popper, Esq.
Christy A. McCormick, Esq.
United States Department of Justice
1800 G Street, Room 7270
Washington, D.C. 20006

Dorman Walker, Esq.
Balch & Bingham
Post Office Box 78
2 Dexter Avenue
Montgomery, Alabama 36101-0078

R. Randolph Neeley, Esq.
United States Attorney's Office
Post Office Box 197
Montgomery, Alabama 36101-0197

Frank C. Ellis, Jr., Esq.
Wallace, Ellis, Fowler & Head
Post Office Box 587
Columbiana, Alabama 35051


s/ Winfield J. Sinclair
Winfield J. Sinclair
Assistant Attorney General


Address of Counsel:

Office of the Attorney General
11 South Union Street, 3rd Floor
Montgomery, Alabama 36130
TEL:      334-353-9110
FAX:      334-353-8440
E-mail:     wsinclair@ago.state.al.us